**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ASHER BRONSTIN, on behalf of himself and others similarly situated, | : | CIVIL ACTION FILE NO. |
| | : | |
| Plaintiff, | : | 1:25-cv-06182 |
| | : | |
| v. | : | |
| | : | |
| SERVBANK SB (FORMERLY ALLIED FIRST BANK) | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S SECOND SET OF DISCOVERY**

**INSTRUCTIONS FOR INTERROGATORIES**

1.      Pursuant to Rule 33, submit your answers to the interrogatories herein in writing and under oath to the undersigned counsel within 30 days of the date of service on you. If any of these interrogatories cannot be answered in full, then you should answer to the fullest extent possible, specifying the reasons for your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion or portions. In answering these interrogatories, furnish such information as is available to you, regardless of whether this information is obtained directly by you, through your agents or representatives or by any of your attorneys.  For each interrogatory, please identify all persons who provided information used in answering it.

2.      These interrogatories are continuing in nature.  In accordance with Rule 26, you are required to supplement your answers to the interrogatories when new or additional information becomes known to you.

**INSTRUCTIONS FOR REQUESTS FOR PRODUCTION**

3.　Pursuant to Rule 34(b)(2)(B), on the date production is due, Defendant shall produce all the responsive documents or specify a reasonable date certain on which they will be produced.

4.　In accordance with Rule 34(b), you shall provide written responses to the following requests and shall produce the requested documents as they are kept in the ordinary and usual course of business or shall organize and label the documents to correspond with the categories in this request.

5.　A draft and a final version are two distinct documents.

6.　If Defendant withholds the production of any responsive document on the grounds that the document is privileged or otherwise protected, Defendant shall state in a privilege log the nature of the claim of privilege or protection; the type and nature of the document; the date of the document; the author(s), the addressee(s), and recipient(s) of the document; the document's present location; and any other information that will enable Plaintiff and the Court to assess the applicability of the privilege or protection.

## INSTRUCTIONS FOR REQUESTS FOR ADMISSIONS

7.　Each request seeks all information available to the Defendant or the Defendant's agents, and to any other person acting on Defendant's behalf. Each of these requests shall be deemed to be continuing in the manner provided under the Federal Rules of Civil Procedure. If a request cannot be answered in full, answer to the fullest extent possible and specify all reasons for the inability to answer in full.

8.　If you believe that you cannot admit or deny any request, please state the reason why you are unable to respond. If you can admit part of a request, you are required to do so.

- 2 -

9.      If Defendant claims any privilege or immunity from discovery with regard to any request made herein, please provide a summary of all facts and circumstances upon which the claim is based.

## DEFINITIONS

The following terms shall have the following meanings, even when not capitalized or bolded:

10.      **"Communication"** includes all forms of correspondence, including, but not limited to, letters, emails, voicemails, text messages, instant messages, or social media messages.

11.      "**Defendant**" means the defendant named in this lawsuit who is being served with these requests and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

12.      "**Describe**" means to identify and explain fully the characteristics, nature and substance of a given thing, action, communication or event, to set forth all details, physical properties and dimensions of a physical thing inquired about, and to specify all pertinent dates, locations, causes, purposes, effects and results of the thing, action, communication or event inquired about.

13.      "**Document**" means any writing as defined in Rule 34(a)(1)(A), however produced, reproduced, archived or stored, within your possession or subject to your control, of which you have knowledge or to which you now have or previously had access, including all ESI.

14. "**Identify**" (when used in reference to a document) means to state the date of preparation of the document, its author, the sender (if any), the recipient (if any), the nature of the document (e.g., letter, memorandum or tape) and other means of identification sufficient to specify the document for purposes of a request for production, and to further state its present location and custodian. If any such document was, but no longer is, in your possession or custody or subject to your control, describe what disposition was made of it and give the name, address and telephone number of the person presently having possession, custody or control of the document.

15. "**Identify**" (when used in reference to an natural person) means to state that person's full name, title, business address, telephone number, email address, occupation and employer, along with a statement of whether that person is represented by your counsel in this litigation.

16. "**Identify**" (when used in reference to an entity) means to state the entity's full name, address, telephone number, state of incorporation or organization and web address. Unless it otherwise appears from the context, a request for the identity of a person relates to all persons in the relevant classification or category, and the request for the identity of an entity includes all affiliated entities.

17. "**Person**" means any natural person or legal entity, including, without limitation, any business or governmental entity or association.

