**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ASHER BRONSTIN, on behalf of himself and others similarly situated, | ) | Case No. 1:25-cv-06182 |
| Plaintiff, | ) | Judge Sharon Johnson Coleman |
| v. | ) | Magistrate Judge Maria Valdez |
| SERVBANK SB f/k/a ALLIED FIRST BANK, | ) | |
| Defendant. | ) | |

## DEFENDANT SERVBANK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE OR, ALTERNATIVELY, TO LIMIT THE OPINIONS OF PLAINTIFF'S EXPERT AARON WOOLFSON

## INTRODUCTION

Plaintiff's expert, Aaron Woolfson, built Plaintiff's proposed class by using the National Do Not Call Registry for a purpose federal law forbids. Congress directed that the Registry be used only for compliance with the TCPA, and the FTC's rule makes it "a violation" for "any person" to use Registry data "for any purpose except compliance . . . or otherwise to prevent telephone calls." 16 C.F.R. § 310.4(b)(2). Before every class-period download, Woolfson certified under penalty of perjury that his access was "solely" for those purposes. He then agreed that he used retained copies "for purposes of [his] expert testimony in this litigation and for purposes of class certification in this litigation." That use was no aberration. Woolfson's company, TelSwitch, describes itself to the FCC as an "independent data analytics and litigation support firm" that uses "the national DNC list that we obtain daily from the Federal Trade Commission" in TCPA disputes.

That prohibited use is why Plaintiff cannot carry his Rule 702 burden to show, by a preponderance of the evidence, that Woolfson's opinions rest on reliable methods reliably applied

to the facts of this case. Every one of the 198,196 classifications on which Plaintiff relies rests on a prohibited comparison that no one may lawfully repeat. Plaintiff's counsel withholds the archive because producing it "would be contrary to law." The FTC refuses to provide it because "[p]rivate civil litigants are not among the classes of people authorized to access the Registry." In any event, production would solve nothing, because Servbank's expert could test the classifications only by making the same prohibited use. Plaintiff asks the Court to accept, as the foundation of a 198,196-number class, an output that no one may lawfully verify, including the expert who generated it.

Woolfson's opinions also fail for reasons independent of the prohibited use. His method never tests whether a number stayed registered between the two dates it samples; a three-second filter keyed to one call outside the class period drives most of the output; and he concedes that he did not determine who placed the calls, who received them, or whether any number was residential. Servbank asks the Court to exclude or limit those opinions as set out below.

## BACKGROUND

### A. The Records and the Registry Classification Process

The proposed class requires more than one call within twelve months, placed between July 1 and August 31, 2022, to a number registered on the Registry "for at least 30 days prior to the call," as reflected in Diamond Select Lead Group's account records. ECF No. 54 at 2. Those records came from Plaintiff's subpoena for every "outbound call made by Diamond Select," Ex. A, without custodian certification, Ex. B, and they identify the client as "Diamond Select Leads," not Servbank or Allied First, Kostyun Rpt. ¶¶ 36–40; Woolfson Tr. I 24:20–24.[1] From a

[1] Exhibits are cited by letter, with these short forms: Ex. A (AM Communication Labs subpoena); Ex. B (Apr 30-May 3 2026 e-mail thread); Ex. C, "Kostyun Rpt." (Expert Rebuttal Report of Jan Kostyun); Ex. D, "Woolfson Tr. I" (Woolfson deposition, June 12, 2026); Ex. E, "Supp. Decl." (Woolfson supplemental declaration); Ex. F (Supp. Decl. Ex. 2 output sample); Ex. G (Supp. Decl. Ex. 1 & Rpt. Ex. 8, SQL); Ex. H, "Rpt." (Woolfson expert report); Ex. I, "Kostyun Tr." (Kostyun deposition); Ex. J (DNC tagging script); Ex. K, "Woolfson Tr. II" (Woolfson deposition, July 27, 2026); Ex. L (NDNCR Read and Certify); Ex. M (NDNCR download instructions); Ex. N (TelSwitch subscription production); Ex. O (Meet-and-confer e-mails, Aug. 18-21, 2026, Perrong/O'Neil); Ex. P (FTC email chain); Ex. Q

60,044,125-call universe, Woolfson reported 985,670 calls to 198,196 numbers, listed in Exhibit 2 to his supplemental declaration. Supp. Decl. ¶¶ 6-12; Ex. F.

