# Exhibit C

## Expert Rebuttal Report of Jan Kostyun

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

ASHER BRONSTIN, on behalf of himself and others similarly situated,

Plaintiff,

v.

SERVBANK SB, FKA ALLIED FIRST BANK,

Defendant.

Case No. 1:25-CV-06182

# EXPERT REBUTTAL REPORT OF JAN KOSTYUN

# TABLE OF CONTENTS


INTRODUCTION AND ASSIGNMENT .......... 1
EXPERIENCE .......... 2
COMPENSATION .......... 3
MATERIALS CONSIDERED .......... 3
METHODOLOGY AND WORK PERFORMED .......... 3
SUMMARY OF OPINIONS .......... 4
DISCUSSION OF OPINIONS .......... 6
I. HISTORICAL DNC CLASSIFICATIONS .......... 6
A. The Source CDRs Do Not Identify Registry Status .......... 6
B. The Available Materials Do Not Permit Reproduction of the Historical Classification Process .......... 8
C. Historical Registry Data Were Not Available to Me for Independent Litigation Analysis .......... 9
D. The Produced SQL Uses a Two-Snapshot Method That Does Not Test Continuous Registration .......... 11
II. SERVBANK ATTRIBUTION .......... 13
A. Technical Information Contained in the Source CDRs .......... 13
B. Woolfson's Attribution Assumption Is Carried Into His Results .......... 15
III. CALL PURPOSE AND OUTCOME .......... 16
A. Technical Limits of the Three-Second Duration Filter .......... 16
B. Non-Zero Call Durations Are Consistent with Multiple Call Outcomes .......... 19
IV. TELEPHONE NUMBERS, PERSONS, AND HISTORICAL LINE USE .......... 20
A. Woolfson's Output Identifies Telephone Numbers, Not Persons .......... 20
B. Woolfson's Proposed Identification Procedures Were Not Performed .......... 22
CONCLUSIONS .......... 23
SUPPLEMENTATION .......... 25

## INTRODUCTION AND ASSIGNMENT

1. Plaintiff Asher Bronstin ("Plaintiff") asserts a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, individually and on behalf of a proposed class. Plaintiff's Brief in Support of Motion for Class Certification ("MCC"), D.E. 54, at 6.

2. Plaintiff seeks to represent the following proposed class:

> All persons within the United States whose phone numbers (i) are included in the call detail records of Diamond Select Lead Group's ("Diamond Select") account produced in this matter, and (ii) received more than one call from Diamond Select in any twelve-month period when their phone numbers were registered on the National Do Not Call Registry, and were registered for at least 30 days prior to the call, (iii) where the calls were placed between July 1, 2022 and August 31, 2022, inclusive.

MCC at 2 (the "Proposed NDNCR Class").

3. On March 17, 2026, Plaintiff disclosed the Declaration of Aaron Woolfson and its supporting exhibits (the "Original Woolfson Report").

4. On June 23, 2026, Plaintiff disclosed the Supplemental Declaration of Aaron Woolfson and its supporting exhibits (the "Woolfson MCC Report").

5. According to the Woolfson MCC Report, Woolfson's methodology resulted in 985,670 call-detail-record ("CDR") rows associated with 198,196 distinct destination telephone numbers for calls dated between July 1 and August 31, 2022. Woolfson's reports, testimony, and produced SQL materials reflect that his process assigned DNC classifications to the call records through comparison with historical copies of the National Do Not Call Registry ("NDNCR" or "Registry") maintained in a separate data environment and then applied additional filters to generate his final output. Woolfson MCC Report ¶¶ 6-12. These figures are Woolfson's reported results. The historical DNC classifications underlying them remain independently unvalidated for the reasons explained below.

6. I have been retained by Defendant Servbank SB f/k/a Allied First Bank ("Defendant" or "Servbank") as a testifying expert witness to evaluate and respond to the technical opinions expressed in the Original Woolfson Report and the Woolfson MCC Report. My assignment includes:

a. evaluating the data flow and DNC-classification process disclosed in Woolfson's reports, testimony, SQL materials, and produced outputs, including the extent to which the produced materials support independent validation of the historical DNC classifications;

b. examining the fields contained in the produced CDRs and final output and assessing the extent to which those fields bear on call attribution, duration, outcome, content, subscriber identity, line use, and call recipient; and

c. assessing the technical support in the disclosed data and materials for the conclusions expressed by Woolfson.

The opinions expressed in this report are based on the materials identified in Exhibit B, the analyses described below, and my professional experience in telecommunications systems, CDRs, telephone-number administration, and related data analysis.

**EXPERIENCE**

7. I have more than 40 years of experience in telecommunications systems and information technology, including work for Bell Telephone Laboratories, GTE, Verizon, Syniverse Technologies, Rogers Wireless, and Colombia's national telecommunications regulator. My relevant experience includes call-center and dialing-system operations; the creation and interpretation of CDRs; telephone-number provisioning, portability, and reassignment; technical implementation of do-not-call suppression processes; relational-database design and SQL-based data analysis; and analysis of telecommunications records in TCPA-related litigation. A further description of my relevant experience, my current curriculum vitae, and the disclosures required by Federal Rule of Civil Procedure 26(a)(2)(B) are attached as Exhibit A.

## COMPENSATION

8. I am being compensated at the rate of $400 per hour for study and analysis, $300 per hour for travel, and $600 per hour for deposition or trial testimony. My compensation is not contingent on the substance of my opinions or the outcome of this matter.

## MATERIALS CONSIDERED

9. In forming the opinions expressed in this report, I considered the facts and data identified in Exhibit B. My opinions also draw upon the education, training, and professional experience described in Exhibit A. The specific regulatory and technical authorities upon which I relied are identified in this report and in Exhibit B.

## METHODOLOGY AND WORK PERFORMED

10. I used methods ordinarily employed in analyzing telecommunications records and data systems. I traced the data flow described in Woolfson's reports and testimony and reflected in the produced SQL and data materials; compared the fields and record counts in the source CDRs, intermediate materials, and final output; examined the disclosed SQL logic and its references to external data sources; compared Woolfson's descriptions of his methodology with the produced materials and output; and applied my telecommunications experience to assess the significance of the CDR fields and duration values. My validation analysis also considered the availability of the underlying source data, system documentation, and referenced external data environment necessary to reproduce and evaluate the historical DNC classifications.

11. The specific work I performed in connection with this report included:

a. Mapping the data flow described in Woolfson's reports and testimony and reflected in the produced materials, including source-CDR ingestion; preparation of destination-number and call-date records; external-server DNC processing; retrieval and application of DNC classifications; application of downstream filters; and generation of the final output.

b. Comparing and inventorying the fields contained in the source CDRs and final output to determine the available information concerning destination, time, duration, client or account, campaign, seller, caller, transfer, outcome, content, subscriber, line use, and service type.

c. Inventorying the dates, scope, and available provenance information associated with my retained point-in-time Registry files.

d. Reviewing the cited regulatory provisions and FTC correspondence to understand the conditions governing access to and use of Registry data in structuring my analysis.

e. Performing a static review of Woolfson's Exhibit 8 SQL code and other identified SQL materials to trace the disclosed data flow, identify references to external tables and systems, and determine the portions of the process that could be evaluated from the produced materials.

f. Analyzing the date-selection logic disclosed in the DNC-labeling script, including the criteria used to select the "tableNow" Registry table (the NDNCR table downloaded on or after the call date) and "table>30" Registry table (the NDNCR table downloaded 32 days or more prior to the call date), and comparing that logic with the available Registry-file index and produced outputs.

## SUMMARY OF OPINIONS

12. Based on my review of the Original Woolfson Report and the Woolfson MCC Report; my review and analysis of the data and documentation made available in this case; and my education, training, and professional experience in telecommunications systems and related data analysis, I offer the following principal opinions:

**Opinion I: Historical DNC Classifications.** Woolfson's reported output depends on historical classifications generated in a separate data environment using a privately maintained historical Registry archive. The materials available for review disclose the resulting classifications, file-level metadata, and portions of the SQL logic, but do not include the historical telephone-number contents, complete import and maintenance process, or executable historical environment necessary to reproduce and evaluate the classifications. The disclosed SQL tests each destination number against only two selected Registry snapshots and does not examine the intervening daily

files for an interruption in the number's appearance. The methodology therefore relies on an untested assumption that appearance in the two selected snapshots reflects continuous registration between them, and the available materials do not permit me to quantify the effect of that assumption. Separately, the Registry access-and-use materials I reviewed do not identify a procedure permitting a retained expert to use historical Registry files for private litigation analysis. Physical delivery of the historical files alone would address possession; independent reproduction and evaluation would also require conditions permitting their use and the missing components of Woolfson's classification process.

**Opinion II: Servbank Attribution.** The produced vendor CDRs and Woolfson's aggregate output do not contain a documented field identifying Servbank or Allied First Bank as the seller, campaign, transfer recipient, or entity on whose behalf any particular call was initiated. Those materials, standing alone, therefore do not provide a call-record-level technical basis for attributing every included call to Servbank or Allied First Bank.

**Opinion III: Call Purpose and Outcome**. A recorded duration of three seconds or more does not, by itself, establish that a call was answered by a live person, that any message was communicated, or that the call contained marketing or solicitation content. The produced CDRs and Woolfson's output do not contain documented fields identifying answer status, call disposition, or communicated content. Accordingly, those determinations cannot be made for each included call from the duration field or the other disclosed CDR fields.

**Opinion IV: Telephone Numbers, Persons, and Historical Line Use**. Woolfson's figure of 198,196 represents distinct destination telephone-number values, rather than 198,196 identified persons. A telephone number, subscriber, authorized user, and call recipient are distinct concepts and may involve different persons. The produced CDRs and Woolfson's output do not identify the

historical subscriber or user associated with each number on the relevant call dates; the person who answered or received any call; whether the same person was associated with a number across multiple calls; or the residential or business use of the number at the relevant time. Those materials also do not contain information sufficient to determine consent or the existence of an established business relationship for each included call.

**DISCUSSION OF OPINIONS**

## I. HISTORICAL DNC CLASSIFICATIONS

### A. The Source CDRs Do Not Identify Registry Status

13. The source CDRs contain fields reflecting, among other information, the destination telephone number, call date and time, call duration, client, and domain. They do not contain a field identifying whether a destination telephone number was registered on the National Do Not Call Registry on the call date or had been registered for at least 30 days before the call. Woolfson assigned DNC classifications through a separate comparison with historical Registry data maintained in his DNC-labeling environment. Woolfson confirmed the need for that historical information in his deposition:

> Q. So to independently determine whether all of the 198,196 numbers met the Registry criterion, any analyst would need access to and would need to analyze historical Registry information, correct?
>
> A. That's a fair statement. (Woolfson 7/27/2026 Dep. 181:17–22)

14. Based on my review of Woolfson's reports and testimony, the available SQL and database materials, and the resulting output files, I mapped the disclosed data flow used to assign the historical DNC classifications. Figure 1 distinguishes the work performed in the local, case-specific environment from the historical-data comparison performed in Woolfson's separate DNC-labeling environment.




Figure 1 - Disclosed Data Flow for Woolfson's Historical DNC Classifications

15. The disclosed data flow can be summarized as follows:

a. Woolfson downloaded Registry files from the FTC on a near-daily basis and used those files to maintain a historical Registry archive. Woolfson testified that files for some dates are absent from the archive. Woolfson 6/12/2022 Dep. at 84:22-85:16.

b. Woolfson imported the Diamond Select CDRs into a local, case-specific database.

c. A preparation process extracted the destination-number and call-date information to be evaluated and made that information available to the separate DNC-labeling environment.

d. The DNC-labeling process compared the submitted destination-number and call-date information with Woolfson's historical Registry archive and assigned DNC classifications.

e. The resulting classifications were retrieved and associated with the corresponding call records in the local case database.

f. Woolfson applied additional criteria and filters relating to call date, duration, telephone-number format, test calls, Registry duration, and call frequency.

16. The resulting output contains 985,670 CDR rows associated with 198,196 distinct destination telephone numbers.

### B. The Available Materials Do Not Permit Reproduction of the Historical Classification Process

17. The produced materials permit review of several portions of this workflow, including the source CDRs, the returned DNC classifications, the disclosed SQL materials, and the downstream reduction of the call population. The subsequently produced Registry-file index also identifies dates, table names, row counts, and filenames associated with files in Woolfson's historical archive. That index contains file-level metadata; it does not contain the telephone-number data against which the call records were compared.

18. The materials available to review do not include:

a. the telephone-number contents of the historical Registry files and tables used to generate the classifications;

b. complete code or documentation showing how the downloaded Registry files were imported, transformed, and maintained in the historical archive; or

c. the external system, database objects, and dependencies referenced by the disclosed SQL, or a functionally reproducible environment containing those components.

19. I can inspect the DNC classifications returned to the local case database and evaluate the disclosed downstream filtering logic. The available materials do not permit me to reproduce the historical comparison that generated those classifications or determine whether each

classification accurately reflects the historical Registry information applicable to the particular destination number and call date. Every CDR row in Woolfson's final output depends on a DNC classification generated through the historical comparison. The resulting limitation therefore applies to all 985,670 CDR rows associated with the 198,196 destination telephone numbers in his reported output.

### C. Historical Registry Data Were Not Available to Me for Independent Litigation Analysis

20. I have maintained access to the National Do Not Call Registry since approximately 2016 in connection with do-not-call compliance work. Before accessing Registry data, a person must certify under penalty of law that the Registry is being accessed solely to comply with the Telemarketing Sales Rule or otherwise to prevent calls to numbers on the Registry. 16 C.F.R. § 310.8(e). My current account provides access to current Registry data for the area codes included in my subscription; it does not provide a means to retrieve the Registry as it existed on specified dates in July or August 2022.