18. "**Plaintiff**" means the Plaintiff in this lawsuit.

19. "**Policy**" means any instruction, practice, procedure, directive, routine, guideline, rule, course of conduct or code of conduct that was or has been recognized, adopted, issued or

followed by you—regardless of whether written or unwritten, formal or informal, recorded or unrecorded.

20. "**TCPA**" means the Telephone Consumer Protection Act, 47 U.S.C. § 227.

21. "**Telemarketing**" means a telecommunication that could have generated or was intended to generate leads, customers or sales for you or any franchisee of yours within the United States. A communication is telemarketing even though it (1) had other, additional purposes (e.g., fulfillment of a partially completed transaction or verification of information); (2) was to a person who had consented to receive it; (3) was to a person who had a prior existing business relationship with you; (4) was not made by you; and/or (5) was not made for your exclusive or direct benefit.

22. "**Third party**" means any natural person, partnership, association, corporation, joint venture, or other business or legal entity not owned or controlled by you.

23. "**Vendor**" means any third party under contract with, hired by, employed by, paid by or working for you, directly or indirectly, for purposes of telemarketing or phone-based activities or services, including, but not limited to, generating leads, warm transfers, hot transfers or any other call transfers, making outbound telemarketing calls or texts, or tracking or aggregating data related to any of those activities, including, but not limited to, any co-defendant.

24. "**You**" means the entity to which these requests are propounded and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

25. All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/

## RELEVANT TIME PERIOD

Unless otherwise indicated, these requests shall pertain to the time period starting four years before the filing of the original complaint in this case and continuing through the present and shall include all documents and information that relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received outside of that period.

## INTERROGATORIES

1.      Identify any number that appears in the Expert Report of Aaron Woolfson, attached herein, you contend was not registered on the National Do Not Call Registry at the time it was called.

        **ANSWER:**

2.      Identify any number that appears the Expert Report of Aaron Woolfson, attached herein, that you contend was not a residential telephone number at the time it was called, and all facts in support of that contention.

        **ANSWER:**

3.      Identify any call that appears in the Expert Report of Aaron Woolfson, attached herein, that you contend had an established business relationship or any other form of consent with Defendant at the time it was called.

        **ANSWER:**

4.      Identify any call that appears in the Expert Report of Aaron Woolfson, attached herein, that you contend you did not permit to be placed by your employee, Craig Mattson, or on your behalf.

**ANSWER:**

5.      Identify every Allied employee or officer who, at any point before April 30, 2022, had knowledge that any vendor was placing outbound calls to consumers in connection with any mortgage lead campaign that involved telephone calls, or who approved the same, stating for each person: (a) their name and title; (b) the approximate date they first acquired that knowledge; and (c) the source of that knowledge.

**ANSWER:**

**6.**      Describe with specificity every action Allied took upon receiving any communication indicating that a consumer transferred to an Allied loan officer stated they were not interested in a mortgage refinance, did not recall requesting information, or asked why they were being called, including the date of each action, the persons involved, and whether any such action included contacting any vendor about the legality of the calls being placed.

**ANSWER:**

**7.**      Describe with specificity the basis for each and ever Request for Admission you have denied in this litigation.

**ANSWER:**

- 8 -

## DOCUMENT REQUESTS

1.      With respect to the Expert Report of Aaron Woolfson, attached herein, please produce all documents that evidence any prior consent to contact those telephone numbers.

   **RESPONSE:**

2.      With respect to the Expert Report of Aaron Woolfson, attached herein, please produce all documents that evidence any prior consent to send each call at the time it was placed.

   **RESPONSE:**

3.      With respect to the Expert Report of Aaron Woolfson, attached herein, please produce all documents that evidence that your company had an established business relationship with any of those individuals for each call at the time it was placed.

   **RESPONSE:**

4.      With respect to the Expert Report of Aaron Woolfson, attached herein, please produce all documents that evidence that any number was not on the Do Not Call Registry when contacted.

   **RESPONSE:**

5.      All invoices, payment records, wire transfers, or billing confirmations exchanged between Allied and Craig Mattson or Diamond Select Lead Group.