The Registry classification occurred outside the produced database. Woolfson's SQL sends numbers and call dates to an internal "DNC tagging engine" on other servers and retrieves a "YES" flag. Ex. G; Kostyun Rpt. ¶¶ 14–15. The tagging script compares the latest archived file dated more than 31 days before the call with the first file dated on or after it. Ex. J; Kostyun Rpt. ¶ 29. Woolfson's report did not disclose that process or its source. It describes the Registry data only as a "Federal TCPA-eligible area code (and DNC) list that is published daily by the FTC." Rpt. ¶ 23 & n.10. Woolfson conceded that the report nowhere states that TelSwitch retained its own historical archive, identifies TelSwitch as its custodian, or explains when or how TelSwitch acquired the copies; he considers it "strongly implied." Woolfson Tr. II 187:16-190:17. Servbank learned of the archive at his first deposition. Woolfson Tr. I 78:17-84:16. The tagging logic was produced afterward, in response to Servbank's subpoena. Ex. J.

## B. The Certifications and the Refusals to Produce

TelSwitch downloads the entire Registry daily and retains the files. Woolfson Tr. I 78:17–79:18, 84:10–16. Woolfson performs the downloads. Woolfson Tr. II 203:9–16. Before each download, the portal requires certification under penalty of perjury that access "is solely to comply with" the FTC and FCC telemarketing rules "or to otherwise prevent telephone calls to telephone

(FTC General Counsel letter, Aug. 27, 2026); Ex. R (Comments of TelSwitch, Inc., WC Docket No. 26-49, filed July 6, 2026); Ex. S (Comments of TelSwitch, Inc., WC Docket No. 25-208, filed Jan. 7, 2026); Ex. T (iconectiv e-mail thread, *Anthony v. Fed. Sav. Bank*, No. 21 C 2509, ECF No. 228-6 (N.D. Ill. June 30, 2026)); Ex. U, "Bronstin Tr." (Bronstin deposition); Ex. V (Woolfson Index of DNC Downloads); Ex. W (Woolfson Rebuttal Report, *Carroll v. SGS Auto. Servs., Inc.*, ECF No. 196-6 (M.D. La. Feb. 5, 2020)); Ex. X (Woolfson Declaration, *Johnstone v. CrossCountry Mortg., LLC*, No. 1:22-cv-01111, ECF No. 44-1 (N.D. Ohio Dec. 22, 2023)); Ex. Y, "Salzberg Rpt." (Salzberg rebuttal report); Ex. Z (Woolfson Dep., *Smith v. ExamWorks, LLC*, No. 8:21-cv-02746, ECF No. 210-2 (D. Md. Mar. 23, 2026)); Ex. AA (Bronstin Telephone Solicitation Chart); Ex. BB (iconectiv cease-and-desist letter, *Anthony v. Fed. Sav. Bank*, No. 21 C 2509, ECF No. 244-3 (N.D. Ill. Aug. 12, 2026)); Ex. CC (Woolfson Dep., *Anthony v. Fed. Sav. Bank,* No. 21 C 2509, ECF No. 258-3 (N.D. Ill. Oct. 12, 2026)); Ex. DD (Bronstin DNC Registration email).

numbers on the National Registry," and acknowledgment that "using any data in the National Registry for any purpose except compliance" or call prevention is an abusive practice; the page warns that "[w]illful false statements are punishable by fine and/or imprisonment." Ex. L (citing 18 U.S.C. § 1001); Woolfson Tr. II 219:3–23, 233:17–23.[2] Woolfson made that certification for every class-period download. Woolfson Tr. II 210:8–23.[3]