21. I also retain a limited number of isolated Registry downloads obtained in connection with prior compliance work. None corresponds to a date during the proposed July 1 through August 31, 2022 class period. In this matter, I inventoried the dates and geographic scope of those files, but I did not query or compare their telephone-number contents.

22. In *Anthony v. The Federal Savings Bank*, No. 1:21-cv-02509 (N.D.Ill.), I used the FTC's *public* registration-verification service to examine 36 telephone numbers identified in Woolfson's results.[1] I also compared one of those numbers against a retained Registry snapshot

[1] The FTC's public registration-verification service allows anyone to verify the Registry status, and receive the original date of registration, of up to three telephone numbers via email. See https://www.donotcall.gov/verify.html

dated June 1, 2021. The comparison against the retained historical file involved one snapshot and one telephone number; it did not reconstruct Woolfson's archive or reproduce his class-wide classification process. After submitting my report in *Anthony*, I reviewed the Registry access-and-use provisions in 16 C.F.R. §§ 310.4(b)(2) and 310.8(e). Those provisions informed the scope of the work I performed in this matter.

23. Defendant's counsel subsequently asked the FTC whether a retained expert could obtain historical Registry files to evaluate an opposing expert's litigation opinions; receive and use files produced by another Registry account holder for that purpose; qualify under an organization classification that would permit the required certification; or obtain limited authorization from the FTC. In an August 4, 2026 email, FTC staff responded:

> "We are unable to provide historic DNC lists since the TSR makes it clear under Part 310.4(b)(2) that the DNC may not be used 'for any purpose except compliance with the provisions of this part or otherwise to prevent telephone calls to telephone numbers on such lists.'"

See Exhibit C.

24. The FTC response did not identify an organization classification, exception, or procedure under which a retained expert could use historical Registry files to evaluate expert opinions in private litigation. As a result, I did not have access to a historical Registry dataset under conditions allowing the number-level comparison required for this analysis.

25. Physical delivery of Registry files would supply their contents. The Registry access-and-use conditions described above would remain unresolved, including whether those contents could be used for this litigation analysis. Physical delivery also would not supply the complete import, transformation, maintenance, and execution process necessary to reproduce Woolfson's historical classification procedure and determine whether the delivered files were processed in the manner described.

26. A third-party historical dataset could, if its provenance, completeness, relevant dates, accuracy, and conditions of use were established, provide a separate point of comparison. It would not establish the contents of Woolfson's archive, whether his files were imported and maintained accurately, or whether his process selected and used those files correctly. No authenticated third-party dataset covering the relevant dates was available to me for this analysis.

27. Independent validation would require each of the following:

a. the historical telephone-number data Woolfson used to generate his classifications;

b. conditions identified as permitting a retained expert to use those data for this litigation analysis; and

c. the complete process necessary to reproduce and evaluate Woolfson's classifications.

The materials available to me do not provide any of these three components.

### D. The Produced SQL Uses a Two-Snapshot Method That Does Not Test Continuous Registration

28. At his June 12, 2026 deposition, Woolfson testified that his methodology relied on two historical Registry data points. He testified that he first determined whether a telephone number appeared in his copy of the NDNCR on the call date and then determined whether the number also appeared on a date more than 30 days before the call. See Woolfson 6/12/2026 Dep. at 72:7-20.

29. I performed a static review of the SQL code Woolfson produced for selecting these historical Registry data points. On its face, the code assigns two Registry tables to each call record:

a. table>30, consisting of the most recent available Registry table dated earlier than the date 31 days preceding the call; and

b. tableNow, consisting of the earliest available Registry table dated on *or after* the call date.

The code assigns a positive DNC classification if the destination number appears in both selected tables. See Exhibit D, Part 2.

30. The SQL tests the destination number against only these two snapshots. It does not test the intervening daily Registry tables. The produced Registry-file index identifies a file for every date from May 30 through August 31, 2022, encompassing the call dates and intervening period relevant to the Proposed NDNCR Class. Nevertheless, the disclosed SQL does not use those intervening files to determine whether a number remained continuously registered between the two selected dates.

31. The two-snapshot method establishes, at most, that a number appeared in the two selected Registry tables. It could produce a positive classification even if the number appeared in the earlier snapshot, was subsequently removed from the Registry, and was later added again before the second selected snapshot. The disclosed SQL does not test for that condition.

32. Figure 2 illustrates a condition that the disclosed two-snapshot SQL would not detect. Assume that a call occurred on August 31, 2022; that the destination number appeared in Woolfson's July 30 Registry table and remained present through August 3; that the number was absent from the daily Registry tables from August 4 through August 15; and that it reappeared on August 16 and remained present through August 31. Review of the intervening daily tables would reveal the interruption and show that the number's last uninterrupted period of appearance began only 15 days before the call. Woolfson's disclosed SQL, however, would test the number against the July 30 and August 31 tables, find it in both, and assign a positive DNC classification without testing for the intervening absence.

**Daily-Snapshot Review**

July/August 2022

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | **4** | **5** | **6** |
| **7** | **8** | **9** | **10** | **11** | **12** | **13** |
| **14** | **15** | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | **31** | | | |

Registration verification performed for date of call and each of the 31 preceding days reveals August 4-15 non-registration.

**Woolfson's Disclosed Two-Snapshot Method**

July/August 2022

| Su | Mo | Tu | We | Th | Fr | Sa |
|---|---|---|---|---|---|---|
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | **31** | | | |

Two snapshot registration verification fails to reveal August 4-15 non-registration.

**FIGURE 2: Hypothetical Interruption Not Detected by the Disclosed Two-Snapshot Method**

33. The Figure 2 example is illustrative. Because the telephone-number contents of the historical Registry files were not available for my analysis, I cannot determine whether, and if so how frequently, this condition occurred in Woolfson's final output or calculate any resulting error rate. The disclosed methodology therefore relies on an untested assumption of continuous registration, although the available materials do not permit me to quantify the effect of that assumption on the Proposed NDNCR Class.

## II. SERVBANK ATTRIBUTION

### A. Technical Information Contained in the Source CDRs

34. A call-detail record is a system-generated record of a telecommunications event. The information contained in a CDR depends on the system that generated it, the configuration of that system, and the purpose for which the record was maintained or extracted. Standard fields may identify information such as the originating number, destination number, date and time, and recorded duration. The meaning of platform-specific fields ordinarily must be determined from a data dictionary, system documentation, or testimony from a person familiar with the generating system.

35. I reviewed the CDRs produced in this case. The materials available for my review did not include a data dictionary or other technical documentation defining the fields or explaining

how the records were generated or extracted. Certain fields have familiar telecommunications labels, but the precise meaning of the platform-specific fields cannot be determined from their labels alone.

36. The fields most directly bearing on the account or platform associated with the records are labeled *clientid*, *client*, and *domain*. Of the 60,044,125 produced CDRs:

a. 59,062,712 contain the *clientid* and *client* combination "12294" and "Diamond Select Leads"; and

b. 981,413 contain the *clientid* and *client* combination "23806" and "Diamond Select Leads2."

Neither combination identifies Servbank or Allied First Bank.

37. The *domain* field is either blank or contains "dsl.readymode.com." When I accessed that address as of the date of my review, it presented a ReadyMode login screen displaying the heading "Welcome to Diamond Select Leads." This observation, together with the *clientid* and *client* fields, is consistent with the CDRs having been associated with a Diamond Select ReadyMode account. Without a data dictionary or contemporaneous system documentation, the *domain* field cannot be assigned a more specific meaning. The field does not identify Servbank or Allied First Bank.

38. The produced CDRs contain destination-number, originating-number, date-and-time, duration, client/account, domain, and source-IP information. I identified no field in the CDRs documenting:

a. the campaign or product associated with the call;

b. the seller on whose behalf the call was placed;

c. a transfer event or transfer destination;

d. a person or entity accepting a transferred call;

e. a Servbank or Allied First Bank loan officer;

f. the call disposition or outcome;

g. the content of the call or any communication with the called party; or

h. another call-level connection between the record and Servbank or Allied First Bank.

39. Woolfson's aggregate output does not supply this information. It identifies destination telephone numbers, call counts, and beginning and ending dates derived from the source CDRs. It does not add a call-level field connecting any included record to Servbank or Allied First Bank.

40. Accordingly, the source CDR fields and Woolfson's aggregate output do not provide a call-record-level technical basis for determining whether each included call was placed on behalf of Servbank, concerned a Servbank product, was transferred to Servbank, or was accepted by a Servbank representative.

**B. Woolfson's Attribution Assumption Is Carried Into His Results**

41. In the Woolfson MCC Report, Woolfson stated that he had been retained "to determine whether there is a reliable methodology for analyzing the call records in this lawsuit reflecting the calling done by or on behalf of the Servbank SB." Woolfson MCC Report ¶ 1. His Report does not identify any analysis he performed to determine whether the individual CDRs reflected calls made by or on behalf of Servbank.

42. At his July 27, 2026 deposition, Woolfson testified that he assumed the records reflected calls made by or on behalf of Defendant because the records had been produced in this litigation:

> Q. So is it fair to say that based on the fact that these call records were produced within this lawsuit that you're assuming that they were based on behalf of the defendants?

[ Form objection omitted.]

A. Yes.

Q. It's not a fact that you established, is that accurate?

A. Right, the only facts that I established are related to the analysis of the records themselves for the waterfalls and the analysis thereof. (Woolfson 7/27/2026 Dep. at 157:22-158:9)

43. Woolfson's processing applies DNC classifications and other filters to the CDRs, including criteria related to date, duration, geography, and call frequency. Those operations reduce the number of CDR rows, but they do not add a Servbank identifier or test the initial assumption that the calls were made by or on behalf of Servbank.

44. Woolfson's final figures therefore represent 985,670 CDR rows associated with 198,196 destination telephone numbers that satisfied his selected filters, subject to his historical DNC classifications. His analysis does not independently establish whether any particular CDR row reflects a call placed by or on behalf of Servbank, a call concerning a Servbank product, a call transferred to Servbank, or a call accepted by a Servbank representative.

45. Accordingly, characterizing Woolfson's entire output as a population of calls made by or on behalf of Servbank depends on an attribution assumption premise that Woolfson expressly acknowledged he did not establish through his analysis.

## III. CALL PURPOSE AND OUTCOME

### A. Technical Limits of the Three-Second Duration Filter

46. Woolfson applied a duration filter as one step in reducing the source CDRs to his proposed Class output. In the Woolfson MCC Report, he explained:

> I then removed 30,836,658 records that where [sic] the calls contained no duration, or they contained a duration but it had been less than three (3) seconds, which was the shortest

non-zero duration call that had been placed to the Named Plaintiff. (Woolfson MCC Report ¶ 8)

47. Woolfson therefore excluded CDR rows having no recorded duration or a recorded duration of less than three seconds. Rows having a recorded duration of three seconds or more remained eligible for inclusion, subject to his other filters. The stated basis in both of his Reports was that three seconds was the shortest non-zero duration recorded for a call to Plaintiff's 4803 number. See Original Woolfson Report ¶ 31 d., n. 13, ¶¶ 36-37; Woolfson MCC Report ¶ 8.

48. The three-second call identified by Woolfson occurred on March 22, 2023, approximately seven months after the July 1 through August 31, 2022 Proposed NDNCR Class period. Original Woolfson Report ¶ 38. The call also does not appear on Plaintiff's Telephone Solicitation Report. See Exhibit E, Telephone Solicitation Report. More importantly, Woolfson's Reports identify no answer-status, disposition, recording, transcript, or other information establishing what occurred during that call. The example establishes that the CDR contains a recorded duration of three seconds; it does not establish that a three-second duration signifies that a person answered, that audio was conveyed, or that a solicitation occurred.

49. At his June 12, 2026 deposition, Woolfson offered a separate technical rationale for the threshold. He testified that three seconds represented the expected time in a SIP or Voice-over-IP environment for a conversational channel to be established and for audio to be capable of transmission. Woolfson 6/12/2026 Dep. at 37:5-39:9. He did not identify his rationale or cite a supporting technical standard in either Report. When questioned at his deposition, he could not identify a specific standard supporting the three-second threshold. *Id.* at 37:19-38:10.

50. Call-setup delay and recorded call duration are distinct measurements. Call-setup delay concerns the time required to establish or attempt to establish a communications session. Recorded call duration depends on the events the generating system uses to start and stop its

duration counter. Without documentation defining the *duration_in_seconds* field in these CDRs, the recorded value cannot reliably be mapped to particular SIP-signaling events, answer supervision, media establishment, or communication with a person.

51. RFC 6076, *Basic Telephony SIP End-to-End Performance Metrics*, illustrates this distinction. It separately defines Session Request Delay and Session Duration Time. For a successfully completed SIP session, Session Duration Time is measured using specified signaling events, beginning with receipt of a successful 200 OK response to an INVITE and ending with receipt of a BYE message. The RFC explains that its metrics measure signaling and expressly provide no numerical objectives or acceptance thresholds for those metrics. It does not establish three seconds as a threshold for determining whether a person answered a call or whether audio content was communicated.[2]

52. Woolfson ultimately acknowledged this limitation:

> "I don't know if audio is conveyed in all these circumstances."

Woolfson 6/12/2026 Dep. at 45:24 – 46:10.

53. Accordingly, the three-second filter is a selection rule applied by Woolfson rather than an independently validated indicator of call outcome. A recorded duration of three seconds or more, standing alone, does not establish that:

a. the call received answer supervision;

b. a live person answered;

c. a voicemail or automated system answered;

d. a media channel carrying audible content was established;

[2] D. Malas & A. Morton, *Basic Telephony SIP End-to-End Performance Metrics*, RFC 6076 §§ 1, 4.3, 4.5 (Jan. 2011) https://datatracker.ietf.org/doc/html/rfc6076.

e. any words or prerecorded message were communicated;

f. the called party heard or received a message; or

g. the call was made for a solicitation purpose.