   **RESPONSE:**

6.      Produce all documents reflecting Allied's approval of Craig Mattson or Diamond Select Lead Group for the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

7.      Produce all documents reflecting Allied's knowledge that Craig Mattson or Diamond Select Lead Group were placing the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

8.      Produce all documents reflecting any targeting criteria, call criteria, or lead criteria for the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

9.      Produce all documents reflecting any agreement, contract, statement of work, or arrangement between Allied First Bank and Craig Mattson, Diamond Select Lead Group, or any entity controlled by or affiliated with Mattson, concerning the generation, purchase, or transfer of mortgage refinancing leads, including those relating to the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

10.     Produce all documents reflecting any instructions, requirements, criteria, or limits imposed by Allied with respect to the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

11.     Produce all documents reflecting the routing, transfer, or technical configuration by which the calls identified in the Expert Report of Aaron Woolfson, attached herein, were delivered to Allied, including any routing numbers, dial-in configurations, or system integrations provided by or on behalf of Allied.

**RESPONSE:**

12.     Produce all scripts, call outlines, talking points, or compliance-approved language used in connection with the calls identified in the Expert Report of Aaron Woolfson, attached herein, including any language reviewed or approved by Allied's Compliance Officer or any member of Allied management.

**RESPONSE:**

13.     Produce all documents reflecting training or instructions given to Allied loan officers or branch employees concerning how to receive, handle, or respond to the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

14.  Produce all documents sufficient to identify each Allied employee who answered each call identified in the Expert Report of Aaron Woolfson, attached herein, that was accepted by Allied, including the date, time, duration, and identity of the Allied employee who received each transfer.

**RESPONSE:**

15.  Produce all complaints, lead-return requests, dispute records, or communications reflecting that any consumer complained in connection with the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

16.  Produce all documents reflecting concerns expressed by any Allied employee, officer, or compliance personnel about the quality, legality, or source of leads generated through the calls identified in the Expert Report of Aaron Woolfson, attached herein, including any communications involving Craig Mattson or Diamond Select Lead Group on those subjects. herein.

**RESPONSE:**

17.  Produce all documents concerning Allied's due diligence, vendor vetting, compliance review, or ongoing monitoring of Craig Mattson, Diamond Select Lead Group, or any subcontractor engaged by them, in connection with the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

18.     Produce all documents reflecting whether Allied's internal Do Not Call List was transmitted to Craig Mattson, Diamond Select Lead Group, or any subcontractor engaged to place the calls identified in the Expert Report of Aaron Woolfson, attached herein, prior to those calls being made.

**RESPONSE:**


19.     Produce all documents reflecting any revenue, loan applications, or closed loans generated by Allied that are attributable to leads sourced through the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**


**REQUESTS FOR ADMISSIONS**

1.     Admit that you possess no prior consent to contact any number contained in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**


2.     Admit that Craig Mattson was an Allied First employee.

**RESPONSE:**


3.     Admit that you possess no documents evidencing that your company had an established business relationship with any of the individuals contained in the Expert Report of Aaron Woolfson, attached herein.

- 12 -

**RESPONSE:**

4.      Admit that all the telephone numbers contained in the Expert Report of Aaron

Woolfson, attached herein, were on the Do Not Call Registry when contacted.

**RESPONSE:**

5.      Admit that you contacted the Plaintiff at least 10 times.

**RESPONSE:**

6.      Admit that you had no consent to contact the Plaintiff.

**RESPONSE:**

7.      Admit that you had no prior business relationship with the Plaintiff.

**RESPONSE:**

8.      Admit that the Plaintiff's telephone number is on the National Do Not Call

Registry.

**RESPONSE:**

9.      Admit that the Plaintiff's telephone number was on the National Do Not Call

Registry at least 32 days prior to receiving any of the text messages at issue.

**RESPONSE:**

10.     Admit to all allegations, factual and legal, in the Plaintiff's complaint.

**RESPONSE:**

11.     Admit that a text message is a "call" for the purposes of the TCPA.

**RESPONSE:**

12.     Admit that you have no objection to the expert testimony of Aaron Woolfson.

**RESPONSE:**

13.     Admit that the Plaintiff has met the requirements for class certification under Rule 23.

**RESPONSE:**

14.     Admit that this class is properly certified under Rule 23(b)(2).

**RESPONSE:**

15.     Admit that this class is properly certified under Rule 23(b)(3).

**RESPONSE:**

16.     Admit that, on the facts developed in this lawsuit and through discovery, the Plaintiff has stated a claim for at least 10 violations of the TCPA's Do Not Call Registry provisions, contained in 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