Woolfson's produced database "includes the tagging and the result of the inquiry," "but it does not include any of the archives itself." Woolfson Tr. II 229:22-230:2. Plaintiff's counsel withheld the archive because "FTC regulations make it unlawful to share Registry data" and production "would be contrary to law." Ex. O (Perrong e-mail, Aug. 21, 2026, 10:06 AM). Woolfson agreed: "we can't share those lists with people." Woolfson Tr. II 239:7-10. At counsel's suggestion, Servbank asked the FTC for the historical files; it declined, citing § 310.4(b)(2). Ex. P (Hsue e-mail, Aug. 4, 2026). Servbank then submitted a formal request under 16 C.F.R. § 4.11(e). Ex. P (DeVito e-mail, Aug. 13, 2026). The FTC's General Counsel declined it, explaining that "[r]elevant laws and regulations forbid the FTC from producing data from the National Do Not Call Registry . . . to private parties for use in class-action litigation" and that "[p]rivate civil litigants are not among the classes of people authorized to access the Registry." Ex. Q at 1.

---

[2] Woolfson confirmed that the certification page in Exhibit I is materially the same as the page he sees when accessing the Registry. Woolfson Tr. II 218:14–19. Kostyun likewise recognized it as the Registry's sign-in certification and confirmed making that certification himself. Kostyun Tr. 76:13-78:8. TelSwitch's download instructions (ver. Aug. 9, 2022) contain the same declaration "under penalty of perjury," reference to 16 C.F.R. § 310.4(b)(2), and 18 U.S.C. § 1001 warning that "[w]illful false statements are punishable by fine and/or imprisonment." Ex. M.

[3] TelSwitch produced subscription records for earlier years but none for the period covering the files Woolfson used, which date from approximately June 1 through August 31, 2022. Woolfson Tr. II 200:3-11, 201:2-202:16; Ex. N. Woolfson does not know which subscription account was used, Woolfson Tr. II 189:5-22, and the account number in his report is a 2025 renewal, *id.* Nothing in the record other than his testimony shows that TelSwitch held a subscription, or downloaded the Registry, during the relevant period.

## LEGAL STANDARD

Expert testimony is admissible only "if the proponent demonstrates to the court that it is more likely than not that" it will help the factfinder, "is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application" of them "to the facts of the case." Fed. R. Evid. 702; *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019). "[E]xpert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Johnson v. Ridge Tool Mfg. Co.,* 2026 U.S. App. LEXIS 23912, at *7 (7th Cir. Aug. 7, 2026) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment). Treating "the sufficiency of an expert's basis, and the application of the expert's methodology," as questions of weight is "an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

A "key question" is whether a method "can be (and has been) tested." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993); *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). An opinion "connected to existing data only by the *ipse dixit* of the expert" is properly excluded. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). And reliability must be shown for the "particular matter to which the expert testimony was directly relevant," not for an approach "in general." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 153–54 (1999).

## ARGUMENT

### I. WOOLFSON'S CLASSIFICATIONS REST ON A PROHIBITED USE OF RESTRICTED REGISTRY DATA AND CANNOT SATISFY RULE 702

### A. Federal Law Confines Registry Use to Compliance and Call Prevention

Congress directed that the regulations governing the national database "prohibit the use of such database for any purpose other than compliance with the requirements of this section and any such State law." 47 U.S.C. § 227(c)(3)(K). The only enforcement use it contemplated was by the

States. *Id.* § 227(c)(3)(J). The FTC's rule makes it "a violation of this part for any person to sell, rent, lease, purchase, or use" Registry lists "for any purpose except compliance with the provisions of this part or otherwise to prevent telephone calls to telephone numbers on such lists." 16 C.F.R. § 310.4(b)(2). Access is limited to callers, their service providers, and law-enforcement agencies, each of which must certify "under penalty of law" that access is "solely" for those purposes. *Id.* § 310.8(e). The FCC conditions its safe harbor on the same limit. 47 C.F.R. § 64.1200(c)(2)(i)(E). The FTC confirms that its records exist to let telemarketers check their call lists and to support government enforcement, and that registrants "have not consented to the release of their personal information for purposes of a private class-action lawsuit." Ex. Q at 2.