54. Those determinations would require additional information concerning the technical definition of the duration field, answer or disposition status, signaling events, recordings, call content, campaign, or comparable contemporaneous data. That information is not contained in the CDRs or Woolfson's aggregate output.

**B. Non-Zero Call Durations Are Consistent with Multiple Call Outcomes**

55. Based on my experience with telecommunications systems and call-detail records, a non-zero duration may be recorded under several circumstances, depending on the dialing platform, telecommunications network, carrier, receiving device, and system configuration. These circumstances may include a carrier intercept or announcement associated with a non-working number; answering-machine-detection processing; a brief live answer followed by an immediate hang-up; connection to an answering machine or voicemail greeting; or routing through a carrier-based or device-based call-filtering or call-screening feature.

56. The produced CDRs do not contain answer-status, call-disposition, signaling, recording, transcript, or content fields that would permit an analyst to distinguish among these possible outcomes for an individual call. Consequently, the duration field alone does not provide a technical basis for determining that a particular call reached a live recipient, that audio was delivered to a recipient, or that a solicitation was communicated.

## IV. TELEPHONE NUMBERS, PERSONS, AND HISTORICAL LINE USE

### A. Woolfson's Output Identifies Telephone Numbers, Not Persons

57. Plaintiff's Proposed NDNCR Class is defined as "[a]ll persons within the United States whose phone numbers" satisfy the stated criteria. MCC at 2 (emphasis added). Woolfson's reported figure of 198,196, however, is a count of distinct destination telephone-number values remaining after he applied his filters. It is not a count of identified persons, subscribers, users, or call recipients.

58. The source CDRs do not contain the name, address, or other identifying information of the historical subscriber or user associated with a destination number. They also do not identify the person, if any, who answered a particular call. Registry data do not supply that information. According to the FTC, the only consumer information available through Registry downloads is registrants' telephone numbers.[3] Combining the CDRs with Registry information therefore does not identify the person associated with a number.

59. Woolfson's final output identifies each destination telephone number, the number of calls satisfying his selected criteria, and the beginning and ending dates of those calls. It does not identify the historical subscriber, an authorized or customary user, the person who answered a call, whether the number was reassigned during the relevant period, or the residential or business use of the line. It also contains no fields purporting to identify consent or an established business relationship.

60. Woolfson's analysis does not determine whether the same person was associated with a destination throughout the relevant period, whether more than one person used a number,

---

[3] Federal Trade Commission, *Q&A for Telemarketers & Sellers About DNC Provisions in TSR,* Question 18, "What information can I access from the national registry?" (stating that the only consumer information received from the Registry is registrants' telephone numbers) https://www.ftc.gov/business-guidance/resources/qa-telemarketers-sellers-about-dnc-provisions-tsr-0#accessingtheregistry.

whether one person was associated with multiple numbers in the output, or whether the person associated with a number was the person who answered any particular call.

61. Woolfson acknowledged that his reported figure of 198,196 represents distinct telephone numbers rather than identified persons or subscribers:

> Q. So for the 198,196 numbers those figures are telephone numbers not identified persons or subscribers, correct?
>
> A. That is correct. Those are distinct telephone numbers.
>
> Q. So you did not determine how many distinct persons controlled the numbers, correct?
>
> A. Right, that's a different – that's a different exercise. (Woolfson 7/27/2026 Dep. 242:19-243:4)

62. At his initial deposition, Woolfson also acknowledged that he had not determined whether the numbers in his original output were residential or business numbers:

> Q. So then it is accurate to say then that you did not personally verify that any of the numbers on your 1.2 million list were residential numbers, although you have provided a method that you believe can help to establish that, is that accurate?
>
> A. That is correct.
>
> Q. Did you bother to verify whether the named plaintiff's number was a residential number?
>
> A. No. (Woolfson 6/12/2026 Dep. at 93:8-18)

The Woolfson MCC Report does not describe any subsequent procedure used to determine the historical residential or business use of the 198,196 numbers in his supplemental output.

63. Woolfson's current analysis therefore establishes the number of distinct destination-number values satisfying his selected filters. It does not establish that those 198,196

numbers represent 198,196 distinct persons, identify the persons associated with those numbers during the relevant period, or determine the historical residential or business use of the lines.

**B. Woolfson's Proposed Identification Procedures Were Not Performed**

64. Woolfson has referred to reverse-lookup services as a possible means of obtaining additional identifying information. He did not apply a reverse-lookup procedure to the 198,196 numbers, specify the matching criteria to be used, resolve results identifying multiple possible persons, or test the accuracy of such a procedure against a representative sample of his output. Consequently, no reverse-lookup analysis in Woolfson's work connects the destination numbers to particular persons during July or August 2022.

65. The Original Woolfson Report also describes a possible future process involving identification of historical telephone carriers, service of subpoenas, and collection of subscriber information. Woolfson did not perform that process for either his original or supplemental output He did not identify the historical carrier for each number and call date, issue the proposed subpoenas, obtain subscriber records, or validate the proposed procedure against any portion of his output.

66. Number portability creates an additional technical step because the carrier currently serving a number may differ from the carrier that served it on a historical call date. Woolfson proposed using iconectiv's PortData Comply service (aka Wireless Do Not Call, "WDNC") as part of this process. Publicly available iconectiv materials state that access to NPAC-derived data is restricted to qualified entities for permitted uses and describe PortData Comply as providing information concerning telephone numbers ported between wireless and wireline service.[4] Those

---

[4] Iconectiv, *Services Overview: Solutions for Accessing NPAC Data*; iconectiv, *PortData Comply Service* https://numberportability.com/services/overview.

descriptions do not state that PortData Comply, standing alone, identifies the carrier serving each telephone number on each historical call date, as would be necessary to direct the proposed subpoenas to the appropriate carriers.

67. Woolfson further testified that he was not currently using iconectiv data in this case Woolfson 6/12/2026 Dep. at 125:11-17. No historical-carrier analysis using iconectiv data appears in the work that produced his 198,196-number output.

68. Even if historical subscriber records were later obtained, those records would require additional correlation and analysis. Subscriber information would not necessarily identify the person who answered a particular call, establish whether the same person controlled a number throughout the relevant period, determine the content or purpose of a call, or identify consent associated with a particular person and call.

69. Woolfson's proposed identification procedures therefore remain unperformed future work. His existing CDR and Registry output identifies destination telephone numbers satisfying his filters, but it does not identify the persons associated with those numbers during the relevant period or establish the historical use of the lines.

**CONCLUSIONS**

70. Woolfson's final output consists of 985,670 CDR rows associated with 198,196 distinct destination telephone numbers selected through his filters and separate historical-Registry classification process.

71. The materials available for review do not contain the historical telephone-number data and complete process necessary to reproduce Woolfson's classifications and determine whether they accurately reflect the Registry on the relevant dates.

72. The Registry access-and-use provisions and FTC correspondence reviewed in connection with this engagement do not identify a procedure under which an independent expert could use historical Registry files for this private litigation analysis. Physical possession would supply the files but leave unresolved the conditions governing their use for that purpose.

73. The produced SQL selects two Registry snapshots for each call and does not test the intervening daily Registry files to determine whether a number remained continuously registered between the selected dates. The disclosed methodology therefore relies on an untested assumption of continuous registration. Because the telephone-number contents of the historical Registry files were not available for my analysis, I cannot determine whether or how often an intervening removal and re-addition occurred among the number in Woolfson's final output or calculate any resulting error rate.

74. The source CDRs and Woolfson's aggregate output do not provide a call-record-level technical basis for determining whether each included call was placed on behalf of Servbank, concerned a Servbank product, was transferred to Servbank, or was accepted by a Servbank representative.

75. A recorded duration of three seconds or more does not establish that a live person answered, that audio was conveyed to a recipient, that any particular content was communicated, or that the call involved a solicitation. The produced CDRs lack the answer-status, disposition, signaling, recording, transcript, and content information needed to make those determinations for the individual calls.

76. The figure of 198,196 represents distinct destination telephone numbers rather than identified persons or subscribers. Woolfson's output does not identify the historical subscriber or user associated with each number, the person who answered a particular call, whether a number was reassigned during the relevant period, the residential or business use of the line, consent, or an established business relationship.

77. These opinions are based on the materials identified in this Report and the analyses described herein.

## SUPPLEMENTATION

78. Any supplementation or correction of this Report will be made in accordance with Federal Rule of Civil Procedure 26(e), the applicable scheduling orders, and any further order of the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August, 26, 2026 in Burlington, Connecticut.

Jan Kostyun

# EXHIBIT A

## Jan Kostyun CV

Relevant experience and CV

1. I am an independent technology consultant with over 40 years of experience covering the areas of telecommunications, enterprise architecture, and information technologies. I received both a Bachelor of Science degree (magna cum laude) in Mathematics, as well as a Master of Science degree in Computer Science, from Union College in 1976. I have been directly employed in various capacities by major telecommunications companies, including Bell Telephone Laboratories, GTE, Verizon, and Syniverse Technologies. I have also been engaged as a consultant on various telecommunications issues by telecommunications companies and regulatory authorities, including Rogers Wireless (the largest wireless carrier in Canada), CRC (the national telecommunications regulatory agency of Colombia), and Syniverse Technologies. I have worked at numerous technical levels in software development, database technology, and enterprise architecture. I have worked for over 20 years providing consulting services, software development, and data analysis in the field of telephone number portability. This experience covers landline, wireless, and intermodal (landline-to-wireless or wireless-to-landline) number portability, as well as telephone number pooling. I have played lead roles in the technical and organizational processes of porting landline numbers in the U.S. as well as wireless numbers in the U.S., Canada, and Colombia.

2. As a software architect for Bell Telephone Labs, GTE, Verizon, and Syniverse, I also developed expertise in areas such as landline and wireless number provisioning, including the end-to-end process of establishing service for an initial subscriber; landline and wireless order-entry, including the collection of subscriber contact information; initial implementation of the National Do Not Call registry; technical experience with telecom features such as voice calling, SMS messaging, fax transmissions, voicemail, auto dialer and Interactive Voice Response Unit

(IVRU) technology, and switching implementations; and a wide variety of telecommunications industry standards.

3. I also have extensive experience in database methodologies, data analysis, and data mining. My experience with database technologies includes hierarchical, network and relational database models and implementations. I have instructed working professionals on the use of database programming, support and internal architecture, and have developed database training courses. I am proficient with advanced database modeling, optimization and query techniques, as well as the development of database software applications. I have personally performed database queries and data analysis against hundreds of data stores, including but not limited to Internal and National Do Not Call lists, Wireless Block identifiers, the FCC's Reassigned Numbers Database, Number Portability transaction lists, and telephone call records produced by both wireless carriers and businesses involved in dialing campaigns.

4. I have extensive experience with call center operations and various dialing systems, including those used for inbound and outbound calling campaigns. In my tenure with GTE/Verizon, I performed early research with Intel-based Computer Telephony Interfaces (CTI), including text-to-speech translation and automated dialing interfaces. I have worked closely with IVRU engineers and application architects to develop programmatic interfaces used for inbound and outbound calling. I have worked closely with call center personnel at telecom businesses such as GTE, Verizon, Syniverse and Rogers Wireless while supporting Customer Relations Management (CRM) applications that include interfaces to inbound and outbound dialing systems. I have analyzed dialing systems and features from vendors such as Avaya, LiveVox, CallFire, RingCentral, Cisco, Five9, Ytel, Nice-InContact, GTE, Txtwire Technologies, Stratics Networks, InfoLink Technologies, Interactive Intelligence, Aspect, Chase Data Corp, Just Deliver It, Betwext and TCN, among others. I have been retained to provide

opinions regarding ATDS capabilities in *Lutman v. Harvard Collection Services*, *Couser v. Cucamonga Valley Medical*, *Williams v. Bluestem*, *Schaevitz v. Braman Hyundai*, *Green-Mobley v. Capital One Auto Finance*, *Carpenter v. World Omni Financial*, *Garcia v. Target*, *Diaz-Lebel v. Target*, *Eisenband v. Schumacher*, *Gonzalez-Pagan v. Redwood*, *Preman v. Pollo*, *Scherkanowski v. Bluegreen*, *Snyder v. U.S. Bank*, *Thomas v. Peterson's*, *Wijesinha v. Bluegreen*, *Moraitis v. The HELPcard*, *Quintana v. BB&T, Grome v. USAA Savings, Hill v. USAA Savings, Howerton v. USAA Savings, Turner v. USAA Savings*, *Hage v. World Financial Group*, among others.

5. For the past 12 years I have worked as a consultant and expert witness on cases covering TCPA issues, patent litigation, software copyright infringement and trade secret misappropriation, software value determination, vandalism, and sabotage of application programs. I have testified both in deposition and in court. My opinions have never been stricken or rejected, and have been cited in support of denial of class certification in multiple TCPA cases.