**RESPONSE:**

17. Admit that you acted knowingly and wilfully.

**RESPONSE:**

18. Admit that the Plaintiff is entitled to the injunctive relief pled in the complaint.

**RESPONSE:**

19. Admit that the Plaintiff was never provided a copy of your do not call policy.

**RESPONSE:**

20. Admit that the Plaintiff was never placed on your internal do not call list.

**RESPONSE:**

21. Admit that you do not maintain an FTC Subscription Account Number (SAN).

**RESPONSE:**

22. Admit that summary judgment for the Defendant is unconstitutional as applied to the facts of this case.

**RESPONSE:**

23. Admit that summary judgment for the Defendant is inappropriate as applied to the facts of this case.

**RESPONSE:**

24. Admit that you paid for the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

25. Admit that you directed the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

26. Admit that you authorized the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

27. Admit that you stood to benefit from the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

28. Admit that the calls identified in the Expert Report of Aaron Woolfson, attached herein, were made to advertise your mortgage services.

**RESPONSE:**

29. Admit that Craig Mattson's job duties at Allied First Bank included generating leads.

**RESPONSE:**

30.     Admit that Allied First Bank authorized Craig Mattson to obtain leads for Allied First Bank.

**RESPONSE:**

31.     Admit that Craig Mattson acted for the benefit of Allied First Bank in arranging for the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

32.     Admit that Craig Mattson acted within the scope of his employment with Allied First Bank in arranging for the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

33.     Admit that Allied First Bank approved Craig Mattson's calls to generate leads for Allied First Bank.

**RESPONSE:**

34.     Admit that Allied First Bank gave Craig Mattson decision-making authority over the acquisition of mortgage-refinance leads.

**RESPONSE:**

35.     Admit that Allied First Bank gave Craig Mattson authority to specify the characteristics of the leads he sought for Allied First Bank.

**RESPONSE:**

36.     Admit that Craig Mattson controlled or had the right to control the targeting criteria for the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

37.     Admit that Craig Mattson managed the scope of the relationship through which the calls identified in the Expert Report of Aaron Woolfson, attached herein, were generated for Allied First Bank.

**RESPONSE:**

38.     Admit that Diamond Select Lead Group was authorized to obtain leads for Allied First Bank.

**RESPONSE:**

39.     Admit that Diamond Select Lead Group was paid to obtain leads for Allied First Bank.

**RESPONSE:**

40.     Admit that the calls identified in the Expert Report of Aaron Woolfson, attached herein, were made to generate mortgage-refinance leads for Allied First Bank.

**RESPONSE:**

41.     Admit that the purpose of the calls identified in the Expert Report of Aaron Woolfson, attached herein, was to connect called parties to Allied First Bank or its loan officers.

**RESPONSE:**

42.     Admit that Allied First Bank accepted transfers resulting from the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

43.     Admit that Allied First Bank paid for leads or transfers resulting from the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

44.     Admit that the calls identified in the Expert Report of Aaron Woolfson, attached herein, promoted Allied First Bank's mortgage goods or services.

**RESPONSE:**

45.     Admit that the calls identified in the Expert Report of Aaron Woolfson, attached herein, were made on behalf of Allied First Bank.

**RESPONSE:**

46.     Admit that Allied First Bank benefitted from the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

47. Admit that Allied First Bank had internal policies requiring management approval for telemarketing activities engaged in by bank employees.

**RESPONSE:**

48. Admit that Allied First Bank had internal policies requiring vendors engaged in telemarketing activities to be vetted.

**RESPONSE:**

49. Admit that Allied First Bank maintained an internal do-not-call list during the time period of the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

50. Admit that Allied First Bank required its internal do-not-call list to be provided to vendors engaged in telemarketing activities.

**RESPONSE:**

51. Admit that Allied First Bank never instructed Craig Mattson or Diamond Select Lead Group that they were prohibited from placing the calls identified in the Expert Report of Aaron Woolfson, attached herein.

**RESPONSE:**

52.     Admit that Allied First Bank continued to accept and pay for call transfers after receiving communications indicating that certain called consumers were uninterested, confused, or questioned why they had been called.

**RESPONSE:**

53.     Admit that Allied First Bank never conducted any investigation into whether the consumers called in connection with the calls identified in the Expert Report of Aaron Woolfson, attached herein, had consented to receive telephone solicitations from Allied First Bank or any entity acting on its behalf.

**RESPONSE:**

54.     Admit that Allied First Bank never obtained a signed, written agreement from Plaintiff authorizing Allied First Bank by name to contact Plaintiff by telephone.

**RESPONSE:**

Respectfully submitted in this 17th day of March, 2026

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com
*Counsel for Plaintiff*

- 21 -