### B. Woolfson Used the Registry for Litigation, and That Use Is His Business

Woolfson certified to the § 310.4(b)(2) limits before every download and agreed that the certification "provided the purposes for which" the data "was able to be accessed." Woolfson Tr. II 210:8-23, 219:3-23, 221:16-222:13. TelSwitch places no calls and did not use the data to suppress any call. *Id.* 224:4–20, 234:16–25. Woolfson nevertheless agreed that he ran the historical comparison "for purposes of [his] expert testimony in this litigation and for purposes of class certification in this litigation," using superseded files and without FTC authorization. *Id.* 226:15-228:24. His only justification is TelSwitch's fee exemption, *id.* 231:4–19, 240:11–20, but the certification he made as a fee-exempt organization carries the same "solely to comply" limit. Ex. L. Woolfson knows the data is regulated—"We can't charge our clients for it. I know that that's one rule"—and bills for the analysis instead, sparing clients what "might be 2 or $300,000 worth of data processing." Woolfson Tr. I 82:19–23; Woolfson Tr. II 235:17–236:17.

That prohibited use for litigation purposes is TelSwitch's business model. TelSwitch began downloading the entire Registry daily in 2020, after a commercial vendor stopped running

historical data for anyone but telemarketers, because "plaintiffs and defendants asked . . . to identify and to audit records" of calls "in alleged violation of the TCPA." Woolfson Tr. II 196:13-197:16. It created the archive so that it "could later be used to determine whether a telephone number had been registered on a particular past date," "on behalf of defendants and plaintiffs." *Id.* 224:21-225:9. TelSwitch tells the FCC that it is an "independent data analytics and litigation support firm" whose work "includes tagging tens of billions of Do-Not-Call ('DNC') database records each year," and that it uses "the national DNC list that we obtain daily from the Federal Trade Commission" in "disputes surrounding the Telephone Consumer Protection Act," producing reports for "the trier of fact." Ex. R, at 1 n.1; Ex. S, at 2.

Plaintiff cannot recast litigation as "compliance," or deterrence as call "prevention." The statute permits use "for . . . compliance with the requirements of this section," 47 U.S.C. § 227(c)(3)(K), and those requirements run to persons who make calls, *see id.* § 227(c)(3)(F). A lawsuit enforces them. A retrospective analysis of calls already made prevents nothing. Woolfson has tried this reading before. He described after-the-fact violation analysis as "compliance" to the administrator of the FCC-supervised wireless do-not-call data, which responded that such use "could be interpreted as being used for investigative purposes, which is not allowed." Ex. T at 2. This reading leaves § 227(c)(5) fully enforceable: registrants can confirm their own registration, as Plaintiff did, Bronstin Tr. 108:1-110:16; Ex. DD, and governments may use the data to enforce the law. What federal law forbids is what Woolfson did: repurpose a private copy of the national Registry as class-wide litigation evidence.

### C. The Prohibited Use Defeats Plaintiff's Rule 702 Showing

The prohibited use defeats Plaintiff's requisite reliability showing in two ways. First, it forecloses testing. Woolfson agrees that "to independently determine whether all of the 198,196

numbers met the registry criterion, any analyst would need access to and would need to analyze historical registry information." Woolfson Tr. II 181:17-22 ("That's a fair statement."). The only such data is his archive, which Plaintiff will not produce, the FTC will not provide, and Servbank's expert could not lawfully use for this purpose. Plaintiff therefore cannot show "sufficient facts or data" or a "reliable application" of any method. Fed. R. Evid. 702(b), (d). Whether a method "can be (and has been) tested," and its rate of error, cannot be assessed. *Daubert*, 509 U.S. at 593; Kostyun Rpt. ¶ 33. Servbank's inability to point to a particular misclassified number is the consequence of the restriction, and the reason Plaintiff cannot carry his burden. Kostyun Tr. 41:19-42:9, 53:13-54:7. Second, federal law forbids the use itself. The sufficiency of an expert's basis "is to be decided under Rule 702," even when the expert relies on inadmissible information. Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Rule 703 permits experts to rely on certain inadmissible information; it does not authorize an expert to accomplish a use the governing statute and regulation prohibit. *Cf. Curry v. Chevron, USA,* 779 F.2d 272, 274 (5th Cir. 1985) (Rule 703 did not permit expert to rely on report conclusions that a statute barred from use in damages actions).