6. A copy of my curriculum vitae is attached below.

7. I have not authored any publications in the past 10 years.

8. In the past four years, I have been retained to provide Deposition testimony as an expert in the following matters: *Watson v. Georgia Auto Pawn*, No. 1:24-cv-00906 (N.D. Ga.); *McGonigle v. Laurice El Badry Rahme, LTD. d/b/a Bond No. 9*, No. 1:24-cv-1742 (E.D. Va.); *Dribben et. al. v. HomeFix Custom Remodeling*, No. 1:22-cv-01143 (D. Md.); *Shafer v. Toyota of Boardman*, No. 4:25-cv-941 (N.D. Ohio); *Leedy vs. US Med Direct*, No. 5:25-cv-00631 (M.D. Fla.); *Brooks v. PSCU and Lone Star*, No. 8:24-cv-2983 (M.D. Fla.); *Banks v. Sunrun*, No. 4:24-cv-7877 (N.D. Cal.); *Hiller v The Money Source*, No. CV-23-00235 (D. Ariz.); *Lawson v VisionWorks*, No. 6:23-cv-1566 (M.D. Fla.); *Mantha v. QuoteWizard*, No. 1:19-cv-12235 (D. Mass); *Scott v. The Federal Savings Bank*, No. 3:21-cv-00291 (D. Or.); *Witvoet v. Pat Tumilty*, No. 1:22-cv-04236 (N.D. Ill.); *Myrick v. AdaptHealth*, No.

6:22-cv-484 (E.D. Tex.); *Morris v. Lincare*, No. 8:22-cv-02048 (M.D. Fla.); *Powers v. Receivables Performance Management*, No. 4:18-cv-12125 (D. Mass.); *Perrong v. Matthew Bradford, Cleo Communications*, No. 2:23-cv-00510 (D. Pa.); *Ackerman v. Look Both Ways Insurance*, No. 4:23-cv-00061 (D. Va.); *Settle v. Senior Choice Plans*, No. 1:23-cv-01063 (S.D. Ind.); *Gurzi v. Penn Credit*, No. 6:19-cv-00823 (M.D. Fla.); *Gruber v. Yelp*, No. CGC 16-554784 (Cal. Superior); *Clemons v. State Farm*, No. 4:21-cv-00678 (E.D. Mo.); *Rowan v. United Enrollment Services*, No. 9:22-cv-80235 (S.D. Fla.); *Sapuy v. Roosevelt Field Mall Dental*, No. 2:21-cv-03222 (E.D. N.Y.); *Rose v. New TSI Holdings*, No. 1:21-cv-05519 (S.D. NY); *Mey v. Matrix*, No. 5:21-cv-00062 (N.D. W.V.); *Anthony v. The Federal Savings Bank*, No. 1:21-cv-2509 (N.D. Ill.); *Dickson v. Direct Energy*, No. 5:18- cv-182 (N.D. Oh.); *Saunders v. Dyck O'Neal*, No.1:17-cv-00335 (W.D. Mich.). I have not provided any trial testimony in the past four years.

# Jan Kostyun CV



Jan Kostyun is an independent technology consultant with over 40 years of experience covering the areas of telecommunications, enterprise architecture, and information technologies. He has been directly employed in various capacities by major telecommunications companies, including Bell Telephone Laboratories, GTE, Verizon, and Syniverse Technologies. He has also been engaged as a consultant on various telecommunications issues by telecommunications companies and regulatory authorities, including Rogers Wireless (the largest wireless carrier in Canada), CRC (the national telecommunications regulatory agency of Colombia), and Syniverse Technologies. He has worked at numerous technical levels in software development, database technology, and enterprise architecture. He has worked for over 20 years providing consulting services, software development, and data analysis in the field of telephone number portability. This experience covers landline, wireless, and intermodal (landline-to-wireless or wireless-to-landline) number portability, as well as telephone number pooling. He has played lead roles in the technical and organizational processes of porting landline numbers in the U.S. as well as the porting process for wireless numbers in the U.S., Canada, and Colombia.

As a software architect for Bell Telephone Labs, GTE, Verizon, and Syniverse, Mr. Kostyun also developed expertise in areas such as landline and wireless number provisioning, including the end-to-end process of establishing service for subscribers; landline and wireless order-entry, including the collection of subscriber contact information; initial implementation of the National Do Not Call registry; technical experience with telecom features such as voice calling, SMS messaging, fax transmissions, voicemail, auto dialer and Interactive Voice Response Unit (IVRU) technology, and switching implementations; and a wide variety of telecommunications industry standards.

Mr. Kostyun also has extensive experience in database methodologies, data analysis, and data mining. His experience with database technologies includes hierarchical, network and relational database models and implementations. He has instructed working professionals on the use of database programming, support and internal architecture, and has developed database training courses. He is proficient with advanced database modeling, optimization and query techniques, as well as the development of database software applications. He has personally performed database queries and data analysis against hundreds of data stores, including but not limited to Internal and National Do Not Call lists, Wireless Block identifiers, Number Portability transaction lists; carrier call detail records; telephone number reverse-lookup data records from commercial data vendors; and call records and text messaging records from platforms used by a variety of vendors.

For the past ten years Mr. Kostyun has worked as a consultant and expert witness on cases covering TCPA issues, patent litigation, software copyright infringement and trade secret misappropriation, software value determination, vandalism, and sabotage of application programs.

Mr. Kostyun's expert witness work in TCPA cases has covered: wrong number and reassigned number calls; National and internal do not call violations; Identification of the use of artificial or prerecorded voice, Consent and revocation of consent analysis; Identification of call recipient location; Wireless/landline identification; Capacity of dialing systems to generate telephone numbers and dial without human intervention; Ascertainability of class members based on telephone number; Carrier subpoena process; Voice calling; SMS/text messaging; Fax transmission; and Ringless Voicemail delivery. Mr. Kostyun has testified both in

deposition and in court, his opinions have never been stricken or rejected, and he has been cited in support of denial of class certification, and award of Summary Judgment in multiple TCPA cases.

**Professional Experience:**

**2012 to present** ***Independent Consultant*** ***Middletown, NJ/Burlington, CT***

Representative case descriptions:

- Expert witness representing defendant under civil case alleging violation of Telephone Consumer Protection Act (TCPA). Extensive review and critique of plaintiff's expert witness reports; data analysis and research of very large call-record databases, alleged call violations and ported telephone numbers; and ATDS evaluation. Preparation of expert report in support of defendant, contributing to denial of class certification and judgment in favor of defendants.
- Expert consultant representing defendant in civil case alleging violation of TCPA. Provided analysis and report of plaintiff telephone numbers, porting activity and subscriber information.
- Expert consultant representing defendant under class action complaint alleging violation of TCPA involving text messaging/SMS activity. Provided analysis and report of CTIA/Wireless Industry best practices for short code messaging campaigns.
- In class action TCPA case, served as expert to provide ATDS evaluation, analysis of express consent and TCPA applicability of contested texts and voice calls.
- In class action TCPA matter, developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones. Also developed expert report rebutting opposing expert's data analysis and subscriber identification, contributing to denial of class certification and exclusion of Plaintiff's expert report.
- Expert witness in class action TCPA complaint, providing in-depth analysis of National and internal Do Not Call (DNC) records and very large volume call record files, and critical assessment of opposing expert's data analysis.
- In class action TCPA case, developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of fax telephone numbers. Also developed expert report rebutting opposing expert's opinions regarding successful completion of fax transmissions and identification of fax recipients.
- In class action TCPA matter, developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones and residential landlines.
- In class action TCPA matter, developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC and wrong number calls, and addressing technical aspects of identifying users/subscribers of cell phones.
- In class action TCPA matter, performed extensive analysis of high-volume call data records against internal and national DNC files.
- In class action TCPA case, analyzed call data records, performed testing and analysis of defendant's telephone calling system and provided opinions addressing defendant's alleged use of an ATDS for telemarketing purposes.
- In class action TCPA case, developed expert rebuttal report challenging opposing expert's data analysis methodology, and addressed technical aspects of identifying users/subscribers of cell phones.
- In class action TCPA matter, developed expert rebuttal report challenging opposing

expert's data analysis results of alleged DNC violations, and addressed technical aspects of identifying users/subscribers of cell phones.

- In class action TCPA matter, developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC violations, reliability of opposing expert's data vendors, and addressed technical aspects of identifying users/subscribers of cell phones.
- In class action matter involving the Washington Automatic Dialing and Announcing Device (WADAD) statute, provided expert analysis and support regarding carrier records, carrier subpoena responses, and identification of wireless/landline subscribers and calls within specific geographic boundaries.
- In class action TCPA case, rebutted opposing expert's analysis of wrong number designations, and class member identification, contributing to denial of class certification.
- In multiple class action matters, provided analysis of Defendant's dialing equipment and opinions addressing the capacity store or produce telephone numbers to be called, using a random or sequential number generator, as well as the capability to dial telephone numbers without human intervention.

**2009 to 2011** **Senior Consultant**
***eComp Consultants*** ***Tampa, FL***

Provided consulting on design and development of software products and wireless technology. Provided technology consulting and expert support for enterprise architecture, software engineering and telecommunications in the areas of:

- Patent portfolio evaluation, market valuation, and prior art analysis.
- Patent litigation consulting for information technology in telecommunications, wireless and enterprise architecture for validity/invalidity and infringement/non-infringement analysis.
- Software contract analysis for disputes involving custom software, software copyright and trade secret infringement, and software valuation.
- Functional analysis, Source Code reviews, Damage Assessment analysis and software tampering evaluation.

**2009 to 2010** ***Independent Consultant*** ***Tampa, FL***

Collaborated with Value Partners Management Consulting firm in preparation of proposal to the Colombian National Regulatory Agency for implementation of Wireless Number Portability across Colombia.

**Prior experience** **Senior Consultant**
***BusinessEdge Solutions/EMC*** ***Toronto, Ontario, Canada***

Provided strategic and tactical guidance to Rogers Wireless, Canada's largest wireless carrier, in the successful, on-schedule implementation of Canadian wireless number portability.

- Developed detailed specifications for Rogers' internal business applications interface to the Syniverse/Telcordia Service Management Gateway (SMG) for communication of wireless port requests & responses to wireless and wireline trading partners.
- Served as Rogers' representative to several industry-level committees, including SMG Defect Management and SMG Testing, acting as liaison between Rogers and all

Canadian carriers. Developed detailed specifications for acceptance and regression testing of SMG for entire Canadian industry.

- Provided integration expertise to Rogers' application development, network administratic system testing, production support, and program management teams.
- Provided in-depth knowledge of Telcordia SMG interface, Canadian portability standards (CWNPG and CLOG), Wireless to Wireline (WPR to LSR) translation requirements, and post-implementation data analysis to determine customer porting trends and roadblocks.

**Senior Consultant**
***Syniverse Technologies*** ***Tampa, FL***

Served as development specialist & subject matter expert during implementation of U.S. Wireless Number Portability (WNP). Designed the reporting data warehouse and client billing processes which support Syniverse's WNP & ICC Clearinghouse product offerings.

- Provided significant expertise in the technical internals, database design and API requirements of Telcordia's SMG platform; WNP WICIS Industry standards; InterCarrier Communications (ICC) Process; Service Order Administration (SOA)/NPAC interaction; and Tekelec LSMS database access.
- Subject matter consultant to other Syniverse WNP product offerings, including Pre-port Validation, Fallout Management, Wireline Porting and PortFlow Management. Responsible for interaction and consulting with Sales, Business Development, Training and Production Support organizations.
- In-depth experience with Cellular Provisioning, GSM/CDMA technologies, SIM Card provisioning

**Software Engineer**
***Verizon Communications*** ***Tampa, FL***

Served as Enterprise Integration Architect for Local Number Portability (LNP) and Telephone Number Pooling (TNP) projects. Responsible for development of enterprise-level architecture and system integration of 38 major applications in order to develop and deploy Wireline LNP and Number Pooling capabilities for the entire former-GTE operating area.

- Managed technical team of 30+ individual project architects, including interaction with program management, functional owners, development teams, system testers and production support personnel.
- Coordinated retail and wholesale ordering, provisioning, billing and service assurance business functionality.
- Developed significant expertise in number portability network element systems (Telcordia's LSMS and SOA), including low-level knowledge and direct access to LSMS internal databases.
- Directly responsible for the successful national deployment of LNP/TNP in GTE/Verizon West. Maintained close working relationship with Network Engineering's TN Administrator, assisting with LSMS extracts for reconciliation processes, TNP block donation and block allocation processing, and creative use of LNP capabilities for special customer requests.

**Senior Advisory Systems Engineer**
***GTE Telephone Operations*** ***Tampa, FL***

Provided extensive systems development work as enterprise architect and development team project manager.

- Developed technical specifications for numerous systems across GTE Telephone Operations, primarily within the Customer Contact and Operations domains. Technical specifications established the hardware, software and network architecture with emphasis on a distributed, UNIX-based, client/server environment.
- Established corporate standards for Relational DBMS products, including interaction with Oracle and Informix vendors
- Established corporate standards for UNIX hardware and operating system platforms, including interaction with SUN, HP and IBM vendors.
- Managed application development for TCOM, a distributed, IBM-based bulk mail processing application
- Application technical lead for Central Office personnel dispatch and work allocation application.

**Senior Database Analyst**
***Exxon Company, USA*** ***Houston, TX***

Provided database analysis and database administration in large-scale IBM environment, specializing in project team support, implementation of DB2/SQL and use of IBM utilities, IBM Dialog Management Services.

**Senior Database Analyst**
***Ford Aerospace*** ***Houston, TX***

Served as key member of application team for NASA contractor responsible for Shuttle Simulator Reconfiguration System. Responsibilities included data analysis and database design, and application lead.

**Senior Consultant**
***Informatics, Inc.*** ***Houston, TX***

Consulted for major oil & gas and technology clients, offering application conversions, development of new systems, and application optimization. Conducted international technical training classes in IBM IMS DB/DC, IBM Utilities and IBM Internals

**Senior Systems Analyst**
***GTE Data Services*** ***Tampa, FL***

Served as project lead and technical advisor for development of IBM/IMS-based customer billing application and IBM/CICS online order-entry application. Specialized in deployment of mini-computer office-automation systems.