Plaintiff's own position confirms the restricted nature of the Registry data. His counsel calls sharing the data "unlawful" and production "contrary to law," Ex. O (Perrong e-mail, Aug. 21, 2026, 10:06 AM), invoking the regulation that forbids any person to "use" the data "for any purpose except" compliance or call prevention. 16 C.F.R. § 310.4(b)(2). Plaintiff cannot invoke that regulation to withhold the data from Servbank while disregarding it as to Woolfson's use of the same data. *Cf. United States v. Rylander,* 460 U.S. 752, 758 (1983) (a protection invoked to withhold proof "has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production"; treating it otherwise would convert the shield "into a sword"). If

litigation use were permitted, Plaintiff would have no basis to withhold the archive; because it is forbidden, his expert's classifications cannot be lawfully tested.

Production would solve nothing. Plaintiff has offered to produce the archive if a court holds production permissible. Ex. O (Perrong e-mail, Aug. 21, 2026, 4:07 PM). An order transferring the files would address possession, not use. To test the classifications, Servbank's expert would have to use Registry data for the same forbidden purpose, and he could not truthfully make the certification § 310.8(e) requires. Kostyun Rpt. ¶¶ 20, 24-25. As Kostyun testified, running the comparison on produced files would mean "using data that Mr. Woolfson impermissibly received from the National Do Not Call Registry." Kostyun Tr. 68:8-22; 71:14-25.[4] The defect could be cured only by an order compelling Servbank's expert to act contrary to the statute and the regulation. Courts do not issue orders that themselves command conduct federal law forbids. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 79, 83-84 (1982) (refusing relief that "would command conduct" made unlawful by federal statute, because the federal courts' power "is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes"); *Kelly v. Kosuga*, 358 U.S. 516, 520 (1959) (no judgment that would "itself be enforcing the precise conduct made unlawful"); *Shanehsaz v. Johnson*, 259 F. Supp. 3d 894, 901-02 (S.D. Ind. 2017) (refusing relief that "would further violate" federal regulations). The Privacy Act exception for court-ordered disclosure, which the FTC's letter notes, governs the agency's release of records; it authorizes no recipient to use them for a forbidden purpose. Ex. Q at 2. The file identifiers Woolfson produced supply none of the telephone numbers,

[4] Kostyun has used his own retained Registry files once, for one number in *Anthony v. Fed. Sav. Bank*. Kostyun Tr. 22:3-20, 87:16-23. In a few earlier cases, he analyzed Registry files that others provided to him, which he testified "was a mistake." *Id.* 88:4-89:19, 101:23-105:16. After *Anthony*, he concluded that the data may be used only for compliance and call prevention, and he queried no Registry data here. *Id.* 18:22-19:8, 70:15-71:4, 85:21-86:16; Kostyun Rpt. ¶¶ 21-22. Any expert who ran Woolfson's comparison, as Woolfson suggests Kostyun could, Woolfson Tr. II 230:6-23, would be making the same prohibited use.

Ex. V; Kostyun Rpt. ¶¶ 17, 26, and § 310.4(b)(2) bars any person from "purchas[ing]" Registry data for these purposes. *Cf. Amato v. Subaru of Am., Inc.*, 2023 U.S. Dist. LEXIS 194588, at *11–17 (D.N.J. Sept. 27, 2023) (permitting proponent to substitute other data where licensed data could not be used). No lawful substitute exists, so supplementation cannot cure the defect.