**Technical Lead**
***Bell Telephone Laboratories*** ***Piscataway, NJ***

Application lead for development of IBM/IMS-based Inventory Management system implemented across entire Bell System.

**Education:**

B.S. Mathematics – Magna Cum Laude — Union College, Schenectady, NY

M.S. Computer Science — Union College, Schenectady, NY

| | | |
|---|---|---|
| **Wireless Communications** | 7 years | Syniverse/Telcordia Service Management Gateway (SMG), Canadian portability standards (CWNPG and CLOG), Wireless to Wireline (WPR to LSR) translation, Wireless Number Portability (WNP) & WICIS Industry standards, InterCarrier Communications (ICC), Service Order Administration (SOA)/NPAC,; and Tekelec LSMS database, Wireline Porting and PortFlow Management, Provisioning, GSM/CDMA technologies, SIM Card Provisioning |
| **Telecommunications** | 25 years | Local Number Portability (LNP), Telephone Number Pooling (TNP), Telcordia's LSMS and SOA, Customer Contact, Provisioning & Operations, eCommerce applications |
| **Database Technology** | 30 years | IBM IMS Database/Data Communication; DB2/SQL database design, Performance Optimization, Query Specialist; Informix; ORACLE; Logical Data Modeling; MS Access |
| **Software Engineering** | 20 years | Enterprise integration, Order Entry/CRM, Trouble Management, Provisioning, Customer Billing, Work Allocation/Work Management, Inventory Management |

**Tools & Platforms**

| | |
|---|---|
| **Languages and tools:** | IBM Assembler, FORTRAN, COBOL, C, C++, JAVA, Visual Basic, IMS DB/DC, CICS, DB2/SQL, Informix, Oracle, MS Access/SQL, HTML, MS Office, WordPress |
| **Platforms:** | IBM Mainframe/370, IBM 4300, IBM 9700, IBM RS/6000, HP 9000, Sun SPARC, Windows-based PC |
| **Operating Systems:** | IBM MVS, IBM DOS/VSE, AIX, HP-UX, UNIX, Solaris, MS-DOS, Windows |
| | |
| **Professional:** | Published article in *Computerworld*, 9/24/84: "IBM ISPF dialog manager: More than meets the eye" |

**Case Experience:**

**Adam Hage et. al. v World Financial Group and TransAmerica Corp**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Illinois |
| Client: | World Financial Group and TransAmerica Corp, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Engaged as consulting expert to analyze alleged text message violations and opine on ability to ascertain class members based on telephone numbers. |
| Represented by: | Chittendon, Murday & Novotny LLC |

**Alex Jacobs et. al. v Quicken Loans, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Quicken Loans, Inc. as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones. Also developed expert report rebutting opposing expert's data analysis and subscriber identification, contributing to denial of class certification and exclusion of Plaintiff's expert report. |
| Represented by: | Goodwin Procter LLP |

**Amber Goins et. al. v Walmart and Palmer Recovery**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Walmart and Palmer Recovery as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's data analysis, historic wireless identification and subscriber identification. |
| Represented by: | Shepard, Smith, Kohlmyer & Hand, P.A. / Sheppard, Mullin, Richter & Hampton, LLP |

**Andrew McGonigle et. al. v Laurice El Badry Rahme, Ltd. d/b/a Bond No. 9**

| | |
|---|---|
| Jurisdiction: | United States District Court, Eastern District of Virginia |
| Client: | Bond No. 9 as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert rebuttal addressing the ability to identify violations of the National Do Not Call Registry and identification of calls to disconnected numbers via the Reassigned Numbers Database (RND). |
| Represented by: | Williams Mullen |

**Andrew Perrong v Cleo Communications LLP, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Eastern District of Pennsylvania |
| Client: | Cleo Communications as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert consulting regarding the ability to identify violations of the National Do Not Call Registry, and characteristics of Automatic Telephone Dialing Systems |
| Represented by: | Comegno Law Group, PC |

**Ameranth v Six Continents Hotels**

| | |
|---|---|
| Jurisdiction: | Superior Court of DeKalb County, State of Georgia |
| Client: | Six Continents as defendant in complaint for web advertising misuse and trade secret infringement of web-based concierge application |
| Nature of Case: | Web Advertising Analysis and Intellectual Property Litigation |
| Nature of Engagement: | Consulting expert analyzing web-based advertising practices, user interfaces, and development models; provided expertise in web marketing, online advertising, and eCommerce technology development standards, design and architecture. |

| | |
|---|---|
| Represented by: | Alston & Bird |

**Angela Gurzi et. al. v Penn Credit Corporation**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Penn Credit as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the barriers to identifying historical users and subscribers associated with telephone numbers. Identified unreliability with the delivery status of direct-drop/ringless voicemail messages. |
| Represented by: | Golden Scaz Gagain, PLLP |

**Anthony Gonzalez-Pagan et. al. v Redwood Clairmont on the Green, LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Redwood Clairmont on the Green, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as consulting expert to provide analysis of call data, identification of historical wireless status of telephone numbers, and identification of DNC calls. |
| Represented by: | Berger Singerman LLP |

**Anthony Lawson et. al. v VisionWorks of America, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | VisionWorks, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided analysis of patient text message conversations and patient data records. Alleged violations of National and Internal do not call lists. |
| Represented by: | Dykema Gossett PLLP |

**Ariel Shuckett et. al. v DialAmerica Marketing, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of California |
| Client: | DialAmerica, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as consulting expert to rebut opposing expert's analysis of call data, identification of historical wireless status of telephone numbers, and identification of historical users/subscribers of telephone numbers. Contributed to granting of Summary Judgment in favor of Defendant. |
| Represented by: | Berenson LLP |

**Brittany Burk et. al. v Direct Energy, LP**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Texas |
| Client: | Direct Energy as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Rebuttal of ATDS opinion by opposing expert, Call record and SMS record data analysis, wireless/landline identification, lead data and landing page analysis, analysis of express business relationships. Contributed to court's denial of class certification. |

| | |
|---|---|
| Represented by: | McDowell Hetherington LLP |

**Bruce Settle et. al. v Senior Choice Plans, LLC**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Indiana |
| Client: | Senior Choice Plans as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Analysis of National D0 Not Call Registration, FTSA Autodialing allegations, Tel-Lingua, business/residential identification, identification of calls placed to persons in Florida |
| Represented by: | Mark R. Waterfill, Attorney at Law, P.C. |

**Bryon Scott et. al. v The Federal Savings Bank, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Oregon |
| Client: | The Federal Savings Bank as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Prepared expert report addressing the lack of usable call records to identify completed calls, the lack of evidence of prerecorded solicitation calls, and obstacles preventing the identification of National Do Not Call Registry violations. |
| Represented by: | Mitchell Sandler LLP |

**Carrie Beets et. al. v Molina Healthcare, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Central District of California |
| Client: | Molina Healthcare, Inc., as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as consulting expert to provide analysis of call data, identification of historical wireless status of telephone numbers, and identification of consent. |
| Represented by: | Boies Schiller Flexner LLP |

**Carrie Couser et. al. v Cucamonga Valley Medical Group, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Central District of California |
| Client: | Cucamonga Valley Medical Group, Inc. as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as expert to provide ATDS evaluation, analysis of express consent and TCPA applicability of contested texts and voice calls. |
| Represented by: | Schmid & Voiles |

**Carrie Couser et. al. v Dish One Satellite, LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Central District of California |
| Client: | Dish One, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as expert to provide in-depth analysis of National and internal Do Not Call (DNC) records and very large volume call record files, and critical assessment of opposing expert's data analysis. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Catherine Palmer et. al. v KCI USA**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Nebraska |
| Client: | KCI, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Wireless Identification, ascertaining class members, wrong number identification, consent identification. Provided deposition testimony. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Christina Leedy et. al. v US Med Direct**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | US Med, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed rebuttal report addressing identification of calls using Pre-recorded voice, use of call duration and dispositions, and ascertainability of class members |
| Represented by: | Wilson Elser Moskowitz Edelman & Dicker LLP |

**Comprehensive Health Care Systems of the Palm Beaches et. al. v M3 USA Corporation**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida, West Palm Beach Division |
| Client: | M3 USA Corp., as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of fax telephone numbers. Also developed expert report rebutting opposing expert's opinions regarding successful completion of fax transmissions and identification of fax recipients. Provided deposition testimony. |
| Represented by: | Sheppard Mullin Richter & Hampton LLP |

**Craig Cunningham v Health Plan Intermediaries Holdings, LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Health Plan Intermediaries Holdings, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Engaged as consulting expert to analyze the wireless status of telephones numbers at issue and perform wireless telephone forensics. |
| Represented by: | Greenspoon Marder LLP |

**C. S. Wang et. al. v Wells Fargo Bank NA, et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Illinois |
| Client: | Wells Fargo Bank, Fifth Third Bank, First Data Merchant Services, Vantiv, Inc., National Processing Company, Ironwood Financial, LLC, John Lewis, Dewitt Lovelace, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed declaration rebutting opposing expert's methodology for ascertaining class members. Also developed declaration rebutting opposing expert's methodology for wireless identification and carrier subpoena process. |
| Represented by: | Polsinelli PC, Figliulo & Silverman PC, Baker Hostetler |

**Daniel Berman et. al. v Freedom Financial Network**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of California |
| Client: | Freedom Financial Network, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's ability to identify call recipients on the National Do Not Call Registry, opposing expert's flawed analysis of lead data names, and the feasibility and technical aspects of identifying users/subscribers of cell phones. Contributed to court's denial of class certification. |
| Represented by: | Klein Moynihan Turco LLP |

**Danielle Moraitis et. al. v Dent-A-Med, Inc.**

| | |
|---|---|
| Jurisdiction: | JAMS |
| Client: | Dent-A-Med, as respondent |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's ATDS analysis. Provided opinions on defendant's dialing equipment's capacity to generate random or sequential numbers, and capacity to dial numbers without human intervention. |
| Represented by: | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. |

**Datamaxx Applied Technologies v Computer Projects of Illinois, Inc.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Northern District of Florida |
| Client: | Datamaxx as plaintiff |
| Nature of Case: | Software Copyright Infringement |
| Engagement: | Prepared expert report assessing infringement of plaintiff's software copyrights, utilizing Abstraction-Filtration-Comparison test. Provided deposition testimony. |
| Represented by: | Pennington, Moore, Wilkinson, Bell & Dunbar, P.A. |

**Deborah Turner v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Western District of Arkansas |
| Client: | USAA, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Derrick Thomas et. al. v Peterson's Harley Davidson**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Peterson's, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert report rebutting opposing expert's proposed methodology for identifying historic wireless status and historic users/subscribers of telephone numbers, and opposing expert's consent analysis. Also produced expert report addressing the dialing system used by Defendant for text message campaigns, and its capacity to perform as an ATDS. |

Represented by: Robert L. Switkes & Associates, P.A.

**Derrick Virgne et. al. v C. R. England, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Indiana |
| Client: | C. R. England, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided declaration with statistical analysis of text message interactions between Defendant and customers, including Stop requests and messages after Stop requests. Provided deposition testimony. |
| Represented by: | Benesch Friedlander Coplan and Aranoff LLP |

**Diana Mey et. al. v United Enrollment Service LLC, et.al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | United Enrollment Services, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert report rebutting opposing expert's ability to identify: violations of the National Do Not Call Registry; calls that received prerecorded voice messages; and names of users/subscribers associated with class-eligible telephone numbers. Provided deposition testimony. |
| Represented by: | Roth Jackson Gibbons Condlin, PLC |

**Dillon Myrick et. al. v AdaptHealth LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | AdaptHealth, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert report rebutting opposing expert's ability to identify: violations of the National Do Not Call Registry; calls that received prerecorded voice messages; and names of users/subscribers associated with class-eligible telephone numbers. |
| Represented by: | K&L Gates LLP |

**Donna Carpenter v World Omni Financial Corp.**

| | |
|---|---|
| Jurisdiction: | American Arbitration Association |
| Client: | World Omni, as respondent |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Engaged as consulting expert to opine on whether defendant's dialing equipment has the characteristics of an ATDS. |
| Represented by: | Akerman LLP |

**Douglas Dribben v HomeFix Custom Remodeling Corp.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Maryland |
| Client: | HomeFix, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation, analysis of NDNCR, business telephone numbers, disconnected numbers via the RND |
| Nature of Engagement: | Engaged as consulting expert to opine on analysis of NDNCR, business telephone numbers, disconnected numbers via the RND |
| Represented by: | Adams & Reese LLP |

**Eileen Nece et. al. v Quicken Loans, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Quicken Loans, Inc. as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones and residential landlines. |
| Represented by: | Goodwin Procter LLP |

**Eric Gruber et. al. v Yelp, Inc.**

| | |
|---|---|
| Jurisdiction: | Superior Court of the State of California |
| Client: | Yelp, Inc. as defendant |
| Nature of Case: | California Invasion of Privacy (CIPA) violation |
| Engagement: | Developed expert report rebutting two of plaintiff's experts regarding: wireless identification; identification of forwarded calls; data analysis errors; identification of users/subscribers associated with class eligible telephone numbers; barriers to issuing subpoenas to telephone carriers; identification of the physical location of call recipients. Provided deposition testimony. |
| Represented by: | Reed Smith LLP |

**Estrellita Reyes et. al. v BCA Financial Services, Inc.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Florida |
| Client: | BCA Financial Services as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis methodology, and addressing technical aspects of identifying users/subscribers of cell phones. Provided deposition testimony. |
| Represented by: | Shepard, Smith, Kohlmyer & Hand, P.A. |

**Forrest Rogers et. al. v Navient Solutions LLC**

| | |
|---|---|
| Jurisdiction: | United States District Court, Eastern District of Virginia |
| Client: | Navient as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed draft expert rebuttal report challenging opposing expert's data methodology of identifying users/subscribers of cell phones. |
| Represented by: | Holland & Knight LLP |