What remains is Woolfson's word. His archive, which his report did not disclose, consists of TelSwitch's retained copies of superseded files, processed through steps that were not produced. Woolfson Tr. II 187:16–190:17, 226:15–227:7. A proponent who asks the Court "to take [his] word for it" offers "not enough." *SEC v. SBB Rsch. Grp., LLC*, 2024 U.S. Dist. LEXIS 215073, at *41 (N.D. Ill. Nov. 26, 2024); *see Thomas v. GEICO Cas. Co.*, 2024 U.S. Dist. LEXIS 42709, at *11 (N.D. Ill. Mar. 12, 2024) (court "cannot simply rely on Plaintiffs' assertions" about expert's methodology). Woolfson has described the problem himself. Testifying for a defendant in *Carroll v. SGS Automotive Services*, he faulted an opposing expert who "neither provided her underlying foundational data structures nor provided her derivative work product in a form that another expert could use," leaving him "unable to scientifically evaluate her approach and to validate and verify" it. Ex. W at 51 & ¶ 146. The court there excluded that expert, whose methodology was "either not described at all or described simply as 'judgment calls.'" *Carroll v. SGS Auto. Servs., Inc.,* 2020 U.S. Dist. LEXIS 223676, at *21 (M.D. La. Nov. 30, 2020). Other courts have excluded Woolfson's own opinions on this ground. *Dueker v. CRST Expedited, Inc.*, 2020 U.S. Dist. LEXIS 231233, at *12–15 (C.D. Cal. Dec. 7, 2020) (methodology "could not be recreated or reliably tested"); *Rojas v. Marko Zaninovich, Inc.*, 2011 U.S. Dist. LEXIS 106044, at *29–32 (E.D. Cal. Sept. 19, 2011).[5]

[5] Servbank objects in advance to any new analysis, data, or basis offered through a declaration submitted with Plaintiff's opposition. Fed. R. Civ. P. 26(a)(2)(B), 26(e). Courts have excluded late "supplemental" Woolfson submissions offering "additional substantive bases to support his opinions." *Mosier v. Firstsource Sols. USA, LLC*, 2025 U.S. Dist. LEXIS 60052, at *10–18 (N.D. Ohio Mar. 31, 2025); *Carroll v. SGS Auto. Servs., Inc.*, 2020 U.S.

*Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808-09 (7th Cir. 2013), treats disputes over "selection of data inputs" as matters of weight because the opposing party can examine the data; here, no one lawfully can. *Anthony v. Fed. Sav. Bank*, 2025 U.S. Dist. LEXIS 186806, at *12-14 (N.D. Ill. Sept. 23, 2025), admitted Woolfson's opinions over a challenge to the scope of his Registry lists and addressed neither the use restriction nor the testability of his classifications.

## II. WOOLFSON'S TWO-SNAPSHOT METHOD DOES NOT ESTABLISH THE REQUIRED REGISTRATION HISTORY AND IS UNRELIABLE

The class requires DNC registration "for at least 30 days prior to the call." ECF No. 54 at 2. Woolfson's code tests presence in two selected files and omits the daily files between them, although a file exists for every intervening day. Kostyun Rpt. ¶¶ 29-33. Presence at two endpoints does not establish uninterrupted registration in between and when the second file postdates the call, it does not independently establish Registry status on the call date.

Woolfson acknowledged that "the current method that I applied did not" test numbers that drop off and are re-added, and that he assumes continuity "[f]or purposes of the analysis." Woolfson Tr. I 89:11–16, 135:5-13. He offered to run that check, *id.* 135:14–16, but his supplemental declaration, prepared within days, did not. Woolfson Tr. II 147:24–148:3. In another mortgage do-not-call case, he described comparing called numbers "to the index of each day's NDNC Registry, and the incremental additions and deletions of numbers from that list." Ex. X at 8 n.7. He did not do so here. The resulting flags report an assumed registration history as an established class criterion, and the only data that could test the assumption is an archive no one may lawfully use for that purpose. Fed. R. Evid. 702(d).