**Grace Howerton v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | American Arbitration Association |
| Client: | USAA Savings, as respondent |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Israel Garcia et. al. v Target Corporation**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Minnesota |
| Client: | Target, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided affirmative report addressing the challenges to identifying historic users and subscribers of telephone numbers. Also produced an expert report rebutting opposing expert's analysis of Defendant's dialing system. |
| Represented by: | Barnes & Thornburg LLP |

**Janet Hill v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | American Arbitration Association |
| Client: | USAA Savings, as respondent |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. Contributed to Arbitrator's finding that Defendant's dialer does not constitute an ATDS. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Janet Morris, et. al. v Lincare, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Lincare, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions on alleged use of Precorded Voice, FTSA, Consent/EBR, Avaya call record analysis. Provided deposition testimony. |
| Represented by: | Shumaker, Loop & Kendrick, LLP |

**Jed Iverson et. al. v Advanced Disposal Services.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | ADS, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert rebuttal reports disputing opposing expert's ability to identify class members based on Five9 call records and defendant's customer data. Analyzed and documented potential customer consent appearing in customer account records and audio recordings. Provided deposition testimony. |
| Represented by: | Burr & Forman, LLP; Holland & Knight, LLP |

**Jerry Eisenband et. al. v Schumacher Automotive, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Schumacher, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert analysis of Plaintiff's expert report, and analysis of systems used to send alleged SMS text messages. |
| Represented by: | Kurkin Forehand Brandes LLP |

**John Scherkanowski v Bluegreen Vacations**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of New Hampshire |
| Client: | Bluegreen, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report analyzing Defendant's dialing system, it's capacity to store or produce telephone numbers using a random or sequential number generator, its capacity to place calls without human intervention, and the use an artificial or prerecorded voice. |
| Represented by: | Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. |

**Joseph Mantha, et. al. v QuoteWizard.com**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Massachussetts |
| Client: | QuoteWizard, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed affirmative and rebuttal expert reports addressing ability to identify violations of the National Do Not Call Registry, identification of business vs. residential telephone numbers, and analysis of consent evidence from Active Prospect Trusted Form Certificates and Jornaya Guardian TCPA Reports. |
| Represented by: | Nelson Mullins Riley & Scarborough, LLP. |

**Julie Smith v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Colorado |
| Client: | USAA, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Karen Saunders et. al. v Dyck O'Neal, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Western District of Michigan |
| Client: | DONI, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the ability to identify the recipients of Direct Dial Voicemail messages, and the ability to identify consent based on Defendant's records. |
| Represented by: | Golden Scaz Gagain, PLLP |

**Kathryn Kalmbach et. al. v National Rifle Association and InfoCision, Inc.**

| | |
|---|---|
| Jurisdiction: | Superior Court of Washington, King County |
| Client: | InfoCision, Inc. as defendant |
| Nature of Case: | Washington Automatic Dialing and Announcing Device (WADAD) violation |
| Engagement: | Provided expert consulting regarding carrier record content and retention, carrier subpoena responses, and identification of wireless/landline subscribers and calls within specific geographic boundaries. |
| Represented by: | Baker & Hostetler LLP |

**Keith Snyder et. al. v U.S. Bank et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Illinois |
| Client: | Deutsche Bank, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided analysis of Defendant's dialing system as it relates to TCPA's definition of an ATDS. |
| Represented by: | Morgan, Lewis & Bockius LLP |

**Kenneth Albrecht et. al. v Oasis Power**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Illinois |
| Client: | Oasis Power, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert consulting including data analysis of ringless voicemail data records, and identification of historic wireless subscribers of telephone numbers. |
| Represented by: | Morgan, Lewis & Bockius LLP |

**Kenneth Johansen et. al. v Bluegreen Vacations**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Bluegreen, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert consulting including reliability analysis of call records, data analysis of call records, analysis of express business relationships, and description of barriers to identification of historic wireless subscribers of telephone numbers. Provided deposition testimony. Contributed to denial of class certification. |
| Represented by: | Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. |

**Kevin Buja et. al. v Novation Capital LLC, et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida, West Palm Beach Division |
| Client: | Novation, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC violations, and addressing technical aspects of identifying users/subscribers of cell phones. Provided deposition testimony. |
| Represented by: | Vedder Price, P.C. |

**Lance Mancuso v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Nevada |
| Client: | USAA, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. Provided deposition testimony. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Laura Ackerman et. al. v Look Both ways Insurance, et. al.**

Jurisdiction: U.S. District Court, Eastern District of Virginia
Client: Look Both Ways, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Nature of Engagement: Analysis of Pre-recorded calls, NDNCR, consent, EBR, Lead gen, health insurance
Represented by: Day Pitney LLP

**Lorenzo Quintana et. al. v Branch Banking and Trust**

Jurisdiction: United States District Court, Middle District of North Carolina
Client: BB&T, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Developed expert report addressing dialing equipment's capability to store or produce telephone numbers using a random or sequential number generator. Contributed to the award of summary judgment to defendant based on lack of number generation.
Represented by: Womble Bond Dickinson LLP

**Lori Shamblin et. al. v Obama for America et. al.**

Jurisdiction: United States District Court, Middle District of Florida, Tampa Division
Client: Obama for America and DNC Services Corp. as defendants
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Extensive review and critique of plaintiff's expert witness reports; data analysis and research of very large call-record databases, alleged call violations and ported telephone numbers; and ATDS evaluation. Preparation of expert report in support of defendant, contributing to denial of class certification and judgment in favor of defendants.
Represented by: Perkins Coie LLP

**Louis Floyd et. al. v National Payment Systems, et. al.**

Jurisdiction: United States District Court, Northern District of California
Client: NPS, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Analysis of lead data, analysis of call records, wireless identification of telephone numbers.
Represented by: Wilson Elser Moskowitz Edelman & Dicker LLP

**Marc Schaevitz et. al. v Braman Hyundai, Inc.**

Jurisdiction: United States District Court, Southern District of Florida
Client: Braman Hyundai, as defendant
Nature of Case: Telephone Consumer Protection Act (TCPA) violation
Engagement: Technical comparison of Ringless Voicemails to voice calls, analysis of lead and call data, contributing to denial of class certification. Provided deposition testimony.
Represented by: Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

**Mark Preman et. al. v Pollo Operations**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida, Orlando Division |
| Client: | Pollo Operations as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Pre-trial review of text messaging procedures and data flow analysis. Provided expert report evaluating adherence to CTIA/Wireless Industry best practices for short code messaging campaigns. |
| Represented by: | Akerman LLP |

**Matthew Dickson et. al. v Direct Energy, LP et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Ohio |
| Client: | Direct Energy as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert report addressing the reliability of Ringless Voicemail call records, rebutting opposing expert's historical wireless analysis, class identification using audio recordings, and identification of users associated with given telephone numbers. Investigated significant evidence of lead generation, website landing pages and customer consent. Contributed to granting of defendant's Motion to Dismiss. |
| Represented by: | McDowell Hetherington LLP |

**Michael Anthony, et. al. v The Federal Savings Bank, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Northern District of Illinois |
| Client: | The Federal Savings Bank as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Rebuttal of opposing expert's proposal to identify National Do Not Call violations, and Prerecorded message violations. Provided deposition testimony. |
| Represented by: | Mitchell Sandler LLP |

**Michael Lutman v Harvard Collection Services**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida, Ft Myers Division |
| Client: | Harvard Collection Services as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert analysis of plaintiff telephone numbers, porting activity, subscriber information, and ATDS evaluation. |
| Represented by: | Wilson Elser Moskowitz Edelman & Dicker LLP |

**Mildred Baldwin et. al. Miracle-Ear, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Minnesota |
| Client: | Miracle-Ear as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed draft expert rebuttal report evaluating the reliability of call records, challenging opposing expert's data methodology of identifying users/subscribers of cell phones, and identification of DNC and Pre-recorded message classes |
| Represented by: | Faegre Drinker Biddle & Reath LLP |

**Monifa Grant et. al. v Regal Automotive Group**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | Regal Automotive Group, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert analysis of discrepancies between Defendant's subscriber records and subscriber/user records returned from commercial identification vendor. |
| Represented by: | Golden Scaz Gagain PLLP |

**Monique Jackson et. al. v Palm Beach Credit Adjustors**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Florida |
| Client: | Palm Beach Credit, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Engaged as consulting expert to opine on ability to ascertain class members based on telephone numbers, and analyze evidence of consent and revocation. |
| Represented by: | Shepard, Smith, Kohlmyer & Hand, P.A. |

**Moricz v Google**

| | |
|---|---|
| Jurisdiction: | United States District Court, Western District of Washington at Seattle |
| Client: | Michael Moricz as plaintiff |
| Nature of Case: | Patent infringement of search engine software capabilities |
| Engagement: | Provided technical research into history, evolution and current state of web-based search engine design and functionality. Development of claim construction report. |
| Represented by: | Schwabe, Williamson & Wyatt, P.C. |

**Natasha Hiller, et. al. v The Money Source, Inc.**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Arizona |
| Client: | The Money Source as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert rebuttal report, addressing use of Five9 call records and internal call logs to identify DNC requests, use of prerecorded voice, voicemail messages. Provided deposition testimony. |
| Represented by: | Polsinelli |

**Nathan Rowan, et. al. v United Enrollment Services LLC**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Florida |
| Client: | United Enrollment as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Analysis of Florida Telephone Solicitation, Text messages, message search strings, and location of text recipients. |
| Represented by: | Roth Jackson Gibbons Condlin, PLC |

**Paramjit Lalli, et. al. v First Team Real Estate**

| | |
|---|---|
| Jurisdiction: | United States District Court, Central District of California |
| Client: | First Team as defendant |

| | |
|---|---|
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Analysis of real estate dialers, call record analysis to identify calls leaving prerecorded messages, identification of consent. |
| Represented by: | Payne & Fears LLP |

**Patrick Rose, et. al. v New TSI Holdings, Inc.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of New York |
| Client: | New TSI as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided Expert Rebuttal Report addressing reliability of Sneeze-It call records, wireless identification, consent analysis, ascertainability of class members. |
| Represented by: | Gordon Rees Scully Mansukhani, LLP |

**Peggy Banks, et. al. v Sunrun, Inc.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Northern District of California |
| Client: | Sunrun as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided Expert Rebuttal Report addressing identification of violations of the National Do Not Call Registry, consent and established business relationship analysis, identification of business numbers, identification of solicitation calls, ascertainability of class members. |
| Represented by: | Kelley Drye & Warren LLP |

**Phillip Charvat, et. al. v The Southard Corp.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Ohio |
| Client: | The Southard as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Identification of National DNC Registry violations, ascertainability of class members |
| Represented by: | Baker & Hostetler, LLP |

**PCS4Less v Go Mobile**

| | |
|---|---|
| Jurisdiction: | State of Michigan, Circuit Court for Washtenaw County |
| Client: | Go Mobile as defendant |
| Nature of Case: | Copyright / Trade Secret on unlocking GSM/CDMA cell phone devices |
| Engagement: | Provided expert analysis of cell phone unlocking methods. |
| Represented by: | Gray Robinson |

**Ranier Sapuy, et. al. v Roosevelt Field Mall Dental, PC, Stomatcare DSO, LLC, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Eastern District of New York |
| Client: | Roosevelt Field Mall Dental and Stomatcare DSO, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Expert rebuttal report addressing: applicability of text message stop requests to subsequent prerecorded voice calls; existence of consent within prerecorded call responses; reliability of call records; identification |

| | |
|---|---|
| | of calls that pertain to defendants; identification of users/subscribers associated with class-eligible telephone numbers |
| Represented by: | Nixon Peabody LLP |

**Resource Acquisition and Management Services v Mathews**

| | |
|---|---|
| Jurisdiction: | State of Florida, Circuit Court for Hillsborough County |
| Client: | Resource Acquisition and Management Services, Inc. as plaintiff |
| Nature of Case: | Breach of Contract and Conversion of disputed property including application source code |
| Engagement: | Provided expert report assessing the value of application source code. Provided deposition testimony. |
| Represented by: | Rocke, McLean and Sbar, P.A. |

**Richard Witvoet, et. al. v Pat Tumilty**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of California |
| Client: | Pat Tumilty, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided Expert Rebuttal report addressing ability to identify completed calls and delivered text messages, identification of calls in violation of the national Do Not Call registry, and consent analysis including Jornaya Guardian TCPA Reports. |
| Represented by: | Riley Safer Holmes & Cancila LLP |

**Rick Shafer, et. al. v Toyota of Boardman**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Ohio |
| Client: | Toyota of Boardman, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided Expert Rebuttal report addressing ability to identify calls in violation of the national Do Not Call registry, business telephone numbers, identification of solicitation, consent and EBRs based on text message exchanges. Provided deposition testimony. |
| Represented by: | Harrington, Hoppe & Mitchell, Ltd. |

**Ronald Chinitz, et. al. v Mojo Dialing Solutions, et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of California |
| Client: | Mojo, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Analysis of pre-recorded message call records, Identification of National DNC Registry violations, Ascertainability of class members, express business relationships and prior consent, identification of business vs. residential telephone numbers, analysis of dialing platform used by real estate agents. Contributed to denial of class certification for defendant Mojo. Provided deposition testimony. |
| Represented by: | Day Pitney LLP |