---

Dist. LEXIS 177719, at *5-6 (M.D. La. Sept. 28, 2020); *see also Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1102-03 (7th Cir. 2019) (affirming refusal to consider expert's affidavit that contradicted his deposition testimony and set forth "a brand new expert opinion").

## III. WOOLFSON'S THREE-SECOND FILTER LACKS A RELIABLE BASIS AND DRIVES THE COUNTS

Woolfson removed 30,836,658 records with durations below three seconds. Supp. Decl. ¶ 8. His reports' only rationale is that three seconds "was the shortest non-zero duration call that had been placed to the Named Plaintiff." *Id.*; Rpt. ¶ 36 & n.13. That call occurred on March 22, 2023, outside the class period; Plaintiff's calls within the period lasted 5, 58, and 397 seconds. Rpt. ¶ 38; Supp. Decl. ¶ 10; Kostyun Rpt. ¶ 48. Applied to the period Woolfson analyzed, his own rationale would yield five seconds and reduce the output from 198,196 numbers to 61,003. Salzberg Rpt. Tbl. 3.

At deposition, Woolfson offered a different rationale based on Internet-telephony setup time and identified no supporting standard. Woolfson Tr. I 37:5–39:9; Kostyun Rpt. ¶¶ 49–51. A rationale first offered at deposition does not supply the "basis and reasons" the report must state. Fed. R. Civ. P. 26(a)(2)(B)(i); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641–42 (7th Cir. 2008); *compare SBB*, 2024 U.S. Dist. LEXIS 215073, at *32–33 (admitting threshold the expert "explained . . . in his expert report" and "only further elaborated" at deposition). He used six seconds until recently, Woolfson Tr. I 39:14–25. Testifying in *Smith v. ExamWorks*, he traced that rule to a single test on his own platform nearly a decade ago that found calls lasting up to six seconds "could have been connected without voice being transmitted." Ex. Z at 10–11 (Woolfson Dep. 64:14–65:22). The court there found that rule "inadequately supported" and called his position that its reliability is for the "trier of fact" "plainly unsatisfactory." *Smith v. ExamWorks, LLC*, 2026 U.S. Dist. LEXIS 213088, at *14 n.3 (D. Md. Sept. 21, 2026) (denying motion as moot after denying certification). He identifies no test supporting three seconds.[6]

[6] Woolfson's duration criterion varies from case to case. *See Mosier*, 2025 U.S. Dist. LEXIS 60052, at *8–9 (describing his declaration that "any calls with a non-zero duration represent connected calls"). Even with roughly seventy-two disposition codes available, he has called a call's connected end-state "a 'best guess.'" Ex. W ¶ 133.

Duration also fails to show what Woolfson uses it to show. The records contain no disposition field, although Plaintiff's subpoena requested "the result" of each call. Ex. A (Req. 1); Kostyun Rpt. ¶ 38. Woolfson does not know whether a three-second call reflected dead air or an abandoned call, and he is "not reaching a conclusion that audio was conveyed." Woolfson Tr. I 44:13–18, 61:5–23. Plaintiff's own records show the problem. Woolfson counts a five-second call on July 18, 2022 as one of Plaintiff's qualifying calls, Supp. Decl. ¶ 10, and agreed that a three-second call "is sufficient to show a connected audio call," Woolfson Tr. I 53:24-54:4. Yet, Plaintiff's call log records a call from the same number, at the same minute on July 18, as a "Declined Call" of zero seconds, though it lists the year as 2023. Ex. AA.

The threshold controls the result. More than 37% of included calls last exactly three seconds, and more than 73% last three or four. Salzberg Rpt. Tbl. 2. Raising the threshold one second reduces the output by about 40% of calls and 30% of numbers; at six seconds, by about 90% and 80%. *Id.* Tbl. 3. And because the TCPA defines a solicitation by the "initiation of a telephone call or message" for an encouraging purpose, 47 U.S.C. § 227(a)(4), a recorded duration cannot establish that purpose.