**Samantha Grome v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Nebraska |
| Client: | USAA Savings, as defendant |

| | |
|---|---|
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. Provided deposition testimony. Contributed to court's granting of summary judgment in favor of Defendant. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Sara Diaz-Lebel et. al. v TD Bank and Target Corporation**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Minnesota |
| Client: | Target, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's analysis of call records. Also provided analysis of Defendant's dialing system as it relates to TCPA's definition of an ATDS, as well as describing the restrictions to accurately ascertaining class members based on historic call data. |
| Represented by: | Barnes & Thornburg LLP |

**Shante Watson et. al. v Georgia Auto Pawn**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Georgia |
| Client: | Georgia Auto Pawn, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's attempted use of the Reassigned Numbers Database to identify wrong number calls. |
| Represented by: | Kilpatrick, Townsend & Stockton LLP |

**Shehan Wijesinha et. al. v Bluegreen Vacations**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Bluegreen Vacations, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's identification of historical users/subscribers. Also provided analysis of Defendant's dialing system as it relates to TCPA's definition of an ATDS, as well as describing the restrictions to accurately ascertaining class members based on historic call data. Provided deposition testimony. |
| Represented by: | Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. |

**Sherry Clemons, et. al. v O'Neil Insurance Agency and State Farm**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Eastern District of Missouri |
| Client: | O'Neil Insurance, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's: lack of identification of telemarketing calls; vendor usage for identifying National Do Not Call registrations; identification of business vs. residential telephone numbers; identification of consent and established business relationships; and recognition of forwarded calls. |
| Represented by: | Riley Safer Holmes & Cancila LLP |

**State of Florida v Poole**

| | |
|---|---|
| Jurisdiction: | State of Florida, Circuit Criminal Court for Hillsborough County |
| Client: | Poole as defendant |
| Nature of Case: | Criminal complaint involving damage of application components |
| Engagement: | Provided expert analysis and court testimony regarding the feasibility of performing a forensic analysis of hardware and software components. Provided court testimony. |
| Represented by: | Pawuk and Pawuk, P.A. |

**Stephanie Powers et al. v Receivables performance Management**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Massachusetts |
| Client: | RPM as defendant |
| Nature of Case: | Massachusetts Consumer Protection Act, Massachusetts Debt Collection Regulations |
| Engagement: | Provided expert analysis of LiveVox call record reliability, business vs. residential analysis, location of call recipients, identification of harm or injuries. Provided deposition testimony. |
| Represented by: | Gordon Rees Scully Mansukhani, LLP |

**Steven Sandoe et. al. v Boston Scientific Corporation**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Massachusetts |
| Client: | Boston Scientific, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis, identification of wrong number calls, identification of National DNC Registry violations, and identification of historic users/subscribers of telephone numbers. Provided deposition testimony. Directly contributed to Denial of Class Certification. |
| Represented by: | Faegre Baker Daniels LLP |

**Summer Brooks et. al. v PSCU, LLC and Lone Star Credit Union**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Massachusetts |
| Client: | Lone Star, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Analyzed opposing expert's report addressing whether wireless telephone subscribers are charged for individual calls. Researched various cell phone carriers and cell phone plan offerings. Evaluated the fraud exemption provision of the TCPA. |
| Represented by: | Boyd, Richards, Parker & Colonnelli, P.L. |

**Thomas Cook et. al. v Palmer, Reifler & Associates and WALMART**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | PRA as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis, and addressing technical aspects of identifying users/subscribers of cell phones. Provided deposition testimony. |
| Represented by: | Shepard, Smith, Kohlmyer & Hand, P.A. |

**Toya Green-Mobley v Capital One Auto Finance**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | COAF as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert rebuttal report address qualification of Defendant's calling system as an ATDS, including capacity to generate telephone numbers, use of human intervention, and the pre-recorded nature of phone messages. Provided deposition testimony. |
| Represented by: | Burr & Forman LLP |

**Victoria Wilson et. al. v Badcock Home Furniture**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | Badcock as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis and methodology for identifying users/subscribers of cell phones, contributing to denial of class certification. Provided deposition testimony. |
| Represented by: | Johnson & Cassidy, P.A. |

**Waddell Williams et. al. v Bluestem Brands**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | Bluestem Brands as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert report analyzing Defendant's dialing platform and its characteristics related to Automated Telephone Dialing Systems. |
| Represented by: | Faegre Baker Daniels, LLP |

**Weronika Rechul et. al. v Crisp Marketing LLC**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Florida |
| Client: | Crisp as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Wireless identification, pre-recorded voice delivery, consent analysis, analysis of TrustedForm certificates |
| Represented by: | Womble Bond Dickinson, LLP |

# EXHIBIT B

## Materials Considered

## Materials Considered

### A. Pleadings, Court Filings, and Discovery Materials

1. Class Action Complaint, D.E. 1.

2. Plaintiff's Motion for Class Certification, D.E. 54, and supporting exhibits, D.E. 54-1 through 54-8.

3. Plaintiff's Responses to Defendant Servbank SB's First Set of Discovery Requests, dated October 14, 2025.

4. "Bronstin Telephone Solicitation Report.pdf"

### B. Deposition Testimony

5. Deposition testimony of Aaron Woolfson, dated June 12, 2026.

6. Supplemental deposition testimony of Aaron Woolfson, dated July 27, 2026.

7. Deposition testimony of Asher Bronstin, dated March 20, 2026.

### C. Woolfson Reports, Exhibits, and Data Productions

8. Declaration of Aaron Woolfson, dated March 17, 2026, and its exhibits.

9. Supplemental Declaration of Aaron Woolfson, dated June 23, 2026, and its exhibits.

10. Thirty-five CDR files:

    a. 12294_04-2022_05-2023_data_export_hourly-000000000000.csv through 12294_04-2022_05-2023_data_export_hourly-000000000022.csv;

    b. 12294_05-2023_10-2023_data_export_hourly-000000000000.csv through 12294_05-2023_10-2023_data_export_hourly-000000000009.csv;

    c. Thin CDR Report_Diamond Select 2 - Oct 2023 -23806.csv; and

    d. Thin CDR Report_Diamond Select 2 - Sep 2023 - 23806.csv.

11. 12,007,697 calls.txt.

12. 985670 calls.csv.

13. Native Exhibit 2 – 985,670 texts [sic] to 198,196 unique numbers (1).xlsx.

14. EXCEL – Servbank – waterfall – 06023-2026 9.34a.xlsx.

15. Index of DNC file downloads relied upon.xlsx.

16. Index of FTC files referenced.xlsx.

17. EXCEL – Index of source files from FTC after 1-1-2021.

18. results of isDNC30 taggings.txt.

19. dnc_prepare (servbank).txt.

20. the SQL scripts and database materials produced by Woolfson, including:

    a. Exhibit 8;

    b. justSql – isDNC.sql (for processing DNC prepare).txt;

    c. justSql 4 – report(3).sql; and

    d. Native SQL database.

21. The following documents produced with or cited in the Woolfson materials: DNCDOW~1.pdf, INSTRU~1.pdf, NATION~1.pdf, ORDER_~1.pdf, ORDER_~2.pdf, SUBCRI~1.pdf, and SUBCRI~2.pdf.

**D. Production and Regulatory Correspondence**

22. Plaintiff's and Woolfson's production correspondence concerning the June 5, June 27, August 4, and August 12, 2026 productions.

23. Defendant's July 30, 2026 post-deposition document demand and the responses to that demand.

24. Correspondence concerning the non-production of Woolfson's historical Registry archive.

**E. Regulatory and Technical Authorities**

25. 16 C.F.R. §§ 310.4(b)(2) and 310.8(e).

26. 47 C.F.R. § 64.1200.

27. FTC, "Q&A for Telemarketers and Sellers About the Do Not Call Provisions of the Telemarketing Sales Rule."

28. FTC, "National Do Not Call Registry FAQs."

29. Applicable iconectiv/NPAC materials specifically cited in this Report, including the PortData Comply service description and permitted-use materials.

30. IETF RFC 6076, "Basic Telephony SIP End-to-End Performance Metrics."

### F. Other Expert and Case-Specific Materials

31. Expert rebuttal report of Jan Kostyun in *Anthony v. The Federal Savings Bank*, No. 1:21-cv-02509 (N.D. Ill.), dated December 2, 2022.

32. Tables of my retained Registry files.

2016-10-24_813_B9CE314B-41F6-47A3-82AC-0D22D56616F1
2016-10-28_908_425BB76B-A1FC-452D-AFFA-8B0E80BDFD94
2017-10-1_813_643E3F28-4114-442E-B24C-AB0F9D82354B
2020-12-1_Global_CB335CA7-52E9-433C-8CFD-578AB597E360
2021-11-1_Global_96AEB194-0FA4-4361-9327-F4FF6FDCDE8C
2021-12-1_Global_64994C7D-4474-4BE6-9099-9985886558AA
2021-6-1_Global_A4D2FDA9-A2A0-4D67-924D-67037AEE1418
2021-9-1_Global_BD410076-F36A-4C1C-B42E-72A0D069CDCA
2024-1-1_Global_E1854E85-32C6-4DE4-B79E-4FE62A47CBEC
2024-2-1_Global_FCDCA7A7-0119-466C-B2CD-51F59224C99C

# EXHIBIT C

## FTC NDNCR Support Correspondence Re Historical Registry Files and Use Restrictions

**Colleen O'Neil**

**From:** Hsue, Patricia <phsue@ftc.gov>
**Sent:** Tuesday, August 4, 2026 2:47 PM
**To:** Hope Devito
**Cc:** Colleen O'Neil
**Subject:** RE: Inquiry Regarding FTC-DNC Retention

Hi Hope,

Apologies for the delay in responding but I've been checking with our internal folks on your questions below and we are unable to provide historic DNC lists since the TSR makes it clear under Part 310.4(b)(2) that the DNC may not be used "for any purpose except compliance with the provisions of this part or otherwise to prevent telephone calls to telephone numbers on such lists."

Sorry we can't be of more help.

Thanks,
Patty

---

**From:** Hope Devito <hdevito@mllaborlaw.com>
**Sent:** Monday, July 27, 2026 1:51 PM
**To:** Hsue, Patricia <phsue@ftc.gov>
**Cc:** Colleen O'Neil <Colleen@mllaborlaw.com>
**Subject:** Re: Inquiry Regarding FTC-DNC Retention

You don't often get email from hdevito@mllaborlaw.com. Learn why this is important

Hi,

I am just following up on the email sent below. Thank you!

Sincerely,
Hope DeVito

Hope DeVito – Associate
Milman Labuda Law Group PLLC
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
Telephone: (516) 328-8899

---

**From:** Hope Devito
**Sent:** Wednesday, July 22, 2026 2:04 PM
**To:** phsue@ftc.gov <phsue@ftc.gov>
**Cc:** Colleen O'Neil <Colleen@mllaborlaw.com>
**Subject:** Inquiry Regarding FTC-DNC Retention

Hello,

This firm represents Servbank, N.A. in a federal TCPA class action that is currently pending in the Northern District of Illinois. Presently, we are engaged in expert discovery.

By way of a brief background, Plaintiff's expert submitted a report classifying putative members of the TCPA class using historical FTC Registry snapshots maintained in his organization's private archive. Our expert is seeking to independently verify those classifications. Our purpose is to analyze expert testimony in pending private litigation, not to suppress future calls or operate a telemarketing compliance program. We are inquiring as to whether there is any lawful means by which our expert can independently obtain and use the authoritative historical data for this purpose.

Further we have the following questions-

1. Does the FTC retain and make available authenticated full-list or change-list Registry files reflecting the Registry as it existed on specified dates in July and August 2022?
2. If so, may a private litigant or retained expert obtain those historical files solely to evaluate an opposing expert's litigation opinions?
3. Is there any Registry organization classification under which such an expert could obtain the files and truthfully make the certification required by 16 C.F.R. Sect. 310.8(e)?
4. Does 16 C.F.R. Sect. 310.4 (b)(2) permit an expert to receive and use historical Registry files produced by another Registry account holder solely for expert analysis in private litigation?
5. If neither independent access nor receipt from another account holder is authorized, is there any procedure through which the FTC can grant limited access or otherwise permit independent verification?