## IV. WOOLFSON'S ATTRIBUTION AND CLASS-MEMBERSHIP OPINIONS EXCEED THE ANALYSIS HE PERFORMED

*Attribution and provenance.* Woolfson calls the records "Defendant's CDR file" and describes calls "done by or on behalf of" Servbank. Rpt. ¶¶ 1, 35. He concedes that attribution is an assumption drawn from the records' production in this case, "not a fact that [he] established." Woolfson Tr. II 157:22–158:9; *see* Woolfson Tr. I 24:2–24, 30:18–25. He does not know the records' source or extraction process and had no data dictionary. Woolfson Tr. I 23:7–28:12, 31:2–9. He should be barred from presenting attribution, or the records' completeness or authenticity, as expert opinion.

*Numbers, not persons.* The 198,196 figure counts telephone numbers, not persons, subscribers, or registrants. Woolfson Tr. II 242:19–244:16, 247:2–13; Salzberg Rpt. at 2–6. Woolfson did not determine who registered any number, whether the subscriber changed, whether a number was reassigned, or whether a line was residential. Woolfson Tr. II 243:5–245:15; Woolfson Tr. I 89:17–91:10, 93:1–18, 99:12–100:6. The Allied First calls to Plaintiff's own number sought someone else: a "Wayne Howard," whom Plaintiff believes previously held the number. Bronstin Tr. 15:1-17, 78:6-23. Testifying for a defendant, Woolfson stated that, based on his experience with publicly available databases, he knew of no "resource that could be used to reliably identify the owners of telephone numbers or the users of handsets associated with a telephone number at a specified date in the past." Ex. W ¶ 8. He cannot support Plaintiff's assertion that the class has "already been ascertained." ECF No. 54 at 6-7.

*Identification.* The carrier-subpoena process Woolfson proposes has not been performed or tested. Kostyun Rpt. ¶¶ 64–69. It depends on iconectiv data, Rpt. ¶¶ 39–43 & n.8, and iconectiv has directed him to "cease and desist using WDNC Data for any purpose, including post-call analysis and/or litigation purposes." Ex. BB at 4. Woolfson has since testified that he has "stopped using the iconectiv data" "[f]or any purpose." Ex. CC (Woolfson Dep. 95:13-16). A process proposed but never performed offers no proof of its accuracy. *See Carroll*, 2020 U.S. Dist. LEXIS 223676, at *19-20.

*Legal conclusions.* Expert testimony comprising "legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Woolfson should be precluded from testifying that any call violated the TCPA or that the proposed class satisfies Rule 23.

## V. THE COURT SHOULD RESOLVE THESE CHALLENGES BEFORE DECIDING CERTIFICATION

Woolfson's classifications are Plaintiff's class-wide proof of the Registry criterion, so the Court "must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010). Servbank requested this sequence in its September 10 status report. ECF No. 62 at 2. It requests a deadline for its certification opposition 21 days after the Rule 702 ruling.

## CONCLUSION

Servbank requests that the Court exclude Woolfson's Report and Supplemental Declaration as unreliable. Alternatively, Servbank requests that the Court preclude Woolfson from offering: (1) his Registry classifications and the derivative 198,196-number and 985,670-call figures as proof of the class's Registry criterion; (2) testimony that the three-second threshold, or any recorded duration, establishes an answered call, conveyed audio, or a solicitation; (3) purported findings attributing calls to Servbank or establishing complete and authentic carrier records; (4) opinions that his output identifies persons, subscribers, registrants, residential lines, or class members, or reflects a performed or validated identification process; and (5) legal conclusions of TCPA liability or satisfaction of Rule 23; and that it rule before deciding certification.

Dated: October 26, 2026

Respectfully submitted,

By: /s/ Colleen O'Neil

Colleen O'Neil
**MILMAN LABUDA LAW GROUP PLLC**
3000 Marcus Avenue, Suite 3W8
Lake Success, New York, 11042
Tel: 516-328-8899
colleen@mllaborlaw.com
*Counsel for Defendant Servbank SB f/k/a Allied First Bank*

## CERTIFICATE OF SERVICE

I certify that on October 26, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

/s/ Colleen O'Neil