Sincerely,
Hope DeVito

Hope DeVito – Associate
Milman Labuda Law Group PLLC
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
Telephone: (516) 328-8899

# EXHIBIT D

## Produced SQL Materials Re DNC Classification

# Part 1 – Build and Cross-Server DNC Processing Code

# Code Source File: justsql 1 – build.sql

The following SQL Code is reproduced in full as produced. Yellow highlighting has been added solely to identify the portions discussed in the Report. No text has been altered.

```
-- add these columns in
alter table calls
  add dest char(10), direction varchar(30), date datetime, /* datetime datetime, */
npa char(3), state char(2),
  stateName varchar(30), isDNC char(3), isNanp char(3), crossRef char(21), crossRef2
char(30);

select count(*) from calls

-- FTC index of tcpa-eligible area codes
select * into ftc from rainer.npa.dbo.ftc

-- TAGGING
update calls set dest = right([toNumber],10)
update calls set npa = left(dest,3)
update calls set state = (select state from ftc where ftc.npa = calls.npa)
update calls set stateName = (select stateName from ftc where ftc.npa = calls.npa)
update calls set isNanp = 'YES' where state is not null and substring(dest,4,1) in
('2','3','4','5','6','7','8','9');
update calls set isNanp = null where substring(dest,4,3) = '555'

-- adjusted UTC --> local time zone
-- update calls set datetime = originalDateTime;--
dbo.fn_utc(replace(replace(created_date,'T',' '),'z',' '),state)
update calls set date = convert(varchar(30),datetime,101);

update calls set crossRef = convert(varchar(30),date,101) + '|' + dest
update calls set crossRef2 = convert(varchar(30),datetime,101) + '|' +
convert(varchar(30),datetime,108) +  dest

select top 10 * from calls

-- tag the indexes and such...
select convert(bigint,dest) as dest,
  date, crossRef, crossRef2
  INTO dnc_prepare
  FROM calls where isNumeric(dest) = 1;


-- transfer to the DNC tagging engine (internal, isDNC);
select convert(bigint, dest) as dest, date, crossRef into DNC from
MOMENTUM.MAH.dbo.dnc_prepare
select * into dnc from isDNC.dnc.dbo.dnc

-- tagging newId, add these.
update calls set isDNC = 'YES' where crossRef in (select crossRef from dnc where
isDNC = 'YES')

-- this is a cross-check;
```

```
select count(*) from calls where isDNC = 'YES'
select count(*) from calls where crossRef in (select crossRef from dnc where isDNC =
'YES')

-- calls for named plaintiff
select  * from calls (nolock) where dest in (select dest from namedPlaintiff)

select count(*) from data2 where charindex(char(9),message_text) > 0

-- tagging newId, add these.
update dnc set crossRef = convert(varchar(30),date,101) + '|' +
convert(varchar(30),dest)
update calls set isDNC = 'YES' where crossRef in (select crossRef from dnc where
isDNC = 'YES')

-- ==================================================================
--  waterfall (removal elements)
-- ==================================================================

-- add an index.
create index crossRef2 on calls (crossRef2)

-- noDest
select * into calls_noDest from calls where dest is null
delete from calls where newId in (select newId from calls_noDest)


-- dup
alter table calls add isKeep char(36)
select * into #dup from calls
create index crossRef2 on #dup (crossRef2)

update calls set isKeep = (select top 1 newId from #dup where #dup.crossRef2 =
calls.crossRef2)
select * into calls_dup from calls where isKeep <> newId
delete from calls where newId  in (select newId from calls_dup)

-- build dbo.dest
select distinct dest into #dest from calls
insert into #dest select distinct fromANI from calls

select distinct dest into dest from #dest
create index dest on dest (dest)

alter table dest add fromANIcount int, destCount int null

update dest set fromANIcount = (select count(*) from calls where calls.fromANI =
dest.dest)
update dest set destCount = (select count(*) from calls where calls.dest =
dest.dest)
```

```
-- inbound...
-- select * into calls_inbound from calls where direction = 'inbound'
-- delete from calls where newId in (select newId from calls_inbound)

-- notNanp
select * into calls_notNanp from calls where isNanp is null
delete from calls where newId in (select newId from calls_notNanp)

-- loopback (test calls)
select * into calls_loopback from calls where dest in (select dest from dest where
fromANIcount > 0)
delete from calls where newId in (select newId from calls_loopback )

-- calls_lessthanThree
select * into calls_lessthanThree from calls where duration < 3;
delete from calls where newId in (select newId from calls_lessthanThree);


--
/////////////////////////////////////////////////////////////////////////////////////
////////////
-- Bifurcation
--
/////////////////////////////////////////////////////////////////////////////////////
////////////
-- calls before 01/01/2022 or after 3/31/2022
select * into [calls1_before_01/01/2022_or_after_03/31/2022]
from calls where date < '1/1/2022' or datetime > '3/31/2022 11:59pm'

select * into calls1
  from calls where date >= '1/1/2022' and datetime <= '3/31/2022 11:59pm'


create index dest on calls1 (dest);
create index datetime on calls1 (datetime);

select * into calls1_notDNC30 from calls1 where isDNC is null
delete from calls1 where newId in (select newId from calls1_notDNC30 )

-- count (as a cross-check point of validation)
select count(*) from calls1

-- remove where not 2 or more 365.
select * into #c from calls1
create index dest on #c (dest)
create index datetime on #c (datetime)

alter table calls1 add prevDate datetime, nextDate datetime, prevDays int, nextDays
```

```
int, is2orMore365 char(3)

update calls1 set prevDate = (select top 1 datetime from #c where #c.dest =
calls1.dest and #c.datetime <= calls1.datetime and #c.newId <> calls1.newId order by
#c.datetime desc)
update calls1 set nextDate = (select top 1 datetime from #c where #c.dest =
calls1.dest and #c.datetime >= calls1.datetime and #c.newId <> calls1.newId order by
#c.datetime asc)
update calls1 set prevDays = datediff(day, prevDate, datetime)
update calls1 set nextDays = datediff(day, datetime, nextDate)
update calls1 set is2orMore365 = 'YES' where prevDays between 0 and 365 or nextDays
between 0 and 365

-- not 2 or more 365
select * into calls1_not2orMore365 from calls1 where is2OrMore365 is null
delete from calls1 where newId in (select newId from calls1_not2orMore365)

select count(*) , count(distinct dest) from calls1


select * from calls where dest in (select dest from namedPlaintiff) order by date
asc
select count(*) from calls1 where dest in (select dest from namedPlaintiff)


 7/1/2022 and 9/1/2022?
--
////////////////////////////////////////////////////////////////////////////////////
////////////
-- Bifurcation
--
////////////////////////////////////////////////////////////////////////////////////
////////////
-- calls before 01/01/2022 or after 6/30/2023
select * into [calls2_before_01/01/2022_or_after_06/30/2023]
from calls where date < '1/1/2022' or datetime > '6/30/2023 11:59pm'

select * into calls2
  from calls where date >= '1/1/2022' and datetime <= '6/30/2023 11:59pm'


select * into calls2_notDNC30 from calls2 where isDNC is null
delete from calls2 where newId in (select newId from calls2_notDNC30 )


-- count (as a cross-check point of validation)
select count(*) from calls2

-- remove where not 2 or more 365.
select * into #c from calls2
```

```
create index dest on #c (dest)
create index datetime on #c (datetime)

alter table calls2 add prevDate datetime, nextDate datetime, prevDays int, nextDays
int, is2orMore365 char(3)

update calls2 set prevDate = (select top 1 datetime from #c where #c.dest =
calls2.dest and #c.datetime <= calls2.datetime and #c.newId <> calls2.newId order by
#c.datetime desc)
update calls2 set nextDate = (select top 1 datetime from #c where #c.dest =
calls2.dest and #c.datetime >= calls2.datetime and #c.newId <> calls2.newId order by
#c.datetime asc)
update calls2 set prevDays = datediff(day, prevDate, datetime)
update calls2 set nextDays = datediff(day, datetime, nextDate)
update calls2 set is2orMore365 = 'YES' where prevDays between 0 and 365 or nextDays
between 0 and 365


-- not 2 or more 365
select * into calls2_not2orMore365 from calls2 where is2OrMore365 is null
delete from calls2 where newId in (select newId from calls2_not2orMore365)

select count(*) , count(distinct dest) from calls2

select count(*) from [calls1_before_01/01/2022_or_after_06/30/2023]


select * from calls where dest in (select dest from namedPlaintiff) order by date
asc
select count(*) from calls2 where dest in (select dest from namedPlaintiff)


 -
///////////////////////////////////////////////////////////////////////////////////
////////////
-- Bifurcation
--
///////////////////////////////////////////////////////////////////////////////////
////////////
-- calls before 01/01/2022 or after 6/30/2023
select * into [calls3_before_07/01/2022_or_after_08/31/2022]
from calls where date < '7/1/2022' or date > '8/31/2022 11:59 pm'

select count(*) from [calls3_before_07/01/2022_or_after_08/31/2022]

select * into calls3
  from calls where date >= '7/1/2022' and date <= '8/31/2022 11:59 pm'

select * into calls3_notDNC30 from calls3 where isDNC is null
delete from calls3 where newId in (select newId from calls3_notDNC30 )
```

```
-- count (as a cross-check point of validation)
select count(*) from calls3

-- remove where not 2 or more 365.
select * into #c from calls3
create index dest on #c (dest)
create index datetime on #c (datetime)

alter table calls3 add prevDate datetime, nextDate datetime, prevDays int, nextDays
int, is2orMore365 char(3)

update calls3 set prevDate = (select top 1 datetime from #c where #c.dest =
calls3.dest and #c.datetime <= calls3.datetime and #c.newId <> calls3.newId order by
#c.datetime desc)
update calls3 set nextDate = (select top 1 datetime from #c where #c.dest =
calls3.dest and #c.datetime >= calls3.datetime and #c.newId <> calls3.newId order by
#c.datetime asc)
update calls3 set prevDays = datediff(day, prevDate, datetime)
update calls3 set nextDays = datediff(day, datetime, nextDate)
update calls3 set is2orMore365 = 'YES' where prevDays between 0 and 365 or nextDays
between 0 and 365


-- not 2 or more 365
select * into calls3_not2orMore365 from calls3 where is2OrMore365 is null
delete from calls3 where newId in (select newId from calls3_not2orMore365)

select count(*) , count(distinct dest) from calls3


select * from calls3 where dest in (select dest from namedPlaintiff) order by date
asc
select count(*) from calls3 where dest in (select dest from namedPlaintiff)



-- queries.
select right(dest,4) from namedPlaintiff
select count(*), count(distinct dest)from calls1
select count(*), count(distinct dest)from calls1 where dest in (select dest from
namedPlaintiff)

-- for the report
select distinct filename from calls_complete order by filename asc
select top 1 date from calls_complete order by date asc
select top 1 date from calls_complete order by date desc

-- named plaintiff calls:
```

```
select filename, seqNum, datetime, '-' + right(toNumber,4) as phoneNumber, duration
from calls1 where dest in (select dest from namedPlaintiff) order by datetime
```

# Part 2 – DNC Tagging Code

# Source File: DNC tagging script.txt

The following DNC Tagging Code is reproduced in full as produced. Yellow highlighting has been added solely to identify the portions discussed in the Report. No text has been altered.

```
-- this is the scripting that runs on the SQL query engine.

alter table dnc add [table>30] char(35) null;
alter table dnc add [tableNow] char(35) null;
alter table dnc add [isDNC>30] char(3) null;
alter table dnc add [isDNCnow] char(3) null;
alter table dnc add [isDNC] char(3) null;
go

-- create some indexes:
create index dest on dnc (dest)
create index date on dnc (date)
go

-- the tables where the numbers are located.
-- update dnc set [dnc.comDate] = (select top 1 dncDate from [dnc.com]..dest where
dest.dest = dnc.dest)
update dnc set [table>30] = (select top 1 [table] from files where files.date <
dateadd(day,-31,dnc.date) order by files.date desc)
update dnc set [tableNow] = (select top 1 [table] from files where files.date >=
dateadd(day,-0,dnc.date) order by files.date asc)
go

-- create some indexes (part 2)
create index table30 on dnc ([table>30])
create index tableNow on dnc ([tableNow])
go

-- run the results of this query, to tag.
select distinct getdate() as getdate, 'update dnc set [isDNC>30] = ''YES'' where
dest in (select dest from ' + [table>30] + ' (nolock)) and [table>30]  = ''' +
[table>30] + '''' as [text] into #runDNC from dnc  where [tableNow] is not null and
[table>30] is not null order by [getDate]
insert into #runDNC select distinct getdate() as getdate, 'update dnc set [isDNCNow]
= ''YES'' where dest in (select dest from ' + [tableNow] + ' (nolock)) and
[tableNow]  = ''' + [tableNow] + '''' from dnc  where [tableNow] is not null and
[table>30] is not null order by [getDate]

-- when the sum of the table is done, run these.
insert into #runDNC select distinct getdate() as getdate, 'update dnc set isDNC =
''YES'' where [isDNC>30] = ''YES'' and [isDNCNow] = ''YES''';
go

-- RUN THIS.
select text + char(13) + char(10) + 'GO' + char(13) + char(10) from #runDNC  order
by [getdate]
```

# EXHIBIT E

## Telephone Solicitation Report

| TELEPHONE SOLICITATIONS REPORT | | | | | | | |
|---|---|---|---|---|---|---|---|
| Call Date | Call Time | Duration | Telemarketer | Traffic Direction | CDR Type | Notes | Notes - Investigation |
| 02-01-22 | 11:06 AM | 0:00:00 | 7757903938 | Inbound | SMS | | |
| 02-01-22 | 11:06 AM | 0:00:00 | 7757903938 | Outbound | SMS | | |
| 02-01-22 | 10:43 AM | XX:XX:XX | 240-858-8128 | Inbound | VOICE | | |
| 08-31-22 | 10:38 AM | 00:06:36 | 240-858-8128 | Inbound | VOICE | | |
| 06-08-23 | 10:30 AM | 00:00:00 | 520-593-5957 | Inbound | VOICE | Declined Call | |
| 06-08-23 | 01:29 PM | 00:00:00 | 520-593-5957 | Inbound | VOICE | Missed Call | |
| 06-09-23 | 08:42 AM | 00:01:46 | 520-593-5957 | Inbound | VOICE | | |
| 06-10-23 | 10:58 AM | 00:21:46 | 520-593-5957 | Inbound | VOICE | | |
| 06-12-23 | 11:21 AM | 00:00:00 | 206-910-5888 | Inbound | SMS | | |
| 06-12-23 | 02:12 PM | 00:00:00 | 206-910-5888 | Outbound | SMS | STOP | |
| 06-12-23 | 02:09 PM | 00:00:00 | 775-790-3938 | Outbound | SMS | STOP | |
| 06-12-23 | 11:19 AM | XX:XX:XX | 206-910-5888 | Inbound | VOICE | | |
| 07-18-23 | 03:23 PM | 00:00:00 | 240-858-8136 | Inbound | VOICE | Declined Call | |
| 07-25-23 | 04:02 PM | 00:00:58 | 240-858-8136 | Inbound | VOICE | | |
| 07-28-23 | 04:10 PM | 00:00:00 | 240-858-8136 | Inbound | VOICE | Missed Call | |
| 07-29-23 | 04:33 PM | 00:00:51 | 240-858-8136 | Inbound | VOICE | | |