# Exhibit K

## Woolfson Deposition, July 27, 2026

# In the Matter of

No. 24CV6182

BRONSTIN, et al.

v.

SERVBANK SB f/k/a ALLIED FIRST BANK

## Continued Deposition of Aaron Woolfson

*Monday, July 27, 2026*

The Little Reporting Company
469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

------------------------------------x

ASHER BRONSTIN, on behalf
of himself and others
similarly situated,

Plaintiffs,

No. 24CV6182

-against

SERVBANK SB F/K/A ALLIED
FIRST BANK,

Defendant.

------------------------------------x

July 27, 2026
10:07 a.m.

CONTINUED REMOTE DEPOSITION of AARON WOOLFSON, taken by Defendant, pursuant to adjournment, before Lisa Hiesiger, a Shorthand Reporter and Notary Public for the State of New York.

A P P E A R A N C E S :

PERRONG LAW LLC
Attorneys for Plaintiffs
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038

BY: FRANCISCO FERNANDEZ DEL CASTILLO, ESQ.
215.225.5529
-and-
ANDREW PERRONG, ESQ.

MILMAN LABUDA LAW GROUP PLLC
Attorneys for Defendants
3000 Marcus Avenue
Suite 3W8
Lake Success, New York 11942
516.328.8899

BY: COLLEEN O'NEIL, ESQ.
COLLEEN@MLLABORLAW.COM

-and-

HOPE DEVITO, ESQ.
HDEVITO@MLLABORLAW.COM

~ oOo ~

A A R O N   W O O L F S O N

the Witness herein, having been previously sworn by the Notary Public, was examined and testified further as follows:

CONTINUED EXAMINATION BY MS. O'NEIL:

Q. Good morning, Mr. Woolfson. How are you doing?

A. I'm well, thank you. Colleen, how are you?

Q. I'm good. Welcome back.

A. Thank you.

Q. So Mr. Woolfson, we're here to continue your deposition from June 23rd -- no, June 12th, right?

A. I could tell you what date that was. I think it was later than that. Let me just look and see here. I want to make sure that my records are right here. I'm having a hard time --

Q. I have the transcript right here, it was June 12th.

A. Okay, let's see here. Just really quick, could I have a copy of that transcript?

Can we go off record first before we start? Are we on record?

THE COURT REPORTER: Yes.

THE WITNESS: I'm sorry, can we go off record for just a minute?

THE COURT REPORTER: Counsel, are you okay going off the record?

MS. O'NEIL: I'm okay going off the record.

(Discussion off the record)

Q. So, Mr. Woolfson, I just wanted to remind you that from your deposition on June 12th, that today you remain under oath.

A. Yes.

Q. Your obligation is to give complete and accurate answers and that's unchanged, you understand that, correct?

A. Yes.

Q. Mr. Woolfson, did you review your June 12th transcript?

A. No, not yet.

Q. Did you review any documents to prepare for today's deposition?

A. No.

A. Woolfson

Q. Did you speak with anyone to prepare for today's deposition other than counsel?

A. Yeah, I mean right before the call I mentioned that we have an outstanding invoice from the previous deposition that was sent on June 16th that hasn't been paid yet. So I just want to make sure that we have on the record that that's outstanding and that will be paid. I'm sure it was just an oversight.

Q. Fair enough. Other than your payment, have you spoken to anyone else about today's deposition and preparation for today's deposition other than counsel?

A. No.

Q. Mr. Woolfson, we're here today to talk about your June 23rd supplemental -- June 23rd, 2026 supplemental declaration, the revised July 1st through August 31st, 2022 population and the materials produced in response to materials produced in the June 27 subpoena, you understand that, right?

A. Yes.

Q. With respect to your supplemental declaration did anyone assist you with the

supplemental analysis or the supplemental declaration in preparing it?

A. No.

Q. How about with respect to the production that you made in response to the June 27th, 2026 subpoena. Did anyone assist you in identifying or gathering documents to produce?

A. No.

Q. And you submitted your supplemental declaration, I believe the date was June 23rd, 2026. Since you submitted that supplemental declaration have you or TelSwitch done any additional work on the Bronstin-Servbank matter?

A. No.

Q. At this point right now before we start, do you have anything with respect to your June 23rd, 2026 supplemental declaration that you want to correct or qualify or anything you want to change in that supplemental declaration at this point?

A. No.

Q. Mr. Woolfson, who asked you to prepare the supplemental declaration?

A. I'm sorry, say again?

A. Woolfson

Q. Who asked you to prepare the supplemental declaration?

A. I believe that I did that on my own after I had noticed that there were some -- there was a range of dates that I wanted to limit it down by. So I reached out to counsel and told them I'd be preparing a supplemental.

Q. What was the reason that you wanted to limit it down to certain dates?

A. I believe that in my last deposition something came up about certain dates that may have been -- that the data may have had a wider period of dates or following that deposition than the attorneys had wanted. I don't know all the reasons why but I just remember some discussion about that, so I limited it to just these dates.

Q. So I just want to make sure the record is clear because I'm a little bit confused. I believe that you testified that you made the decision to submit your supplemental declaration, do I have that right?

A. Yes.

Q. And I believe you said that you made that decision based on something that occurred at

your deposition on June 12th, is that accurate?

A. Or shortly thereafter, yes.

Q. Did you have a conversation with someone?

A. Yeah, there was a discussion that the attorneys were either going to bring up a limited date, and I said that I was just going to myself write a declaration.

Q. Who chose the dates to limit it to?

A. The attorneys.

Q. So the attorneys told you to limit the date, but they didn't tell you to write a supplemental declaration?

A. They said that they were going to limit the dates or something about the dates and I said that I would submit a declaration and that I would begin working on that.

So I decided to do the declaration, and they asked me some questions about how many calls were within which dates. And I said it would be easier for me to just write a declaration.

Q. When did this conversation take place?

A. I believe it took place within a couple of days of my deposition.

Q. So were you actually given any assignment?

A. Well, as an expert I have a duty of candor and I have a duty of expressing my or an opportunity to write declarations if I feel that it's necessary to support my opinions. And if the dates change, then I felt that it was necessary to put it in the record so it can be assistive to the trier of fact.

Q. Mr. Woolfson, in your supplemental declaration do you have --

MS. O'NEIL: Actually, I'm going to -- could we go off the record for one second?

(Discussion off the record)

MS. O'NEIL: I'm going to mark as Defendant's Exhibit 3, it's a document titled "Supplemental Declaration of Expert Aaron Woolfson."

(Defendant's Exhibit 3, Document titled "Supplemental Declaration of Expert Aaron Woolfson", marked for

identification, as of this date.)

Q. Mr. Woolfson, do you have your supplemental declaration in front of you?

A. I do.

MS. O'NEIL: Hope, do you want to post it?

Q. Mr. Woolfson, do you see the document on the screen?

A. Yes.

Q. And the supplemental declaration of expert Aaron Woolfson.

MS. O'NEIL: Hope, could you scroll to the fourth page?

MS. DeVITO: Sure, of course.

(Scrolling)

Q. Mr. Woolfson, is that your signature on page 4 of the declaration?

A. Yes.

Q. Do you recognize this to be your supplemental declaration that you submitted on June 23rd?

A. Yes.

Q. Going back to page 1, paragraph 1 of the declaration, Mr. Woolfson, you wrote in

A. Woolfson

paragraph 1 that you were "retained to analyze call records 'reflecting the calling done by or on behalf of Servbank.'" Do you see that in paragraph 1?

A. Yes.

Q. So at your June 12th deposition, you described the calls as allegedly made by Servbank, by defendant. Do you recall that testimony?

A. Well, I don't recall the specific language of that, but I recall -- I mean that that's something that I would have said, yes.

Q. And so do you have any new information based on -- from your first deposition that caused you to say under oath in the supplemental declaration that the records reflect calling done by or on behalf of Servbank?

A. I believe that reflects the same language as my first declaration.

Q. And are you giving an expert opinion, is that your expert opinion that these calls were done by or on behalf of Servbank?

A. No, I understand it just to be a fact, based upon the records that were provided

responsive to this.

Q. And that fact is based on what records?

A. Call records themselves.

Q. And the call records themselves lead you to conclude that these calls were made for or on behalf of Servbank?

A. Well, if a defendant or somebody produces records in connection with the litigation, I would assume that those records are being produced responsive to a particular set of requests of document requests related to the defendant. So yes.

Q. So again, we went over this in your first deposition.

MR. FERNANDEZ DEL CASTILLO: I'm sorry, I have to object that this is beyond the permissible scope of this deposition.

MS. O'NEIL: It's not.

MR. FERNANDEZ DEL CASTILLO: You closed the first. I have to make a record. Just let me make a record and then you can --

MS. O'NEIL: No speaking objections. You can object on form or you can object on privilege or court order. There's no speaking objections. But I will tell you right now that this directly relates to the supplemental declaration.

MR. FERNANDEZ DEL CASTILLO: I don't agree with you.

Q. Mr. Woolfson, do you recall we went over this in your first deposition, what is your basis for determining that defendants produced the CDRs?

MR. FERNANDEZ DEL CASTILLO: Form of the question.

A. I'm not a lawyer and I don't want to get caught up in the semantics of how these words are or what they're supposed to mean.

Q. I'm not asking you to give me a legal conclusion, Mr. Woolfson. You said that your determination that these calls were made, done by or on behalf of Servbank was based on one fact you gave me was that if the defendants produced the CDRs that that would lead you to assume that these calls were made for or on behalf of

Servbank. And again, I want to understand where your understanding is that defendants produced these CDRs?

MR. FERNANDEZ DEL CASTILLO: Form of the question.

A. I don't know if the defendants themselves produced them or if they were produced via a third party, but I understand that they're related to calling done in this lawsuit.

Q. I'm sorry, I didn't hear the last part of that. You understand what?

A. That they were produced related to calling that was conducted in this lawsuit that's the subject of this lawsuit.

Q. I just want to make sure the record is clear, you received the calling records in this case. And based on the fact that you received the calling records in relation to this case, that's the basis of your assumption that these calls were made by or on behalf of Servbank?

A. Yes.

Q. Are there any other facts that made you come to that conclusion?

MR. FERNANDEZ DEL CASTILLO: Form of the question.

A. It's been a while since I've looked at the records themselves. There might be indicators in the actual records that I would have to look at that may say Servbank in them, but I don't recall.

Q. So it's your testimony that the CDR records themselves may or may not actually say Servbank in them?

MR. FERNANDEZ DEL CASTILLO: Form of the question.

Q. You can answer.

A. I would have to look at the records themselves. I don't recall. But very often in these records there are indicators that say who the client is or who the calling is done on behalf of.

MR. FERNANDEZ DEL CASTILLO: Can we go off the record momentarily, please?

MS. O'NEIL: We can go off the record.

(Discussion off the record)

Q. Mr. Woolfson, so far you've told me,

A. Woolfson

I believe, two facts that you say support your determination in paragraph 1 that these calls were made by or on behalf of Servbank. The first one you said was that these call records were produced within this litigation. Whether they were produced by defendants or someone else, they were produced within this litigation, and therefore, you assume that they were made for or on behalf of the defendants. Is that an accurate one of the bases?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Yes.

Q. And then I believe the second basis was that you believe that, perhaps, some of the, within the data itself, it may have said Servbank and that might be another basis for your belief -- for your statement in paragraph 1 that the calling was done by or on behalf of Servbank, is that accurate?

A. I don't know that to be the case, I haven't looked at the records. But I think the fact that they were produced in this matter is what I would say is what I relied upon, but I don't know if there's anything in the records

that would indicate Servbank itself.

Q. Fair enough. Mr. Woolfson, I just want to know if there's any other basis for your statement that the calls were done by or on behalf of Servbank or did we cover them all?

A. Making those sort of determinations is really for a trier of the fact and that's beyond the scope of what I was asked to do.

Q. I understand, Mr. Woolfson. But my concern is that in paragraph 1 of your supplemental declaration you wrote that you were analyzing the call records in this lawsuit reflecting, quote, "the calling done by or on behalf of Servbank." So while it may be an issue for the trier of fact you put it into your report, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. That's correct, yes.

Q. And then if we scroll to page 3 of your report in this yellow box at the top of page 3 you say "All items within, quote, 'defendant's call records,'" correct?

A. Correct.

Q. So again, you're calling the call

records, the CDR records that you analyzed, you're labeling them defendant's call records, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Yes, is there something that I should have labeled them differently. I mean I'd love to know because these calls were allegedly done on behalf of defendants. And I am a certainly not trying to mislead the record, but I'm also not an attorney. So if there's a different stylistic approach then, I guess, you know, I'd like to know that. But I've never heard somebody state that the calls weren't really done on behalf of or by defendant when they were produced in the lawsuit related to calling done on behalf of or by a defendant. I've never heard of that. And I've worked on, as I had mentioned previously, hundreds of cases and including current cases on behalf of defendants and no one has ever brought that to my attention before.

Q. So is it fair to say that based on the fact that these call records were produced within this lawsuit that you're assuming that they were based on behalf of the defendants?

A. Woolfson

MR. FERNANDEZ DEL CASTILLO: Form.

A. Yes.

Q. It's not a fact that you established, is that accurate?

A. Right, the only facts that I established are related to the analysis of the records themselves for the waterfalls and the analysis thereof.

Q. In paragraph 3 of the report back on page 1 you say, "I have subsequently been asked to create this supplemental declaration to my previous analysis to identify which calls were placed dates -- I think it's supposed to be "within there" maybe -- placed within dates of 7/1/22 and 8/31/22 using the same criteria in that analysis." Do you see that paragraph?

A. Yes.

Q. Earlier you said that it was your decision to create the declaration and here you're saying that you were asked to create the declaration. Is that just semantics?

A. I mean I was asked to limit the dates, yes.

Q. And --

A. It's my decision to prepare a supplemental declaration.

Q. Was that your complete assignment to limit the dates?

A. I'm not following, say again.

Q. Other than the date range, did anything else change from your initial report to your supplemental report?

A. I don't think so.

Q. Did you use any additional sources?

A. No.

Q. Did the criterion change?

A. No.

Q. Any assumptions change?

A. No.

Q. How about the method that you performed the analysis?

A. There's just one additional step which was to remove calls that were before 7/1/2022 or after 8/31/2022.

Q. I think you answered this already, but I just want the record to be clear. You did not receive any additional CDR records, correct?

A. That's right. All I did was apply a

A. Woolfson

filter to my existing analysis. And just to tell you how that, you know, it was truly a filter. That that particular activity, I believe, writing that declaration -- let me make sure that I have this right.

On June 23rd I logged three hours writing this declaration, and doing the just making sure that the exhibits and everything were produced. So there was no new work product that was produced. The only thing was an additional filter, I just want to point that out that that's a pretty small amount of time. So it was a very, very small and narrowly scoped task.

Q. Mr. Woolfson, you identified 985,670 qualifying call records to 198,196 destination numbers during the July 1, 2022 to August 31, 2022 period?

A. Alleged calls, yes. I'm not making a legal determination I'm just telling you what's in the data, so alleged, yes.

Q. Do I have those numbers right 985,670 qualifying call records to 198,196 destination numbers?

A. Unique telephone numbers, yes.

A. Woolfson

Q. You identified three qualifying records to the number ending in 4803 during the July 1 to August 31, 2022 period, correct?

A. Yes.

Q. And your opinions concerning the revised July to August population are fully stated in the June 23rd declaration and its exhibits, is that accurate?

A. Can you ask that again?

Q. The opinions that you have concerning the revised July to August 2022 population, are those opinions all set forth in your declaration and the attached exhibits?

A. The opinions, yes. The database itself I did consider -- I think I mentioned this in the last deposition -- I consider my database part of that. Because it can be used to answer any questions that could be advanced by the trier of fact. And if this goes to trial and I don't think most TCPA cases do, but if this goes to trial then the entire universe of my opinions would be contained within that data. For instance, if the trier of fact asked only to limit calls only to those that were done on

weekend days, for instance, I could answer those questions using the database and they're a part of it. They would be part of my opinions even though they aren't verbose within the report itself.

Q. Were you asked to determine how many calls were made on the weekends?

A. No, but I'm using that as an example for the type of questions that are often advanced by the trier of fact that I can't contemplate a really good example also is if there are some sort of laws that have changed that would preclude certain types of calls or certain states or something. I want to make sure that I'm able to adequately satisfy the court.

Q. Okay, Mr. Woolfson, I understand that there's hypothetical situations that could arise and questions that could be asked and that you don't want to box yourself in to say that you can't use your data to answer those hypothetical forward-looking questions. I understand that.

The question that you were asked was the question that you were asked was for your declaration in paragraph 3 you said "I have

subsequently been asked to create the supplemental declaration to my previous analysis to identify which calls were placed, dates of 7/1/2022 to 8/31/2022 using the same criteria in that analysis."

With regard to that question that you were asked, do all of your opinions that you come up with, are they all contained within your supplemental declaration?

A. Thank you for the clarification, and yes.

Q. I asked you earlier, Mr. Woolfson, if you generated this supplemental declaration on your own and I believe your answer was that you did, correct?

A. Yes.

Q. I just want to break that down a little bit. Did you have any help in importing the source data?

A. I believe my original answer to that -- I'm going to think about that carefully and let me make sure because I normally put some notes in -- the original data import in March when I got the data was performed by under my

supervision by a gentleman named Eric.

Q. You said by a gentleman named and then I didn't hear what you said?

A. Eric with a C at the end. But that's the only part.

Q. How about running the final analysis, the waterfall, did you do that on your own?

A. That was all me, yes.

Q. Generating Exhibit 1 and Exhibit 2 to the supplemental declaration?

A. That was my work, yes.

Q. You provided a spreadsheet with your FTC file index, correct; do you know what I'm talking about?

A. I do.

Q. And did you generate that file yourself?

A. Yes.

Q. I'm sorry, that index yourself?

A. I did.

Q. We were talking about the SQL for the supplemental declaration, if I use the term "calls one," do you understand what that table is?

A. Woolfson

A. Yes.

Q. Can you explain what it is?

A. I can.

Q. Would you, please?

A. Calls one is two or more calls in 365 days of being on the DNC list for more than 30 days. And that is part of the waterfall analysis that I perform. And generally I use calls one, calls two, calls three as these bifurcated sets or buckets of resulting calls or calls that are resulting from the part of the waterfall that is specific to the steps or that I'm intending for that part of the waterfall.

So, for instance, waterfall one may have a certain type of criterion whereas waterfall two -- I'm sorry, calls two may have a different set of criteria whereas calls three may have something else entirely. And it's really specific to each case and each area of provision that I'm being asked to do.

Q. Okay. So I have a specific question and I have an understanding and I want you to let me know if my understanding is correct, okay.

So when you described the calls one

table, you did not mention whether there was a temporal limit to that calls one table. My understanding was that the calls one table was limited by the initial class size which was, I believe, I believe it was sometime in 2022 to October or September of 2023, that bigger class size from the original declaration. Is my understanding of that temporal component of the calls one table accurate?

A. When you say temporal, I'm not familiar with that word.

Q. Is there a time component to it, a date component?

A. Yes.

Q. So is the calls one table, your exhibit of the 12 million plus phone calls, in that you determined with respect to your initial declaration?

A. I would have to look to see that for sure. There are, I believe, in the original declaration resulted in, is it one -- I'm not looking at the original declaration right now, I'm sorry -- but I believe there were three different date ranges, there was January 1, 2022

through March 31, 2022 in the first one. Through the second one I think it went through end of June 2023. And then the final or the subject of supplemental was from 7/1/2022 through 8/31/2022, as indicated within that supplemental declaration. So I think that's the only difference between calls one, calls two and calls three.

Q. So --

A. Does that answer your question in a more particularized way?

Q. I think that you answered my question at least for what I was concerned about. But just to make sure it's clear, calls three is a table that refers to the temporal period from July 1, 2022 to August 31, 2023, is that accurate?

A. August -- I think it's August 31, 2022, right.

Q. 2022, correct, right.

A. And you know, I know that was just a misstated date, I know that you're not -- I know that you're being very clear with your question so that's why I corrected it. I'm not trying to

be coy.

Q. I appreciate it.

So what role did the calls three table play in the supplemental analysis?

A. Well, to create these different waterfall bifurcations one simply starts with the entire population and then applies the date ranges filters to it. So calls three is really just the curation of that using a limit of the previous analysis, but using a more tightly constrained set of dates. I think you referred to them as temporal.

Q. The reason I'm asking these questions, Mr. Woolfson, is I just want to understand the SQL and to the extent I have some questions about it, I want to know -- I wanted you to explain it to me a little bit.

MS. O'NEIL: So I'm going to ask Hope to pull up Exhibit 1, the supplemental declaration, Woolfson Exhibit 1. That's our internal name for it, but Lisa we want to mark this as Defendant's Exhibit 4.

(Defendant's Exhibit 4, Supplemental declaration, marked for identification, as

of this date.)

Q. Mr. Woolfson, what Hope is pulling up here is going to be your Exhibit 1 to your expert report. Can you tell me in your words what Exhibit 1 to your supplemental expert report is?

A. Yes.

Q. Could you go ahead and do that, please?

A. It's the instructions that are used to partition the calls and to create the waterfall filters.

Q. Okay. And is this the sequel that you ran -- does this Exhibit 1 represent the sequel that was run with regard to the supplemental analysis to come up with Exhibit 2?

A. Well, this contains -- this goes all the way back to foundational data and I think just for the record I think Andrew Perrong has joined us.

THE WITNESS: Good morning, Mr. Perrong.

MR. PERRONG: Hi.

A. So yes, this contains the initial sequel plus any additional steps that were run

for calls three which is the more limited date range.

Q. And at the bottom on page 6 on this sequel, Exhibit 1 sequel, do you see at the bottom of this page, do you see where it says "Named plaintiff calls" and it says "The duration from calls one"? Do you see that?

A. Yes.

Q. I'm just curious why for the named plaintiff calls we're back to calls one in the supplemental analysis?

A. Well, for the benefit of the trier of fact or anyone else I listed my -- I included any steps that were also conducted as part of calls one and calls two that were within my original declaration.

Q. Was this named plaintiff calls one, was this executed for the supplemental declaration?

A. No.

Q. And it's in here why?

A. Because I attached all my sequel that I used as part of my construction of my sequel database and calls one is still within the sequel

database but the supplemental only concerns calls three, I believe.

Q. So did you run a sequel to generate the calls to the named plaintiff during the supplemental class period?

A. I did. It's from calls three that would have been run. Yes.

Q. And can you tell me where in the sequel that is?

A. I'm not sure if I -- well, I don't see it on this page here, but maybe it's on page 8.

MS. O'NEIL: Could you scroll through slowly.

(Scrolling)

A. Yeah, I don't know why it's not showing up there.

Q. Let me ask you this question, when you ran -- when you executed the search for the named plaintiff during the supplemental class period, that sequel would have been with calls three, correct?

A. Yeah, when I was writing the report I may have just simply run it from calls three. I

have it on my screen, the actual sequel command that was used if I pull up the three calls. I don't know why it's not on that.

Q. I'm going to ask --

A. Maybe my attachment was wrong or something, or maybe he took the wrong sequel, but it's just calls three. It's clear to me that that's -- I mean those calls came from somewhere. And I can see it here so I don't know why it's not on this particular sheet, but they came from calls three. And they're in there.

Q. Just so the record is clear, the named plaintiffs' calls came from calls three not from calls one, even though the sequel says calls one?

A. Correct.

Q. And the named plaintiffs' calls that you identified in calls three were July 18, 2022, July, 25, 2022 and August 31, 2022, is that accurate?

A. Yes, ma'am.

Q. And only those three calls appear within your 985,670 call class, correct?

A. That's right. Only those three calls

to the named plaintiff.

MS. O'NEIL: I'm going to ask Hope to pull up just sequel 4 on the PDF, and we're going to mark this Defendant's 5.

(Defendant's Exhibit 5, sequel 4 on the PDF, marked for identification, as of this date.)

Q. Mr. Woolfson, are you familiar with just sequel 4?

A. I am.

Q. I'm going to represent to you that the document on the screen is just sequel 4 and that this document was produced as part of your production in response to my subpoena regarding the supplemental declaration.

A. Okay, yes.

Q. And --

A. I know what happened here. I was working in sequel, and I should say report three in there and something I attached the wrong one, but it's analogous that it was report three.

Q. So this talks about report one and calls one, but that was really report three, calls three, is that accurate?

A. Woolfson

A. That is correct.

MS. O'NEIL: Hope, you could take that down.

A. My apologies. I think what happened was I somehow didn't -- I saved it to the PDF, but it saved the primitive or something when I was attaching it, but that should say report three, calls three.

Q. Then before signing the supplemental declaration under oath, did you do anything to compare the numerical statements in it against the underlying populations or output?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Yes, I have what's called the waterfall checklist and I also run independent queries of just ad hoc queries, yes.

Q. And do you have documentation of those queries that you run?

A. Yeah, I do, I have something called waterfall 6/23/2026B. I just put that into the chat. That's a cross reference.

Q. You don't have to put them into the chat now, Mr. Woolfson, but I would ask that they be produced in response to the subpoena, the

supplemental production?.

MR. FERNANDEZ DEL CASTILLO: Colleen, if you want to talk about discovery, don't do it in a deposition on the record. You can talk to counsel about that off the record.

Q. So Mr. Woolfson --

MS. O'NEIL: Hope, could you pull up the supplemental declaration which I believe we marked as Defendant's Exhibit 3?

A. I, just so you know, Ms. O'Neil, I produced something called waterfall. And in this Excel sheet was contained within the production that I made on the documents that were responsive to the 6/27.

Q. Yes, I'm familiar with the waterfall.

A. Yes, that's the cross-reference sheet, the auditing sheet that I use.

Q. And so in your supplemental declaration we're going to scroll down to paragraph 6. So you start your supplemental declaration with a starting population of 60,044,125 calls, correct?

A. Woolfson

A. That's correct.

Q. And you then report removing --

A. I can hear you but my Zoom did something weird for just a second. Okay, I'm back. Sorry. Something got minimized or I don't know what happened.

Q. You then report that you removed 5,804,215 duplicate records, 59,587 non-eligible records, 47 test calls and 30,836,658 records under the duration criterion and then if we scroll to the next page in paragraph 8 -- after you removed all of those -- scroll to the next paragraph, the next page, still in paragraph 8 in the next page -- this left a total of 23 thousand 343,658 records?

A. 23 million.

Q. 23 million, yes, my bad.

MR. FERNANDEZ DEL CASTILLO: I object to the form of the question.

Q. Then we go to paragraph 9 from that 23,343,658 figure, the declaration then removes 21,332,418 records, 932,413 records and 93,117 records, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Woolfson

A. Yes.

MS. O'NEIL: And if we scroll down a little bit more, Hope.

Q. So it's not all that clear from the prose, but do you see the bottom yellow box, Mr. Woolfson?

A. Yes.

Q. At the bottom yellow box it says "The quantity of unique numbers to which 985,670 calls were placed." Do you see that?

A. Yes.

Q. So back up in paragraph 9 where you removed the 21,332,418 records, et cetera, from the 23,343,658 records that mathematical equation comes out to 985,710 records. So I'm confused, can you tell me where the 985,670 calls came from?

A. I'm not following actually. I'm looking at the Excel spreadsheet here -- unless there's a typographical error somewhere. I'm looking at the Excel spreadsheet and, it doesn't -- your math doesn't math.

Q. So if we take 23,343,658 records and we remove 21,332,418 records, then remove another

A. Woolfson

932,413 records and remove another 93,117 records I'm representing to you that that result is 985,710 records.

A. I don't see that, I see 985,670 records according to the Excel spreadsheet unless there is something typographically that I wrote in the narrative which is just me typing in numbers. But those numbers match the Excel sheet and those the math is, from the 23 million 343 thousand and 618. So that 658 there is a typographical error right there because it's actually 618 remaining records.

Q. So the final count of 685,670 --

A. I'm sorry, 985,670 in the Excel sheet is the correct number and the math adds up. It's just that if you look at the last sentence in paragraph 8 and the beginning sentence in paragraph 9 that should say 23,343,618 records remaining.

Q. So the math on the spreadsheet is right, it just doesn't reconcile with the paragraph 9?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Paragraph 9 instead of writing

A. Woolfson

23,343,618, as indicated in the waterfall and sequel database, I typed it out and wrote 658 as the remaining records. So I'm off by 40 records for purposes of just if you were to look at the narrative portion, but the math on the waterfall is correct.

Q. Did you run a quality control process before you signed the supplemental declaration?

A. I did. I did it on the Excel spreadsheet, and I did it on the exhibits and on the sequel database. But it appears that paragraph 9 from a typographical standpoint did not -- I did not catch that.

Q. So, Mr. Woolfson, a destination number could enter your 198,196 number population, only if your process classified it as satisfying the Do-Not-Call Registry criterion, correct?

A. The 198,196 unique number, yes. And it had to be two or more calls.

Q. And that classification depended on historical registry files stored by TelSwitch, correct?

A. Files that we received from the

Federal Trade Commission.

Q. When you say received, what does that mean?

A. We get a file nearly every day from the Federal Trade Commission that contains the entirety of the do-not-call list.

Q. So the Federal Trade Commission sends that to you every day?

A. We log in through a website, a secure FTP site, and we download it once a day.

Q. When you download that every day, and then you save those in an archive, correct?

A. Correct.

Q. And that archive is what you use to determine whether the 198,196 number satisfies the Do-Not-Call Registry criterion, correct?

A. Well actually we ran it or I ran it against the 23,343,618 calls to identify which of those calls. So there's actually more -- yes, we run it against every call that survives the first part of the waterfall.

Q. But in order to make it into the class of 198,196 for the time period of the supplemental declaration, those numbers had to be

A. Woolfson

determined to satisfy the Do-Not-Call Registry criterion by utilizing your Do-Not-Call Registry archive, is that accurate?

A. Correct.

MR. FERNANDEZ DEL CASTILLO: Form.

Q. And just to be clear, like the source CDRs themselves don't contain that information, correct?

A. That is correct.

MR. FERNANDEZ DEL CASTILLO: Form.

A. When you say source CDRs, you mean the CDRs that were allegedly produced in this matter that allegedly may contain calling that was perhaps done on behalf or by the defendant, right?

Q. Yes. So to independently determine whether all of the 198,196 numbers met the registry criterion, any analyst would need access to and would need to analyze historical registry information, correct?

A. That's a fair statement.

Q. Have you identified any authoritative source other than registry information that can establish historical national DNC status for all

198,196 numbers?

A. I think that CompliancePoint does a pretty good job of that. Their methodology seems to be pretty solid I believe that DNC.com has some sort of archive although their number drops off or on there, sometimes there's a disparity with them. But in the data that I've looked at and done matching to CompliancePoint I think that we've achieved the same results in the past on the data that I've locked at.

Q. I'm not familiar, what is CompliancePoint?

A. CompliancePoint is a great organization. They do defense side expert work, they also publish different specifications for the tagging of telephone numbers as to whether or not they're on the National Do-Not-Call Registry list. And I believe they have archive files that go back, it's probably equivalent to ours.

And just to give you a frame of reference, in 2025 there were approximately 322 files that were published by the Federal Trade Commission. They weren't published because sometimes their network is down and their

A. Woolfson

computers are down, but when the U.S. Government shuts down they don't publish a list, for instance. And there were 826 billion -- I'm sorry 82,674,541,665 records in sum within those files that were published say, for instance, 2025, those 322 files.

CompliancePoint has a similar record count. For instance. So I would feel comfortable in saying that CompliancePoint would be pretty authoritative. But the ultimate authority is the Federal Trade Commission lists, and that's what we're using.

Q. Is CompliancePoint -- I'm trying to understand, is that another -- are they TCPA experts?

MR. FERNANDEZ DEL CASTILLO: I object to the form of the question.

A. They're a really good organization that does both policy, advocacy and best practices auditing and they do expert work.

Q. In running your analysis, did you use any data from CompliancePoint?

A. No.

Q. But whether it's your data or

A. Woolfson

CompliancePoint data, DNC classifications, that without DNY classifications the 198,196 number result cannot be reproduced, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. I don't know if it can be reproduced precisely. I think there's plenty -- there are several companies out there that will buy this sort of analysis. And I also suspect that the Federal Trade Commission -- I don't really know, so I'm not going to say, but the Federal Trade Commission, I think, has those lists.

Q. So for those numbers to make it onto the class list, they have to satisfy the DNC registry criterion, correct?

A. I don't quite understand the question, and I don't want to answer it incorrectly.

Q. So let me break it down.

A. I'm sorry, maybe you can ask it again.

Q. That's okay. Let me break it down for you. When I say the DNC criterion, we're talking about the criterion that the number has to be on the list for 30 plus days.

A. More than 30 days.

Q. More than 30 days and it has to receive at least two phone calls within 365 days, correct?

A. Follow the numbers on the list were marked 30 days.

Q. So that's what I mean when I say the DNC criterion. So in order for the number to appear on your 198,196 number class list that number had to pass the DNC criterion, correct?

A. Yes.

Q. I mean it had to satisfy the DNC criterion?

A. Pass is sufficient as well.

Q. But without historical registry data is there any way someone could determine whether a number satisfied the DNC registry criterion?

A. No, and I'm going to say this with an asterisk. Okay that's fine, no.

Q. Your initial declaration contained a section titled "Materials and Documents Reviewed and Relied Upon" on page 7 and 8. Do you recall that section?

A. I'm not looking at it right now but

yes, I list those typically in reports.
Q. And do you use that section to identify the materials and sources of data on which your opinions rely?
A. I don't know if it just cut out or something, but can you just ask that again?
Q. Sure, I can. Do you use the section "Materials and Documents Reviewed and Relied Upon" that's the name of the section, do you use that section to identify the materials and sources of data on which your opinions relied?
A. I'm going to look at my declaration and make sure that I... I used -- yes. Let me know if within the next five minutes or 10 minutes is a good time for me to use the restroom.
Q. Do you want to take a five-minute break for the bathroom?
A. Yes, if you don't have pending questions. Unless you want to go --
Q. That's fine because I want to pull up another document.
(Recess taken)
Q. Mr. Woolfson, I'm going to have Hope

pull up your initial declaration which has already been marked as Defendant's Exhibit 1 in the first deposition. Turning to page 7, do you see the heading "Materials and Documents Reviewed and Relied Upon"?

A. Yes.

Q. And so again those are the material sources of data upon which you relied to form your opinions in the declaration?

A. Yes.

Q. And your supplemental declaration, does that incorporate or rely on this list in your initial declaration?

A. Yes.

Q. At your first deposition you testified that the DNC classifications in your analysis were derived from your internal archive of the registry files, right?

MR. FERNANDEZ DEL CASTILLO: Form.

Q. You can answer.

A. From the internal archive of the FTC's do-not-call list, yes.

Q. And you used that same archive in performing your supplemental analysis, correct?

A. Woolfson

A. Yes.

Q. And in the archive of your material source of data underlying the 198,196 number result, correct?

A. Yes.

Q. The archive is not expressly identified in the "Materials and Documents Reviewed and Relied Upon" section, is it?

A. I'm sorry, the archive?

Q. The archive. The archive that you used to determine whether the numbers satisfied the DNC registry criterion?

THE WITNESS: Can you scroll down a little bit on this document?

(Scrolling)

A. The FTC eligible area code list that is published daily by the FTC, perhaps, that should say "FTC and DNC lists," plural. But yes, I do have that in there.

Q. So you're referring to section 3C on page 8, correct?

A. Yes.

Q. And the parenthetical reference to the DNC list that's intended to disclose your

reliance on TelSwitch's historical archive?

A. That's correct, I believe in footnote 10 you have it listed there as well.

Q. So on footnote 10, if I'm reading it correctly, that's your 2025 number?

A. We just refreshed it in 2026.

Q. Did you use your 2025 number to download any of the FTC registries that were relevant to this case?

A. That number -- so the first two segments of that number that long number there stayed the same, and the hyphen with the 25 is just the most recent renewal period.

Q. But this 25 number is not the number that you used to download any of these registries, right?

A. I don't know which number it was used. It was whatever relevant subscription was active at that time. You know, with the suffix or prefix -- I'm sorry, the suffix of that particular year's subscription.

Q. So in 3E you have the DNC list in parentheses. And in footnote 10 you have your 2025 SAN number. But in your sources and

A. Woolfson

materials there's no language that says the TelSwitch has accumulated and retained its own historical archive, is there?
A. No.
Q. It doesn't identify TelSwitch as the custodian of the historical copies you queried?
A. No.
Q. Does it disclose when or how TelSwitch acquired those copies?
A. No.
Q. And does it at all explain that your analysis queried TelSwitch's historical data?
A. I think it's strongly implied, but in what I wrote in my declaration but I don't have anything other than what's written in my declaration.
Q. The underlying data that you used it originated with the FTC, but the particular archive you queried was maintained and controlled by TelSwitch, correct?
A. Right, they are the precise files that we update from the FTC, yes.
Q. So TelSwitch's historical archive is not available to the public, right?

A. That is correct. Although, we will make it available to anyone who has their own subscriber account number. And we would share it --

Q. By the way --

A. -- if someone has an account number they can use our data and we do it all the time for defendants and plaintiffs.

Q. Is that permitted?

A. If you have a subscriber account number and you are entitled to get those files from the FTC, it's just like anyone who runs a list against DNC.com or CompliancePoint, especially if you're using it in connection with informing a trier of fact in a federal court. I think they're pretty on point orders recently about that. There is nothing that bars data from a government database being used to inform a trier of facts --

Q. So can you tell me --

A. -- it's pretty settled.

Q. Can you tell me what those settled orders are because I'm not familiar with them?

A. Yes, if you look at Federal Savings

Bank, Anthony v. The Federal Savings Bank, if you look at the --

Q. Let's start with the Anthony v. The Federal Savings Bank. Was there a determination in that case that the federal Do-Not-Call Registry could be shared with the trier of fact?

A. I don't know if it was --

MR. FERNANDEZ DEL CASTILLO: Form of the question.

A. Yeah, I mean it's a strange question, but let me just look and see something here. Let me look at FCC files. I guess this relates to the iConectiv data but we use the DNC data as well in that case. This would be ECF213 and Michael Anthony v The Federal Savings Bank, case number 121-CV-02509 Northern District of Illinois.

Q. I'm familiar with the case.

A. Good.

Q. I'm not sure I understand it to say the same thing that you say it says, but --

A. I think what it says --

Q. Mr. Woolfson, we'll move on. You touched upon this a little bit, but access to the

A. Woolfson

registry's telephone data that's actually limited to sellers, telemarketers, service providers and qualifying organizations that establish an account and complete the required access and certification process, correct?

MR. FERNANDEZ DEL CASTILLO: Form of the question.

A. To what data, the federal DNC data?

Q. Correct.

A. So you're saying the DNC data can't be used. So I have a subscriber account number that's been granted to me by the Federal Trade Commission as a consequence of having gone through and applied for one and obtained that and this data has been used in close to, I don't know, over a thousand cases but the FTC's data is not allowed to be used in connection with the TCPA. Like that's what you just said.

Q. No, I'm sorry.

A. I mean that's like -- that is so strange to me. I think that that really is for a trier of fact to decide.

Q. Mr. Woolfson, that's not actually what I said. What I said was access to the

A. Woolfson

telephone data is limited to authorized sellers, telemarketers, service providers and qualifying organizations that establish an account and complete the required access and certification process, correct?

A. I don't know.

MR. FERNANDEZ DEL CASTILLO: Form.

A. Okay.

Q. Can any member of the public just simply visit the website and download the registry telephone number data?

A. If they're a non-calling entity and they register, yes.

Q. So they first have to register, correct?

A. Correct.

Q. And once they're registered, can they just simply download the list?

A. Yes.

Q. Is there a certification process, first?

A. No. These are great questions for the Federal Trade Commission.

Q. Is the full list updated daily?

A. Yes.

Q. If you go on the registry, are you able to pick a historical date to pull up the list?

A. No.

Q. So TelSwitch in response to our subpoena produced several documents relating to its registry subscription in SANs, correct?

A. Yes.

Q. And it produced, according to the produced documents, and it appears that TelSwitch had a SAN number -- was registered and had a SAN number from practically March 2016 to March 2017, is that your understanding?

A. Yes.

Q. And there was another subscription covering March '18 through approximately March 2019?

A. Every year it has to be renewed, yes.

Q. So there are certain years that you did not produce a subscription documentation for.

A. Okay.

Q. Is there a reason for that?

A. We used to produce equipment and

A. Woolfson

dialers for call centers. And in connection with that one particular client we would have a subscription, but then there were several years where we didn't need it.

Q. So in the years when TelSwitch did not have its own subscription, it was able to utilize a client's subscription to download the list?

A. No, we did not -- we did not we only downloaded lists when we had subscriptions from the Federal Trade Commission.

Q. When did TelSwitch begin to download the lists?

A. I think in 2016. But we only downloaded them sporadically, like when we wanted to actively see if a number was on. It wasn't until, I think, 2020 that we started downloading it every day.

Q. In 2020 when you began downloading it every day, what was the reason that you began downloading it every day?

A. We used to count on DNC.com to run our data for us using historical information. And we did not maintain our own database. We did

A. Woolfson

maintain our own daily database, but then that relationship changed. They didn't want to do it anymore, they only wanted to do it for telemarketers.

Q. When you began downloading it on a daily basis in 2020, what was the purpose you were downloading it for?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Well, plaintiffs and defendants asked presently to identify and to audit records to see where on the defense side there was exposure to calls that were made in alleged violation of the TCPA. And on the plaintiff's side to identify those numbers that had been placed -- the numbers allegedly were in violation of the TCPA.

Q. So you began downloading in 2020 on a daily basis to assist in your --

A. Auditing.

Q. -- auditing for private litigation purposes?

A. And, yes, so, yes, well, for whatever purposes. I mean most of the stuff isn't litigation related, it's quality control and making sure that you either have existing

business relationships or that you're not calling people on the DNC list.

Q. Do you use your daily downloads to suppress numbers being called on a proactive basis?

MR. FERNANDEZ DEL CASTILLO: Form.

A. We used to for clients who were using us for that and using our Rapid Announce product, yes.

Q. In what time period were you doing that?

A. We used it to -- goodness, I don't remember the precise dates but our last client that we did it for was called EngageTel. And they were defended in an case called Spiegel v EngageTel. And after that experience we stopped producing the equipment and we stopped providing most calling services for wholesale consumers of our Rapid Announce product.

Q. I know you said you don't recall exactly when that was, but can you give me an estimate?

A. I can look and tell you approximately based upon the EngageTel file.

A. Woolfson

Q. Was it before or after you started your TCPA expert work?

A. I don't recall the precise dates.

Q. Why don't you go ahead -- I'll withdraw that. How about were there any other clients that you used the downloaded list to suppress numbers for?

A. I wouldn't call it suppressing numbers, I would say so EngageTel is a wholesaler and they were wanting to see if they were getting -- if their clients were calling numbers that were on the DNC list and the answer to that was yes. But I don't recall the dates that we stopped doing that?

Q. What's the name of that client?

A. EngageTel, they were the subject of litigation.

Q. When did you start doing your TCPA work?

MR. FERNANDEZ DEL CASTILLO: Form.

Q. I'm sorry, when did you first start doing your TCPA expert work?

A. I believe it was Texas Gila was the first case, I believe, and it was in June of

A. Woolfson

2014, so 12 years ago.

Q. For the supplemental report you relied on downloaded DNC data for the time period of July 1, 2022 to August 31, 2022, correct?

A. Yes.

Q. And --

A. Um, it's actually before that, it's not July 1st. It would be approximately June 1st, because we had to make sure that the numbers were on the DNC list for more than 30 days.

Q. And were all the registry datasets used in the supplemental analysis downloaded by TelSwitch contemporaneously on the dates that they represent?

A. Yes.

Q. And --

A. I want to say that the data that was relied upon, the DNC lists, it's the same DNC file that we ran with the larger set of data that we originally tagged under the original report. So to me there's really no difference in the way that we used the data between a supplemental report and the original report because it's just simply applying a filter.

A. Woolfson

Q. Mr. Woolfson, you did not produce in response to the subpoena any subscription documentation for the time period covering the July 1, 2022 to August 31, 2022 period or the June 1, 2022 period.

MR. FERNANDEZ DEL CASTILLO: Form.

Q. Did TelSwitch have an active SAN number during that period?

A. Yes.

Q. And is there a reason why you did not produce any documentation for it?

A. For every year, unless there are other factors it's just a simple resubscription form you just simply basically click on that you're still using the data and that you'd like to resubscribe to it for the next year, and they renew it for the next year. So there's no actual contracts or forms that you fill out.

Q. But you did produce documentation for other years?

A. Yeah, I mean back in 2015 or '16, there was a different type of subscription that we were using, yes. Back in 2015 or whenever we started. When we were actually assisting

companies that were doing calling in that particular subscription was for one particular client. I don't believe that we -- it ended up we switched over to the subscription that we were a non-dialing entity. But I don't have any paperwork that I can find surrounding that.

Q. So just to be clear you did produce subscription documentation for the period -- the time period right before the class period April 2021 to March 2022?

A. Right.

MR. FERNANDEZ DEL CASTILLO: Form.

A. Yes, that's right. If I saved something from a web form or something I have it, but otherwise I wasn't saving that.

Q. But you're representing to me that TelSwitch had an active SAN number for the class period of this supplemental report, is that accurate?

A. Yes. Otherwise we would not have been able to download these files directly from them.

Q. And TelSwitch did download the DNC registry for each day of the class period in this

A. Woolfson

case with the exception of any days that were missed?

A. Yes, any days where it wasn't published due to technical issue or there was something that was, I guess, technical issue, yes. And there were a few of those here and there.

Q. Who from TelSwitch -- does a person download the data every day?

A. There is a download that occurs every day, and I'm the one who does it. Occasionally, one of my other staff does it, but I think they haven't done it in a couple of years at least three or four, five years. So I'm the one who does it daily.

Q. So is it fair to say that the dataset -- each dataset that TelSwitch used for the supplemental analysis was downloaded from the DNC registry by TelSwitch, in other words TelSwitch didn't get that data from anywhere else, correct?

A. Correct.

Q. And did TelSwitch ever download data under someone else's -- some other entity's SAN number?

A. Woolfson

A. No.

MS. O'NEIL: I'm going to pull up a document, I think we're up to Defendant's Exhibit 6.

Hope, could you please pull up the instructions for a daily download?

(Defendant's Exhibit 6, Internal note at TelSwitch to identify process to download National DNC list daily, marked for identification, as of this date.)

MS. O'NEIL: Lisa, we're going to mark this as Defendant's Exhibit 6, I believe is what we're up to.

Q. Mr. Woolfson, do you see the document on the screen now?

A. I do.

Q. And do you recognize this document, it's a three-page document? Do you want Hope to scroll through?

A. If you don't mind.

(Scrolling)

A. Yes.

Q. And you recognize this document, correct?

A. Woolfson

A. Yes.

Q. And this is a document that TelSwitch produced in response to the subpoena that we served on TelSwitch, correct?

A. There was a request for documents, yes.

Q. And can you tell me what this document is?

A. It's an internal note to identify the process that we use to download this.

Q. To download what?

A. The National DNC list daily.

Q. And it looks like -- and tell me if I'm wrong, but it looks like this document compiles a handful of screenshots?

A. That's right.

Q. So in other words when TelSwitch logs on each day to the National Do-Not-Call Registry to download the DNC registry it goes through a certain number of steps before it can download the data, is that accurate?

A. That is correct.

Q. And at each step is it accurate to say that at each step a screen shot was taken?

A. Yes.

Q. And that those screenshots were compiled into this instructions document, is that accurate?

A. Or partial parts of the screen shot, yes.

Q. Who did that, who took the screenshots and compiled the instructions?

A. I did.

Q. And did you do that for purposes of this litigation or was this a preexisting document?

A. I did not create any new documents for this litigation. I simply -- it was asked of me. I had it and I produced it.

Q. So was this document -- the document that you produced had a file named -- that included version 08092022A, was this list of instructions utilized during the class period?

A. I believe that's the instructions that we follow now, there used to not be a two-factor authentication. I'm happy to show you how the list works. If you want me to take you through it, I can show you.

Q. I appreciate it, but let's just go through the document that was produced. So just so I'm clear, I think you testified about this before. During the class period you were the person who went on the website each day to download the data?

A. Yes.

Q. And so you log on and then --

A. I'm happy to show you how it works.

Q. It's okay.

A. I'm more than happy -- believe me, I'm not, you know, it might save a lot of time. I can show you what it looks like and how it works.

Q. For each day during the class period that you log on to download the data, was the process the same other than the two -- you did mention that at one point it went from -- it transferred to a two-factor authentication?

A. That's right.

Q. And other than that has the process remained static?

A. Yes.

Q. And the two-factor authentication is

that in my mind and tell me if I'm accurate, that means you log in and then they send in something to maybe your text message or something of that sort and you have to put in a code?

A. Yes. It's a little bit different now. There's a call that gets made by Microsoft's TFA system. And it asks you to press a number on the phone and then you press it and then it continues on to the next step. So instead of typing a number in -- so if you go down a little bit more on this form. Yeah, okay, so this is the previous iteration of this. The code is spoken over the IVR. Now they just simply say press the number 1 on your key set or 6, or whatever it is. You press it, you go through to the next screen and it let's you download the files.

Q. And just so the record is clear, the National Registry Do-Not-Call List that is part of that FTC website, is that accurate?

A. It's a donotcall.GOV, I believe, is the website.

Q. But it's a government website, correct?

A. It has a .gov domain, prefix or suffix, whatever that's called at the end. So I'm going to say yes although I don't have personal knowledge.

Q. So I want to look at step 5 on this page 2 in the blue box on the right-hand side it says "Certify and continue" --

A. Could we go off record for just a second? Because I have a real quick question about a call that I'm supposed to have in about two hours, and I'm wondering if I should change that or not. Is this a good time for a break? Because I need to use the restroom again. Do you have a question pending?

Q. Could you give me five minutes?

A. Yes, of course. I just want to make sure that I answer your questions, but I need to cancel something if we're going to go past 11 a.m.

Q. What time is it now where you are?

A. 9:11 a.m.

Q. We should be okay, but let me just finish this set of questions and then we can take a break.

A. Sure, of course. Like I said, I'm happy to show you how this FTC works during a break or off the record or something. I want you to see how really simple and straightforward this is, it's a really un -- it's a very non-complicated process.

Q. Step number 5 is the certification step, correct?

A. Yes.

Q. And that step is there on every day that you downloaded the registry during the class period, correct?

A. Every day.

Q. And that page warns that willfully false statements may be punishable by fine and/or imprisonment, correct?

A. That is correct.

Q. And before proceeding, the user was required to select the statement "I declare under penalty of perjury that the preceding information is true and correct," is that accurate?

A. Right.

Q. The screen also directed the user to provisions which included 16CFR Section 310.4 and

315.8E and 47CFR Section 64.1200. Do you see that?

A. Yes.

Q. Before accessing or downloading the registry data, have you personally read or completed reading any of these regulations?

A. I have, and I also have had conversations with individuals at the FCC about this to make sure that we're using it in accordance with the correct methodology.

Q. Who in the FCC have you had conversations with about it?

A. Karen -- one second, I'll look at an e-mail and find it. She's no longer with the FCC, but she's still quite involved in various areas of regulatory machinery. Karen Schroder, S-C-H-R-O-D-E-R.

Q. And are you looking at an e-mail of Karen Schroder?

A. No, I just went into my inbox to spell the name correctly.

Q. And tell me about your conversations with Karen Schroder about the propriety -- about using the downloading the data?

A. Woolfson

A. It's basically letting her know that we downloaded data to identify whether or not or determine whether or not a number was on the DNC as of a particular day. And our conversation really surrounded whether or not residential -- whether or not also numbers that are on the national DNC are considered to be residential in nature. And the answer is that the DNC protects numbers, and it is -- the numbers are presumed to be residential in nature.

Q. Was that conversation memorialized in any written document?

A. Part of it was. The part of it surrounding the registration of -- well, I don't want to speak for the records. But yes, part of it was.

Q. And is there a reason that e-mails with Karen Schroder or these documents that memorialize that information were not produced in response to the subpoena?

MR. FERNANDEZ DEL CASTILLO: Again, Ms. O'Neil, if you have a discovery dispute, the appropriate way is to speak to counsel.

A. Woolfson

MS. O'NEIL: You can object to form, please, thank you.

MR. FERNANDEZ DEL CASTILLO: No. I'm not going to limit myself to form because the question is completely improper. You can't resolve a discovery dispute in a deposition.

MS. O'NEIL: Form.

MR. FERNANDEZ DEL CASTILLO: Absolutely not.

Q. Did you produce these e-mails, Mr. Woolfson?

A. You asked for communications with the Federal Trade Commission, you did not ask for the ones with the FCC. So I was responsive to the subpoenas.

MS. O'NEIL: I'm going to ask Hope to pull up the subpoena. We're going to mark this as Defendant's Exhibit 7.

(Defendant's Exhibit 7, Subpoena served on June 27, 2026, marked for identification, as of this date.)

Q. Mr. Woolfson, I'm going to represent that this is the subpoena that we served upon you

on June 27, 2026. Are you familiar with this subpoena?

A. Yes.

MS. O'NEIL: I'm going to ask Hope to scroll to the last page.

(Scrolling)

Q. Mr. Woolfson, are you familiar with the document requests 5 and 6 on this page?

A. Yes.

Q. And you mentioned that the demand was for communications with the FTC?

A. Right.

Q. Can you tell me where it says that on here?

A. Number 6, Federal Trade Commission.

Q. And how about number 5?

A. That's right. That's related to the FCC to authorize access, download, retain, archive, use or apply the National DNC Registry.

Q. Let me ask you this, Mr. Woolfson, I'm looking for any documentation that you have that says that you were permitted to download these daily DNC Registries for purposes of private litigation. Have you produced all

documents and communications that would indicate that you were permitted to do that?

A. Yes.

MR. FERNANDEZ DEL CASTILLO: Form.

A. Yes, relating to the FTC and related to the list itself, yes. These are conversations that are extrinsic to the FTC, and are not related to the download or retention of those particular lists. And the FTC sets the policy. The FCC states what the relevance is, but it's really the FTC that sets that.

MS. O'NEIL: Hope, could you bring back up the instructions?

THE WITNESS: So we're at five minutes, can I use the restroom?

MS. O'NEIL: Yes, I just have two more questions.

THE WITNESS: Okay, that's fine.

MS. O'NEIL: Scroll up to step 5, please.

Q. Mr. Woolfson, when we talked about these being screenshots and you corrected me and you said that they were portions -- some of the screenshots were a portion of the step, is that

A. Woolfson

accurate?

A. Yes.

Q. So is it fair to say that step 5 is a portion of the certification page?

A. Attestation page, yes.

Q. And are you familiar with what is missing from step 5?

A. Generally, yes.

Q. What is that?

A. It's basically listing those who can -- it's listing the organization types that are entitled to download. So, for instance, a non-calling entity can download those. So if you're not making calls and you're using it for auditing purposes, you can download those.

Q. Are you representing to me that that's what the certification page says?

A. Yes. Colleen, you're asking me to draw a legal conclusion. I can put you in touch with my lawyer who can give you a further --

Q. Thank you, Mr. Woolfson, but I'm not asking you to draw a legal conclusion. I'm asking you what the certification page says above --

A. Woolfson

A. I mean I'm just telling you you're asking me to draw legal conclusions, and I'm not going to do that because I'm not a lawyer.

Q. Mr. Woolfson, I'll ask the questions.

A. Okay. I'm just letting you know if that happens again you guys call the judge and compel me for further questioning because I'm not going to let that happen again.

Q. Mr. Woolfson, I get to ask the questions you do not --

A. You listen to me, please.

Q. This is my deposition, not yours. Put your camera on, Mr. Woolfson.

MS. O'NEIL: Mr. Fernandez Dell Castillo, I suggest you get your client back in the room.

(Recess taken)

BY MS. O'NEIL:

Q. Mr. Woolfson, I was asking you about the certification page and the certification that is listed above the certifying and continue step 5 that is not included in the instructions.

MS. O'NEIL: So going back to that. I'm going to ask Hope to pull up the "Read

A. Woolfson

and certify" and I'm going to mark this as Defendant's Exhibit 8.

(Defendant's Exhibit 8, Read and certify page, marked for identification, as of this date.)

Q. Mr. Woolfson, are you seeing the document on the screen?

A. I am.

Q. Do you recognize this document as the certification page that goes along with step number 5 in the instructions?

A. Yes.

Q. Is this the page that appears each day during the class period when you download the Do-Not-Call Registry, this page appears on the certification page?

A. I'm not sure if this is the exact one, but it's similar.

Q. And the top of the "Read and Certify," I'm just going to read for the record what it says. "I am authorized to certify and do so certify on behalf of my organization, as well as any clients which my organization is accessing the National Do-Not-Call Registry." Then it has

A. Woolfson

several bullet points.

Mr. Woolfson, I'm going to ask you to read the fourth bullet point and the sub-bullet point number 1 for the record, please.

A. Fourth bullet point is that "Our use of the National Registry website establishes our actual knowledge that abusive telemarketing acts or practices are unfair or deceptive and prohibited by law and that such illegal acts may include."

Q. Then the first sub-bullet point?

A. "Selling, renting, leasing, purchasing or using the data for any purpose except in compliance with the provisions of the FTC and FCC regulation on telemarketing calls or otherwise to prevent telephone calls to the numbers on the National DNC Registry."

Q. So that certification provided the purposes for which the data, the Do-Not-Call Registry data was able to be accessed for, is that accurate?

A. Yes.

Q. And did it identify retrospective litigation analysis for a proposed class

A. Woolfson

identification as a standard purpose?

MR. FERNANDEZ DEL CASTILLO:
Objection.

A. Yes. So yes, it is allowed to identify numbers that have been on the National Do-Not-Call List. I mean the -- if I'm not mistaken I believe it's -- I'm not a lawyer, but I believe it's in the CFR that private right of action allows attorneys to sue or individuals to sue under the TCPA. And one of those is to confirm that numbers have been on the National Do-Not-Call List for more than 30 days. And I have not been told otherwise that that's not allowed.

I think it's CFR47 CFR Section 641200, but I'm not sure. I was just in DC last week about this particular case, so I'm pretty familiar with it.

MS. O'NEIL: Hope, can you pull up 16CFR310.8?

We're going to mark this as Defendant's Exhibit 9.

(Defendant's Exhibit 9, Document bearing fee for access to the National

A. Woolfson

Do-Not-Call Registry Section 16CFR310.8, marked for identification, as of this date.)

Q. Mr. Woolfson, you mentioned the CFR might perhaps provide permission to use the Do-Not-Call Registry for purposes of private litigation. TCPA litigation, specifically. And I just wanted to --

A. Why, this is the central argument --

Q. There's no question.

A. -- in this case.

Q. There's no question.

MS. O'NEIL: Hope, could you scroll up a little bit?

Q. This is the CFR that's entitled "310.8 fee for access to the National Do-Not-Call Registry.

Mr. Woolfson, I'm just going to ask that you read Section 310.8E into the record.

A. "Access to the National Do-Not-Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any

government agency that has law enforcement authority." Correct.

Q. Keep going.

A. "Prior to accessing the National Do-Not-Call Registry, a person must provide identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the number registry solely to comply with the provisions of the part or to otherwise prevent telemarketing calls to telephone numbers on the registry."

"This is related to the paid subscription portioning of those who are --

Q. Are you reading the --

A. I'm just letting you know that this is related to those who pay for the registry --

Q. Okay.

A. -- in order to obtain --

Q. There's no question?

A. -- obtain dialing.

Q. There's no question.

A. We're going to make a mess of the record, Colleen.

A. Woolfson

Q. There's no question.

A. But once I hang up, this time I'm leaving and you'll need an order to compel me back.

Q. And I will get it. There's no question.

A. That's fine, but I just want to let you know.

Q. Moving on.

A. No, listen, you asked a question.

Q. I did not ask a question. I did not ask a question.

A. You asked me a question and you wanted me to read something.

Q. I did not ask a question. During the time period of the supplemental class from July 1, 2022 to August 31, 2022, did TelSwitch place outbound telemarketing or sales calls?

A. No.

Q. Did TelSwitch own or operate a dialer system that was used to conduct telemarketing campaigns?

A. No, we are an exempt organization.

Q. Did TelSwitch maintain calling lists

for its own telemarketing campaign?

A. No. That's why we --

Q. Did TelSwitch use the downloaded registry data to suppress telephone numbers from calls TelSwitch intended to place?

A. We're a non-calling entity.

Q. It's a yes or no question. Did TelSwitch use the downloaded registry data to suppress telephone numbers from calls TelSwitch intended to place?

A. No.

Q. Did TelSwitch perform registry suppression for live call campaigns operated by clients?

A. No.

Q. Did TelSwitch use its registry archive to determine whether a seller or telemarketer could place a future call?

A. No.

Q. Is the purpose of TelSwitch's historical resource so that it could later be used to determine whether a telephone number had been registered on a particular past date?

A. Is the purpose of our --

A. Woolfson

MR. FERNANDEZ DEL CASTILLO: Form.

Q. Is the purpose for why TelSwitch created its historical archive with the purpose for that, so that the archive could later be used to determine whether a telephone number had been registered on a particular past date?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Yes, on behalf of defendants and plaintiffs. So we used it on behalf of defendants to remove numbers that were alleged to have been called that not, in fact, on the DNC list as of that date for 30 days. And conversely we also use it on behalf of plaintiffs to identify in order to remove any false positives or otherwise. And make sure that those numbers were, in fact, on the DNC list for 30 days, yes.

Q. So just so that it's clear, the number what's being checked at the historical data is whether a telephone number had been registered on a date that was in the past, correct?

A. That is correct.

Q. And was that retrospective capability useful in your work as an expert or consultant in

TCPA matters?

A. Yes.

Q. Was the archive created, maintained, expanded for use in expert engagements, litigation, analysis or anticipated litigation?

A. It's used for those purposes among others, yes. It's used a lot by defendants as well to make sure to confirm that when a company is making calls that they enter into covenants. They are calling numbers that weren't on the National DNC List that I'm able to identify whether or not that's a fact pattern that is supported by the evidence.

Q. After a daily registry file has been superseded by later registry information, it's no longer the current list used to determine whether a call could be placed at a later date, correct?

A. I don't see the word "later date" on this. Are you reading something from this?

Q. No, I'm not.

MS. O'NEIL: Actually, Hope, can you take down the exhibit.

Q. So what I'm trying to understand is the Do-Not-Call Registry is published on the

do-not-call government website on a daily basis.

For example, when the registry is published today, is the registry that I downloaded yesterday superseded by the one that was published today?

A. Yes. I just want to let you know I canceled my 11 a.m.

Q. Okay. Thank you.

A. So we can go as long as you need.

Q. I don't know that we have all that much more. So when you performed the query in this -- I'm going to withdraw that.

The query that you performed that is the predicate of your supplemental declaration, that query, you performed that query for purposes of your expert testimony and class certification analysis in this lawsuit, correct?

A. Which query are we talking about? Are we talking about the DNC?

Q. Yes. When you ran the numbers against the DNC archive to determine whether or not those numbers satisfied the DNC criteria, that process was that you did, that was for purposes of your expert testimony in this

litigation and for purposes of class certification in this litigation, correct?

A. It's to be -- yes, so I did it originally as part of my first analysis, I read everything so I didn't need to rerun anything. I just want to make that nuance on the record. But the information is really to be assistive to the trier of fact and to show A it can be done, B it can be managed easily and C it can eliminate any false positives. For instance, it can name plaintiff, right. And a named plaintiff sometimes will claim that they're on the National DNC List when, in fact, they're not. That list serves a very important purpose. But the ultimate beneficiary of this is not my client. Not anyone other than the trier of fact. That's who will ultimately I think benefit from this.

Q. Did TelSwitch seek the FTA's written authorization before using its DNC archive in this case?

A. In this particular case?

Q. Correct.

A. No.

Q. Did TelSwitch obtain any written

authorization from the FTC that would have permitted it to retain superseded daily registry files for private litigation work?

A. I don't think so.

Q. Did TelSwitch obtain any written authorization from the FTC permitting it to use the archive to identify members of a proposed class?

A. No, I don't think so.

Q. Did --

A. I mean --

Q. By the way, Mr. Woolfson, the SQL database that I couldn't open because it was too big and you explained to me that it was not able to be split up because that would compromise the file -- you know what I'm talking about, right?

A. Right.

Q. That SQL database that you produced to me, but I couldn't open. I have a question for you about that database.

Does that database include your DNC archive for the supplemental period?

A. It includes the tagging and the result of the inquiry against the database, but

A. Woolfson

it does not include any of the archives itself.

Q. So in order for someone to replicate your work they would have to rely upon your already determination as to DNC tagging, correct?

A. I disagree with that. I think they could go to DNC.com or they could go to CompliancePoint or any number of organizations that maintain lists for this. Jan Kostyun, for instance, I believe is an expert who maintains various archives of those lists or at least he had stated so in declarations before. So he should be able to identify that as well from his archive. I mean Jan Kostyun did that in Federal Savings. He had lists. He had lists that he had downloaded that were archives in order to achieve a tagging. So I presume that he would be able to perform the same analysis if he, in fact, has an SAN which he does. And he has been downloading those lists which I believe he has. He's not doing it for telemarketing purposes. He's doing it for litigation purposes. Certainly his lists would provide insight as well.

Q. Would that be permitted under the "Read and Certify" page?

A. Woolfson

MR. FERNANDEZ DEL CASTILLO: Form of the question.

A. I think he, like myself, is an exempt organization. Neither he nor I pay for those lists, that is why we do not charge our clients to use those lists. Not to use the list, but to prescribe numbers. You know, we ran 1.4 I think 1.4 billion records against the National DNC last year. This year we ran 1.1 billion records. We don't charge for it. That is one of the reasons why we're not -- we are an exempt organization. We do it for only to help the assistive to the trier of fact. We only do it for free, and we do not charge for it. And I think most of that data that we ran was actually on behalf of defendants. The totality of that data. So, Jan has the same lists and I think he would be able to do it under the same auspices.

Q. That's your opinion. And moving on request number 5 on the subpoena sought documents sufficient to establish your authorization -- the authorization under which TelSwitch obtained, retained and used the registry information underlying your analysis. And have you produced

A. Woolfson

-- I just want to make sure that we're not missing anything. Have you produced everything you have in writing, any documentation that would support or that would establish the authorization of TelSwitch to obtain, retain and use the registry information for this analysis --

MR. FERNANDEZ DEL CASTILLO: Form of the question.

Q. -- that you're aware of?

A. I think I have, I think I was reading data from the FTC. I think there's some -- it's a difficult needle to thread because the FTC maintains it, but the FCC -- the TCPA covenants related to the DNC are set forth by the FCC and promulgated, I believe, by Congress. Right? I think it's the opposite, but I'm not a lawyer.

But the point is that I believe I've sent you everything. There are a few e-mails that I have from the FCC about this that I will look for. And if I'm able to find them and they are helpful I'll send them on. I'm happy to share them. Certainly, I tried to be as transparent as possible.

Q. So just to make sure that the record

is clear. So TelSwitch's registry data was originally obtained through an access process that required a certification concerning the purpose of access, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. I believe it's an attestation, there is nobody at the FTC that actively is involved in a certification process.

Q. So your instructions for downloading has a button called certify and continue it doesn't say attest and continue, right?

MR. FERNANDEZ DEL CASTILLO: Form.

A. It's, once again, I mean I'm not a lawyer, but I believe that to be an attestation, yes.

Q. And so for TelSwitch to download a file on a particular day of the supplemental class period, it first had to make that certification under the penalty of perjury and all that, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Yes.

Q. And the files that were downloaded were later retained after the dates they

represented had passed and after the registry data had already superseded them, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. That is --

Q. Do you want me to repeat it?

A. -- precisely how we are able to determine whether a numbers on the DNC list were more than 30 days.

Q. Right. You used those retained historical files five years later to conduct a retrospective analysis and for the expert testimony and proposed classification, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Yes.

Q. And that use did not suppress any number from an active campaign or prevent any call from being placed, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. We do not -- we are not callers, we do not provide this to anybody else. We do not use it for any active calling. And we are exempt from rules that require us to pay for the database because of our -- and we don't charge for it, and we don't use it in a way that -- we

A. Woolfson

don't use it in a way that circumvents their ability to circumvent someone else's use of that list as a paying service.

Q. Did you just testify that you don't charge your clients when you do expert TCPA work for them?

MR. FERNANDEZ DEL CASTILLO: Form of the question.

A. That's a very clever misinterpretation of what I said. We do not charge for the actual use of any lists.

Q. So you use your historical archive to run the analysis in the supplemental declaration, correct?

A. Correct.

Q. And you -- I mean correct me if I'm wrong, you charged your client to run that analysis, correct?

A. I charge for my time setting it up but I don't use -- there's no charges for the data itself. And there's no charge. So for instance, if it takes a half hour to set something up or 15 minutes, it's a very quick process. So it's maybe 10 minutes, for instance,

for that part of the process. It doesn't matter if there's a million calls or a hundred million calls. We do not charge based upon the usage, and we do not charge for that set of queries regardless of how large the data is. I charge for my time putting together the analysis, but the incremental charges that would typically be associated with using this service CompliancePoint or DNC.com, or one of these organizations, we do not charge for that. I think it's a big reason why we actually do as much as we do on behalf of defendants, too. Because it's super economical. Otherwise, a large case that are a couple of hundred million phone calls might be 2 or $300,000 worth of data processing. But we don't charge them.

Q. Let me ask you this question, if you -- as a TCPA expert, if you didn't have the DNC archive data, would you be able to charge what you charge as a TCPA expert?

A. Yeah, I think so.

MR. FERNANDEZ DEL CASTILLO: Form.

A. I mean I'm a top expert.

Q. Explain to me what the issue would be

to a TCPA plaintiff, if you did not have the DNC archive?

A. Well, there's a methodology that once, you know, you subpoena the FTC and get this data or you subpoena the North American numbering plan administrator, which is currently SOMOS, for certain elements or iConectiv. And then you can obtain this data and there's still an analysis that needs to be conducted.

There's no difference than if we don't have data but the class cert do and you have to run a prophylactic report, it's the same thing. There's still plenty of opportunities for a TCP expert, such as myself, to work and be hired. There's no -- it feels like there's no limit of the amount of work that's out there on behalf of plaintiffs or defendants.

THE WITNESS: I have to use the restroom, I'm not going anywhere.

(Recess taken)

BY MS. O'NEIL:

Q. Mr. Woolfson, you testified, I believe -- and that's why I'm asking because I want to clarify -- you testified that you believe

that there was a way that the DNC determination can be verified without your DNC archive?

A. If you send a subpoena to the FTC I think that would do it, yeah. I'm not aware of any point where the FTC itself said that they couldn't do it or that they weren't willing to do it. But I also think Jan Kostyun has these lists.

Q. You've said that before, what is that statement based on?

A. So is he was opposite of me in Anthony v The Federal Savings Bank matter and he had lists that he used to verify and validate numbers that were on the DNC, and he had the actual lists or at least some of them. So he should be able to do this, as well.

Q. When you say he had the lists, are you saying that he had daily DNC download lists?

MR. FERNANDEZ DEL CASTILLO: Form.

A. I seem to remember that I think he brought that up in his declaration and also his deposition in that matter.

Q. Are you familiar with or have you ever subpoenaed the FTC for historical DNC

registry status?

A. I have not personally, I don't know if my clients have. I don't want to say either way, I feel like it has been done, but I don't remember which client of mine did it.

I offered to Jan Kostyun as well that he could have our database, right, the entirety of it, but then I realized that we can't share those lists with people. But if he has his own subscriber account ledger, then I don't know why he wouldn't be allowed to use it. So that's something --

Q. He would have to certify how he was using the data before he downloaded it, correct?

A. Yeah, he was an expert witness in Federal Savings so clearly he went through the same certification and attestation process, but I don't know how that would work. I've offered before -- I was present at his deposition. I told him if he needs anything I'm happy to give it to him. I just don't know how that works with the rules about sharing lists. If he has his own subscriber account number maybe it's allowed, but he certainly used the FTC data and the DNC data

A. Woolfson

in Federal Savings. In fact, I think that's part of the public record.

Q. Let me ask you to clarify for me, you may have said this but I just wanted to make sure that I'm clear on what you're saying. Your understanding is that use of the FTC/DNC registry downloads is appropriate for TCPA litigation --

MR. FERNANDEZ DEL CASTILLO: Form.

Q. -- is that accurate?

A. Yeah, I think they have a whole category of non-calling users, people who are exempt bona fide non-dialing entities. Well, what does that mean? What's a non-dialing entity? A non-dialing entity is someone who's using the data for purposes other than calling. What other purposes are there?

So I mean I'm pretty sure that when we looked into this, it's pretty thorough that that was one of the exemptions.

Q. When you say we looked into it who is "we"?

A. When I looked into it with my attorney a couple of years ago.

Q. And why did you look into it at that

time?

A. Because it was the same argument that was brought up back then as well.

Q. Was that in a particular case?

A. I don't remember the case particularly. I just remember it was brought up.

Q. At that time when you were doing this research, did you get any written authorization from the FTC?

A. No, they don't generally write anything that would constitute a legal opinion into any sort of e-mail. If they even give an opinion on anything, they're going to predicate it on "We don't offer legal opinions."

Q. So your methodology connected the named plaintiff to three rows, three calls in the class period.

MR. FERNANDEZ DEL CASTILLO: Form.

Q. By virtue of those three calls appearing in your class --

A. Let's call it the waterfall because I don't want to prejudice the court or anybody by saying something is the class or not. I just want to call it the waterfall because I think

these are proposed punitive classes, but until they're actually certified by court I don't think they're actually a class. I think they're just proposed.

Q. By virtue of the fact that the three calls to the named plaintiff during the class period --

MR. FERNANDEZ DEL CASTILLO: Form.

Q. -- appear in the waterfall, what does that establish about those calls?

A. Well, it just simply is indicative of the fact that they survived the waterfall and that they were on the national DNC list for more than 30 days when they were called. And there's a duration there that indicates a connected call. And that's really what -- that's the threadbare meaning of what it is.

Q. So for the 198,196 numbers those figures are telephone numbers not identified persons or subscribers, correct?

MR. FERNANDEZ DEL CASTILLO: Form.

A. That is correct. Those are distinct telephone numbers.

Q. So you did not determine how many

A. Woolfson

distinct persons controlled the numbers, correct?

A. Right, that's a different -- that's a different exercise.

Q. And you did not identify who caused each number to be registered or obtain actual first registration dates, correct?

A. Well, the first registration date doesn't really matter because those numbers come off the list and fall off and go back on the list and that's why you need historical files. And so that the actual date of registration or reregistration doesn't matter so much.

But, the other part of that question is no, I don't know who registered those numbers on the list. The DNC, as I understand it, from the FCC protects the number itself. Maybe that's an unfortunate way that it got framed, but that's just the way that I understand it to be.

Q. So but my question was that you did not identify the registrants, correct?

A. Correct.

Q. And also is it accurate that you did not determine whether the same subscriber controlled the number on an earlier snapshot date

A. Woolfson

and each call date?

A. I think I heard you say that I did not investigate who controlled the numbers on the subscriber's date. That doesn't make sense to me. So maybe I misunderstood you.

Q. Whether the same subscriber controlled the number on the earlier snapshot date, and then on each call date thereafter that you queried?

A. I did not do any independent investigation about that. I was not asked to.

Q. So you didn't determine whether there was continuity of the subscriber across the call dates, is that accurate?

A. That's accurate. Yes.

Q. And you also did not -- at least as of the last deposition -- tell me if this is still accurate -- you did not do any work to determine whether any numbers in the class were reassigned?

A. I think that's accurate -- let me just make sure -- yes, that is correct.

Q. And you did not do any or you did not make any determination as to whether any number

on the class within the waterfall was residential versus a business number, correct?

A. Numbers on the National Do-Not-Call List are presumed to be residential.

Q. Beyond that presumption, did you do any work to determine whether the numbers within the waterfall were residential or business?

A. No.

Q. And did you do any work to obtain subscriber account records for each number?

A. No, that requires a subpoena to be sent to the telephone companies or the claims administrator that has mechanisms and things at their avail that I don't have access to.

Q. And for each CDR row you used a three second cutoff, but you didn't use anything to determine whether a telephone rang, a human answered or whether solicitation was communicated, correct?

A. That is correct, a duration is indicative of a connected call by which an audio channel has been established. So all these things have to have happened to have the connected call. And then after the call is

A. Woolfson

connected the audio channel gets established and then only after that can audio be delivered. So it would appear that those calls did result in conveyance of some sort based upon the durations.

Q. So what I'm understanding you're saying -- and you can correct me if I'm wrong -- is that at the three second duration it's your opinion that you can assume that an audio channel was created?

A. That's right, yeah.

Q. Now beyond that did you make any determination that there was communication?

A. No.

Q. So you did not determine whether anything was said during the call, correct?

A. That's right.

Q. And you did nothing to determine consent or establish business relationships, correct?

A. That is correct.

Q. And you didn't determine who placed each call or on whose behalf it was placed, correct?

A. Yes.

A. Woolfson

Q. Would it be accurate to say that your output identifies telephone numbers and CDR rows satisfying technical criteria but not does identify 198,196 persons for whom you independently determined subscriber identity residential use, call content, consent and attribution?

MR. FERNANDEZ DEL CASTILLO: Form.

A. Well, that's a mouthful but I'm going to say that's a fair statement. It sounds like something that came out of some briefing somewhere. Yes, that's right.

Q. We've gone over some of this stuff, I just want to sum up with a couple of questions just to make sure that the record is clear. Just quickly, and then I think we're done.

We asked this at the beginning of the deposition and now that we're at the end, are there any corrections or qualifications that you need to make to your supplemental declaration?

A. Yeah, I mean I think there's a typographical issue that may be not particularly problematic, but I think that nonetheless I want to just address it on the record which is that on

the bottom of my supplemental declaration paragraph number the bottom of paragraph 8 and top of paragraph 9 that number should instead of saying 23,343,658 it's a typographical error it should say 23,343,618.

Q. And is there any substantive changes?

A. None. But I nonetheless wanted to make sure -- I think we went over this earlier, but I wanted to make sure that it's addressed on the record.

Q. And with regard to the subpoena request number 5 and 6 is that production complete or are you still gathering documents to produce?

A. I think --

MR. FERNANDEZ DEL CASTILLO: Form.

A. I think there was maybe some e-mails that I understood your request to be from the Federal Trade Commission. And I have some e-mails for the DNC from the FCC. So I think I mean if it's helpful I'll send those. I'm not trying to withhold documents, but I thought we were limiting this to the FTC, but I'm happy to provide those. I think there's two or three

e-mails.

Q. Okay.

A. I'll forward those to the lawyer and they can forward them to you. I just want to apologize earlier that I had to go to the bathroom so badly that I ended up causing a scene on the record. I want to apologize to you, you did not deserve that. That was a failure or mistake of mine.

Q. Thank you. It's no problem.

A. I just wanted to apologize.

Q. Have you now described every factual basis for the historical registry classifications underlying the 198,196 number population?

MR. FERNANDEZ DEL CASTILLO: Form.

A. I believe so. I mean who knows what a judge is going to say and how they're going to want that to be further reduced or refined but it's all the data is in that sequel base and then we can apply whatever filter is necessary.

I'm a business owner as well. I'm highly emphatic for anyone who knows, you know, on the receiving side of one of these. So I'm happy to, you know, reduce things down. And my

A. Woolfson

opinion is not set in stone. I'm just trying to stick to the parameters I've been given and that which I'm familiar with lots and lots of these cases.

Q. Addition to the document request 5 and 6 in the subpoena, to the extent that you have any additional subscription FTC subscription documentation, please produce that also. If you don't have it, you don't have it.

A. I've been trying to be as non-narrowly responsive as possible. I always think more is better, even though that wasn't always, agree with me you know some of my esteemed clients on that. So I did a pretty exhaustive search.

I can't think of anything that I didn't already provide. But if I find something I will certainly advance that. And any documents that could be responsive, I would provide.

Q. I appreciate it.

A. When we're done with this, if I may just show you off the record for three minutes, just so you understand how the DNC list is organized so that if you have questions about it,

it gives you a more particularized set of language, so that if you have to ask about it to other people, you'll know exactly what these things look for because there's a lot of opacity in how these DNC lists work, and I've had to learn it over a long period of time. And we've really mastered it. I just want to give you a three-minute quote off record, if I may have that privilege, to just inform you of what there is and what there isn't, what it does consist of.

Q. I don't know if your attorney wants you to speak with me.

A. I'm speaking as an expert, as someone who I think it's just it's help. I mean my job as an expert is I have a duty of candor, I have a duty to be an expert. I think it's important. I think that it's something that would be helpful just serving the language set in the lexicon which is meaningfully illustrative. I can just show you. It's a 30-second thing. In that way I think it will be helpful.

MS. O'NEIL: But for now I have no further questions.

Mr. Fernandez Del Castillo, do you

have any questions?

MR. FERNANDEZ DEL CASTILLO: Give me just a minute.

(Pause)

MR. FERNANDEZ DEL CASTILLO: We are reserving any further questions for the time of trial.

(Time noted: 1:31 p.m.)

___________________________
AARON WOOLFSON

Sworn and Subscribed
this_____day of _____, 2026.

____________________
Notary Public

C E R T I F I C A T E

STATE OF NEW YORK )
: ss.
COUNTY OF NEW YORK )

I, LISA HIESIGER, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That AARON WOOLFSON, the witness whose deposition is hereinbefore set forth, was sworn and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 28th day of July, 2026.



LISA HIESIGER.

------------------- I N D E X -------------------

| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| AARON WOOLFSON | Ms. O'Neil | 142 |

------------------- EXHIBITS -------------------

| DEFENDANT'S | | FOR ID. |
|---|---|---|
| Exhibit 3 | Document titled "Supplemental Declaration of Expert Aaron Woolfson" | 148 |
| Exhibit 4 | Supplemental declaration | 168 |
| Exhibit 5 | Sequel 4 on the PDF | 173 |
| Exhibit 6 | Internal note at TelSwitch to identify process to download National DNC list daily | 204 |
| Exhibit 7 | Subpoena served June 27, 2026 | 213 |
| Exhibit 8 | "Read and certify" page | 218 |
| Exhibit 9 | Fee for access to National Do-Not-Call Registry Section 16CFR310.8 | 221 |

INFORMATION REQUESTS

| PAGE | LINE |
|---|---|
| 250 | 5 |

ERRATA SHEET

ASHER BRONSTIN v SERVBANK SB F/K/A ALLIED FIRST BANK

Date of Deposition: July 27

Name of Deponent: AARON WOOLFSON

| PAGE | LINE(s) | CHANGE | REASON |
|---|---|---|---|
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |
| ______ | ________ | ___________ | _________ |

A

**a.m** 140:14 209:20,22 227:8
**Aaron** 140:16 148:22 148:25 149:12 252:12 253:10 254:4,11 255:4
**ability** 235:3
**able** 162:15 195:4 196:7 202:22 219:21 226:12 229:15 230:13,17 231:18 232:21 234:7 236:20 238:17
**Absolutely** 213:11
**abusive** 219:8
**access** 181:19 192:25 193:5,25 194:5 214:19 220:25 221:17,21 233:3,5 245:15 254:19
**accessed** 219:21
**accessing** 211:5 218:24 222:5,10
**account** 191:4,7,11 193:5,12 194:4 239:11,24 245:11
**accumulated** 190:3
**accurate** 143:17 147:2 155:10,20 158:5 161:9 166:10 167:18 172:21 173:25 181:4 202:20 205:22,24 206:5 208:2,21 210:22 216:2 219:22 240:10 243:23 244:15,16 244:19,22 247:2
**achieve** 230:16
**achieved** 182:10
**acquired** 190:10
**acting** 221:25
**action** 220:10 253:15
**active** 189:20 201:8 202:18 234:17,22
**actively** 196:17 233:8
**activity** 160:4
**acts** 219:8,10
**actual** 154:6 172:2 201:18 219:8 235:12 238:16 243:6,12
**ad** 174:17
**Addition** 250:6
**additional** 145:14 159:11,19,24 160:11 169:25 250:8
**address** 247:25
**addressed** 248:10
**adds** 178:16
**adequately** 162:16
**adjournment** 140:18
**administrator** 237:7 245:14
**advance** 250:19
**advanced** 161:19 162:10
**advocacy** 183:20
**agency** 222:2
**ago** 200:2 240:24
**agree** 152:9 250:14
**ahead** 169:8 199:5
**alleged** 160:19,21 197:13 225:11
**allegedly** 150:8 157:8 181:13,14 197:16
**ALLIED** 140:9 255:3
**allowed** 193:18 220:5 220:15 239:12,24
**allows** 220:10
**American** 237:6
**amount** 160:13 237:17
**analogous** 173:22
**analysis** 145:2 158:7 158:9,13,17 159:18 160:2 163:3,6 164:7 165:8 168:5,11 169:16 170:12 183:22 184:9 187:18,25 190:13 200:13 203:19 219:25 226:6 227:18 228:5 230:18 231:25 232:7 234:12 235:14,19 236:7 237:9
**analyst** 181:19
**analyze** 150:2 181:20
**analyzed** 157:2
**analyzing** 156:13
**and-** 141:7,14
**and/or** 210:16
**Andrew** 141:8 169:19
**Announce** 198:9,20
**answer** 154:14 161:18 162:2,21 163:15,21 167:11 184:17 187:21 199:13 209:18 212:9
**answered** 159:22 167:13 245:19
**answers** 143:17
**Anthony** 192:2,4,16 238:13
**anticipated** 226:6
**anybody** 234:21 241:23
**anymore** 197:4
**apologies** 174:5
**apologize** 249:6,8,12
**appear** 172:23 185:10 242:10 246:4
**appearing** 241:21
**appears** 179:12 195:12 218:14,16
**applied** 193:15
**applies** 168:8
**apply** 159:25 214:20 249:21
**applying** 200:25
**appreciate** 168:3 207:2 250:21
**approach** 157:12
**appropriate** 212:24 240:8
**approximately** 182:22 195:18 198:24 200:9
**April** 202:10
**archive** 180:13,15 181:4 182:6,19 187:18,22,24 188:3 188:7,10,11,11 189:2 190:4,20,24 214:20 224:18 225:4,5 226:4 227:22 228:20 229:8,23 230:14 235:13 236:20 237:3 238:3
**archives** 230:2,11,16
**area** 165:20 188:17
**areas** 211:17
**argument** 221:10 241:3
**ASHER** 140:5 255:3
**asked** 145:23 146:2 147:20 156:9 158:11,21,23 161:24 162:7,19,23 162:24 163:2,8,13 165:21 197:10 206:15 213:14 223:11,14 244:12 247:18
**asking** 152:19 168:14 216:19,23,24 217:3 217:20 237:24
**asks** 208:8
**assignment** 148:5 159:4
**assist** 144:25 145:7

197:18
**assisting** 201:25
**assistive** 148:12 228:8 231:13
**associated** 236:9
**assume** 151:11 152:24 155:9 246:9
**assuming** 157:24
**assumption** 153:20
**assumptions** 159:15
**asterisk** 185:20
**attached** 161:14 170:23 173:21
**attaching** 174:8
**attachment** 172:6
**attention** 157:21
**attest** 233:12
**attestation** 216:6 233:7,15 239:18
**attorney** 157:11 240:24 251:12
**attorneys** 141:4,10 146:15 147:7,11,12 220:10
**attribution** 247:8
**audio** 245:22 246:2,3 246:9
**audit** 197:11
**auditing** 175:20 183:21 197:19,20 216:16
**August** 144:19 160:17 161:4,7,12 167:17,19,19 172:20 200:5 201:5 223:18
**auspices** 231:19
**authentication** 206:23 207:20,25
**authoritative** 181:23 183:11
**authority** 183:12 222:3
**authorization** 228:20 229:2,7 231:22,23 232:5 241:9
**authorize** 214:19
**authorized** 194:2 218:22
**avail** 245:15
**available** 190:25 191:3
**Avenue** 141:5,10
**aware** 232:10 238:5

**B**

**B** 228:9
**back** 142:12 149:24 158:10 169:18 170:11 176:6 177:13 182:20 201:22,24 215:14 217:17,24 223:5 241:4 243:10
**bad** 176:18
**badly** 249:7
**Bank** 140:9 192:2,2,5 192:16 238:13 255:3
**bars** 191:18
**base** 249:20
**based** 146:25 150:15 150:25 151:3 152:22 153:18 157:22,25 198:25 236:4 238:11 246:5
**bases** 155:11
**basically** 201:15 212:2 216:11
**basis** 152:12 153:20 155:14,17 156:4 197:7,18 198:6 227:2 249:14
**bathroom** 186:19 249:7
**bearing** 220:25
**began** 196:20,21 197:6,17
**beginning** 178:18 247:18
**behalf** 140:5 150:4 150:18,23 151:8 152:22,25 153:21 154:19 155:4,10,19 156:6,15 157:9,15 157:16,20,25 181:15 218:23 221:25 225:9,10,14 231:16 236:13 237:18 246:23
**belief** 155:17
**believe** 145:11 146:4 146:11,20,24 148:2 150:19 155:2,14,15 160:4 163:15,21 166:6,6,21,24 171:3 175:11 182:5,19 189:3 199:24,25 202:4 204:14 206:21 207:12 208:22 220:8,9 230:10,20 232:16 232:18 233:7,15 237:24,25 249:17
**beneficiary** 228:16
**benefit** 170:13 228:18
**best** 183:20
**better** 250:13
**beyond** 151:19 156:9 245:6 246:12
**bifurcated** 165:10
**bifurcations** 168:7
**big** 229:15 236:12
**bigger** 166:7
**billion** 183:4 231:9 231:10
**bit** 146:19 163:19 168:18 177:4 188:15 192:25 208:6,12 221:15
**blood** 253:15
**blue** 209:7
**bona** 240:13
**bottom** 170:4,6 177:6 177:9 248:2,3
**box** 156:21 162:20 177:6,9 209:7
**break** 163:18 184:19 184:22 186:19 209:13,25 210:4
**briefing** 247:12
**bring** 147:7 215:13
**BRONSTIN** 140:5 255:3
**Bronstin-Servbank** 145:14
**brought** 157:21 238:22 241:4,7
**buckets** 165:11
**bullet** 219:2,4,6
**business** 198:2 245:3 245:8 246:19 249:22
**button** 233:11
**buy** 184:8

**C**

**C** 141:2 164:5 228:10 253:2,2
**call** 144:4 150:3 151:5,6 155:5 156:13,23,25 157:3 157:23 160:16,23 172:24 180:21 196:2 199:9 208:7 209:11 217:7 224:14,19 226:18 234:18 241:22,25 242:16 244:2,9,14 245:22,25,25 246:16,23 247:7
**called** 174:15,20 175:14 198:5,15,16 209:3 225:12 233:11 242:15
**callers** 234:20
**calling** 150:3,18 153:10,14,17,19 154:18 155:19

156:14,25 157:16 181:14 198:2,19 199:12 202:2 223:25 226:11 234:22 240:16
**calls** 147:21 150:8,22 151:7 152:21,25 153:21 155:3 156:5 157:8,14 158:13 159:20 160:19 161:25 162:8,14 163:4 164:24 165:6 165:6,9,10,10,11,11 165:17,18,25 166:3 166:4,10,16,17 167:8,8,8,15 168:4 168:9 169:11 170:2 170:7,8,11,11,15,16 170:18,25 171:2,5,7 171:22,25 172:3,8,9 172:12,14,14,15,15 172:18,19,23,25 173:24,25 174:9 175:25 176:10 177:10,17 179:21 180:19,20 185:4 197:13 216:15 219:16,17 221:24 222:12 223:19 224:6,10 226:10 236:3,4,16 241:17 241:20 242:7,11 246:4
**camera** 217:14
**campaign** 224:2 234:17
**campaigns** 223:23 224:14
**cancel** 209:19
**canceled** 227:8
**candor** 148:7 251:16
**capability** 225:24
**carefully** 163:22
**Carmel** 141:5
**case** 153:18,20 155:21 165:20 189:10 192:6,15,16 192:19 198:16 199:25 203:2 220:18 221:12 228:21,22 236:15 241:5,6
**cases** 157:19,20 161:21 193:17 250:5
**Castillo** 141:6 151:17 151:22 152:8,14 153:5 154:2,12,20 155:12 156:18 157:5 158:2 174:14 175:3 176:19,25 178:24 181:6,11 183:17 184:5 187:20 192:9 193:7 194:8 197:9 198:7 199:21 201:7 202:13 212:22 213:4,10 215:5 217:16 220:3 225:2 225:8 231:2 232:8 233:6,13,22 234:4 234:14,19 235:8 236:23 238:20 240:9 241:19 242:9 242:22 247:9 248:17 249:16 251:25 252:3,6
**catch** 179:14
**category** 240:12
**caught** 152:17
**caused** 150:16 243:5
**causing** 221:23 249:7
**CDR** 154:9 157:2 159:24 245:16 247:3
**CDRs** 152:13,24 153:4 181:8,12,13
**centers** 196:2
**central** 221:10
**cert** 237:12
**certain** 146:10,12 162:14,14 165:16 195:21 205:21 237:8
**certainly** 157:9 230:22 232:23 239:25 250:19
**certification** 193:6 194:5,21 210:8 216:5,18,24 217:21 217:21 218:11,17 219:19 227:17 228:3 233:4,9,20 239:18
**certified** 242:3
**certify** 209:8 218:2,5 218:21,22,23 222:9 230:25 233:11 239:14 253:9,14 254:18
**certifying** 217:22
**cetera** 177:14
**CFR** 220:9,16 221:5 221:16
**CFR47** 220:16
**change** 145:20 148:10 159:8,13,15 209:12 255:5
**changed** 162:13 197:3
**changes** 248:7
**channel** 245:23 246:2 246:9
**charge** 231:6,11,15 234:24 235:6,12,20 235:22 236:4,5,6,11 236:17,20,21
**charged** 235:18
**charges** 235:21 236:8
**chat** 174:22,24
**checked** 225:19
**checklist** 174:16
**chose** 147:10
**circumvent** 235:3
**circumvents** 235:2
**claim** 228:13
**claims** 245:13
**clarification** 163:11
**clarify** 237:25 240:4
**class** 166:5,7 171:6 171:21 172:24 180:24 184:14 185:10 202:10,18 202:25 206:20 207:5,16 210:12 218:15 219:25 223:17 227:17 228:2 229:9 233:19 237:12 241:18,21 241:24 242:4,7 244:20 245:2
**classes** 242:2
**classification** 179:22 234:13
**classifications** 184:2 184:3 187:17 249:14
**classified** 179:17
**clear** 146:19 153:17 159:23 167:15,24 172:8,13 177:5 181:7 202:8 207:4 208:19 225:18 233:2 240:6 247:16
**clearly** 239:17
**clever** 235:10
**click** 201:15
**client** 154:18 196:3 198:14 199:16 202:4 217:16 228:16 235:18 239:6
**client's** 196:8
**clients** 198:8 199:7 199:12 218:24 224:15 231:6 235:6 239:4 250:15
**close** 193:16
**closed** 151:23
**code** 188:17 208:5,14

**collect** 222:8
**Colleen** 141:13 142:10 175:3 216:19 222:25
**COLLEEN@MLL...** 141:13
**come** 153:25 163:8 169:16 243:9
**comes** 177:16
**comfortable** 183:10
**command** 172:2
**Commission** 180:2,6 180:8 182:24 183:12 184:10,12 193:14 194:24 196:12 213:15 214:16 248:20
**communicated** 245:20
**communication** 246:13
**communications** 213:14 214:12 215:2
**companies** 184:8 202:2 245:13
**company** 226:9
**compare** 174:12
**compel** 217:8 223:4
**compiled** 206:4,9
**compiles** 205:16
**complete** 143:16 159:4 193:5 194:5 248:14
**completed** 211:7
**completely** 213:6
**compliance** 219:15
**CompliancePoint** 182:3,9,13,14 183:8 183:10,14,23 184:2 191:14 230:8 236:10
**comply** 222:10
**component** 166:9,13 166:14
**compromise** 229:16
**computers** 183:2
**concern** 156:11
**concerned** 167:14
**concerning** 161:6,11 233:4
**concerns** 171:2
**conclude** 151:7
**conclusion** 152:20 153:25 216:20,23
**conclusions** 217:3
**conduct** 223:22 234:11
**conducted** 153:14 170:15 237:10
**confirm** 220:12 226:9
**confused** 146:20 177:16
**Congress** 232:16
**connected** 241:16 242:16 245:22,25 246:2
**connection** 151:10 191:15 193:18 196:2
**consent** 246:19 247:7
**consequence** 193:14
**consider** 161:16,17
**considered** 212:8
**consist** 251:11
**constitute** 241:12
**constrained** 168:12
**construction** 170:24
**consultant** 225:25
**consumers** 198:19 221:24
**contain** 181:8,14
**contained** 161:23 163:9 175:15 185:21
**contains** 169:17,24 180:6
**contemplate** 162:11
**contemporaneously** 200:14
**content** 247:7
**continue** 142:15 209:8 217:22 233:11,12
**CONTINUED** 140:16 142:7
**continues** 208:10
**continuity** 244:14
**contracts** 201:19
**control** 179:8 197:24
**controlled** 190:20 243:2,25 244:4,8
**conversation** 147:4 147:24 212:5,12
**conversations** 211:9 211:13,23 215:7
**conversely** 225:13
**conveyance** 246:5
**copies** 190:7,10
**copy** 142:25
**correct** 143:18 145:19 156:17,19 156:23,24 157:4 159:24 161:4 163:16 164:14 165:24 167:21 171:23 172:17,24 174:2 175:25 176:2 176:24 178:16 179:7,19,24 180:13 180:14,17 181:5,9 181:10,21 184:4,15 185:5,11 187:25 188:5,22 189:3 190:21 191:2 193:6 193:10 194:6,16,17 195:9 200:5 203:21 203:22 204:25 205:5,23 208:25 210:9,13,17,18,22 211:11 222:3 225:22,23 226:18 227:18 228:3,23 230:5 233:5,21 234:3,13,18 235:15 235:16,17,19 239:15 242:21,23 243:2,7,21,22 244:23 245:3,20,21 246:7,16,20,21,24
**corrected** 167:25 215:23
**corrections** 247:20
**correctly** 189:6 211:22
**counsel** 143:7 144:3 144:14 146:7 175:6 212:25
**count** 178:14 183:9 196:23
**COUNTY** 253:6
**couple** 148:3 203:14 236:15 240:24 247:15
**course** 149:15 209:17 210:2
**court** 140:2 143:4,7 152:4 162:16 191:16 241:23 242:3
**covenants** 226:10 232:14
**cover** 156:6
**covering** 195:18 201:4
**coy** 168:2
**create** 158:12,20,21 163:2 168:6 169:11 206:14
**created** 225:4 226:4 246:10
**criteria** 158:16 163:5 165:18 227:23 247:4
**criterion** 159:13 165:16 176:11 179:18 180:17 181:3,19 184:15,23 184:24 185:9,11,14 185:18 188:13

**cross** 174:22
**cross-reference** 175:19
**curation** 168:10
**curious** 170:10
**current** 157:20 226:17
**currently** 237:7
**custodian** 190:7
**cut** 186:6
**cutoff** 245:17

**D**

**D** 254:2
**daily** 188:18 194:25 197:2,7,18 198:4 203:16 204:7,10 205:13 214:24 226:15 227:2 229:3 238:19 254:16
**data** 146:13 155:16 160:21 161:23 162:21 163:20,24 163:25 169:18 182:8,11 183:23,25 184:2 185:16 186:4 186:12 187:9 188:4 190:13,18 191:8,18 192:14,14 193:2,9,9 193:11,16,17 194:2 194:12 196:24 200:4,18,20,23 201:16 203:10,21 203:23 205:22 207:7,17 211:6,25 212:3 219:14,20,21 224:5,9 225:20 231:15,17 232:12 233:2 234:3 235:22 236:6,16,20 237:6,9 237:12 239:15,25 239:25 240:16 249:20
**database** 161:15,17 162:3 170:25 171:2 179:3,12 191:19 196:25 197:2 229:14,19,21,22,25 234:24 239:8
**dataset** 203:17,18
**datasets** 200:12
**date** 142:17 145:11 147:8,13 149:2 159:7 166:14,25 167:23 168:8 169:2 170:2 173:8 195:4 204:11 213:23 218:6 221:4 224:24 225:7,13,21 226:18 226:19 243:8,12,25 244:2,5,9,9 255:3
**dates** 146:6,10,12,14 146:17 147:10,16 147:16,21 148:10 158:14,15,24 159:5 163:4 168:12 198:14 199:4,14 200:14 233:25 243:7 244:15
**day** 180:5,9,11,12 196:19,21,22 202:25 203:10,12 205:19 207:6,16 210:11,14 212:5 218:15 233:18 252:20 253:19
**days** 148:3 162:2 165:7,8 184:25 185:2,3,4,7 200:11 203:2,4 220:13 225:13,17 234:9 242:15
**DC** 220:17
**deceptive** 219:9
**decide** 193:23
**decided** 147:19
**decision** 146:21,25 158:20 159:2
**declaration** 144:18 144:25 145:3,11,13 145:18,20,24 146:3 146:22 147:9,14,17 147:19,23 148:14 148:21,24 149:4,11 149:18,21,25 150:17,20 152:7 156:12 158:12,20 158:22 159:3 160:5 160:8 161:8,13 162:25 163:3,10,14 164:11,23 166:8,19 166:22,23 167:7 168:21,25 170:17 170:20 173:16 174:11 175:10,22 175:24 176:22 179:9 180:25 185:21 186:13 187:2,10,12,14 190:15,17 227:15 235:14 238:22 247:21 248:2 254:10,12
**declarations** 148:8 230:12
**declare** 210:20
**defendant** 140:10,17 150:9 151:9,14 157:15,17 181:15
**defendant's** 148:20 148:23 156:22 157:3 168:23,24 173:5,6 175:11 187:3 204:4,8,13 213:20,21 218:3,4 220:23,24 254:8
**defendants** 141:10 152:12,23 153:3,7 155:7,10 157:9,20 157:25 191:9 197:10 225:9,11 226:8 231:16 236:13 237:18
**defended** 198:16
**defense** 182:15 197:12
**Del** 141:6 151:17,22 152:8,14 153:5 154:2,12,20 155:12 156:18 157:5 158:2 174:14 175:3 176:19,25 178:24 181:6,11 183:17 184:5 187:20 192:9 193:7 194:8 197:9 198:7 199:21 201:7 202:13 212:22 213:4,10 215:5 220:3 225:2,8 231:2 232:8 233:6,13,22 234:4,14,19 235:8 236:23 238:20 240:9 241:19 242:9 242:22 247:9 248:17 249:16 251:25 252:3,6
**delivered** 246:3
**Dell** 217:15
**demand** 214:11
**depended** 179:22
**Deponent** 255:4
**deposition** 140:16 142:15 143:13,24 144:3,6,13,14 146:11,14 147:2 148:3 150:7,16 151:16,20 152:11 161:17 175:5 187:4 187:16 213:8 217:13 238:23 239:20 244:18 247:19 253:11,12 255:3
**derived** 187:18
**described** 150:8 165:25 249:13
**deserve** 249:9
**destination** 160:16 160:23 179:15
**determination**

152:21 155:3 160:20 192:5 230:5 238:2 244:25 246:13
**determinations** 156:7
**determine** 162:7 180:16 181:17 185:17 188:12 212:4 224:18,23 225:6 226:17 227:22 234:8 242:25 243:24 244:13,20 245:7,18 246:15,18,22
**determined** 166:18 181:2 247:6
**determining** 152:12
**DeVITO** 141:15 149:15
**dialer** 223:21
**dialers** 196:2
**dialing** 222:22
**difference** 167:8 200:22 237:11
**different** 157:11 165:18 166:25 168:6 182:16 201:23 208:6 243:3 243:4
**differently** 157:7
**difficult** 232:13
**directed** 210:24
**directly** 152:6 202:22
**disagree** 230:6
**disclose** 188:25 190:9
**discovery** 175:4 212:23 213:7
**discussion** 143:11 146:16 147:6 148:18 154:24
**disparity** 182:7
**dispute** 212:24 213:7
**distinct** 242:23 243:2
**District** 140:2,2
192:17
**DIVISION** 140:3
**DNC** 165:7 181:25 184:2,14,23 185:9 185:11,13,18 187:17 188:13,19 188:25 189:23 192:14 193:9,11 198:3 199:13 200:4 200:11,19,19 202:24 203:19 204:10 205:13,20 212:4,8,9 214:20,24 219:18 225:12,17 226:12 227:20,22 227:23 228:14,20 229:22 230:5 231:9 232:15 234:8 236:19 237:2 238:2 238:3,15,19,25 239:25 242:14 243:16 248:21 250:24 251:6 254:16
**DNC.com** 182:5 191:14 196:23 230:7 236:10
**DNY** 184:3
**do-not-call** 179:18 180:7,17 181:2,3 182:18 187:23 192:6 205:19 208:20 218:16,25 219:20 220:7,13 221:2,7,17,21 222:6 226:25 227:2 245:4 254:20
**document** 148:20,23 149:8 151:13 173:13,14 186:23 188:15 204:4,15,18 204:19,24 205:3,9 205:15 206:4,13,17 206:17 207:3 212:13 214:9 218:8
218:10 220:24 250:6 254:9
**documentation** 174:18 195:22 201:4,12,20 202:9 214:22 232:4 250:9
**documents** 143:23 145:8 175:16 185:22 186:9 187:5 188:8 195:8,12 205:6 206:14 212:19 215:2 231:21 248:14,23 250:19
**doing** 142:9 160:8 198:11 199:15,19 199:23 202:2 230:21,21 241:8
**domain** 209:2
**donotcall.GOV** 208:22
**download** 180:11,12 189:9,16 194:11,19 196:8,13 202:22,24 203:10,11,23 204:7 204:10 205:11,12 205:20,21 207:7,17 208:18 214:19,23 215:9 216:13,14,16 218:15 233:17 238:19 254:15
**downloaded** 196:11 196:16 199:7 200:4 200:13 203:19 210:12 212:3 224:4 224:9 227:5 230:16 233:24 239:15
**downloading** 196:18 196:20,22 197:6,8 197:17 211:5,25 230:19 233:10
**downloads** 198:4 240:8
**draw** 216:20,23 217:3
**drops** 182:6
**due** 203:5
**duplicate** 176:9
**duration** 170:7 176:11 242:16 245:21 246:8
**durations** 246:5
**duty** 148:6,7 251:16 251:17

**E**

**E** 141:2,2 253:2,2 254:2
**e-mail** 211:15,19 241:13
**e-mails** 212:18 213:12 232:19 248:18,21 249:2
**earlier** 158:19 163:13 243:25 244:8 248:9 249:6
**easier** 147:22
**easily** 228:10
**EASTERN** 140:3
**ECF213** 192:15
**economical** 236:14
**either** 147:7 197:25 239:4
**elements** 237:8
**eligible** 188:17
**eliminate** 228:10
**else's** 203:24 235:3
**emphatic** 249:23
**ended** 202:4 249:7
**enforcement** 222:2
**engage** 221:23
**engaged** 221:23
**engagements** 226:5
**EngageTel** 198:15,17 198:25 199:10,17
**enter** 179:16 226:10
**entire** 161:22 168:8
**entirely** 165:19
**entirety** 180:7 239:8
**entities** 240:13

216:13 221:16
**entity** 194:13 202:6 216:14 224:7 240:15,15
**entity's** 203:24
**equation** 177:15
**equipment** 195:25 198:18
**equivalent** 182:20
**Eric** 164:2,5
**ERRATA** 255:2
**error** 177:21 178:12 248:5
**especially** 191:15
**ESQ** 141:6,8,13,15
**establish** 181:25 193:4 194:4 231:22 232:5 242:11 246:19
**established** 158:4,7 245:23 246:2
**establishes** 219:7
**esteemed** 250:15
**estimate** 198:23
**et** 177:14
**evidence** 226:14
**exact** 218:18
**exactly** 198:22 251:4
**EXAMINATION** 142:7 254:3
**examined** 142:5
**example** 162:9,12 227:3
**Excel** 175:15 177:20 177:22 178:6,9,15 179:10
**exception** 203:2
**executed** 170:19 171:20
**exempt** 223:24 231:4 231:12 234:22 240:13
**exemptions** 240:20
**exercise** 243:4
**exhaustive** 250:16
**exhibit** 148:20,23 164:10,10 166:17 168:20,21,23,24 169:4,6,14,16 170:5 173:6 175:11 187:3 204:5,8,13 213:20 213:21 218:3,4 220:23,24 226:23 254:9,12,13,14,17 254:18,19
**exhibits** 160:9 161:9 161:14 179:11 254:7
**existing** 160:2 197:25
**expanded** 226:5
**experience** 198:17
**expert** 148:6,21,24 149:12 150:21,22 169:4,6 182:15 183:21 199:3,23 225:25 226:5 227:17,25 230:10 234:12 235:6 236:19,21,24 237:15 239:16 251:14,16,17 254:11
**experts** 183:16
**explain** 165:3 168:18 190:12 236:25
**explained** 229:15
**exposure** 197:12
**expressing** 148:7
**expressly** 188:7
**extent** 168:16 250:7
**extrinsic** 215:8

**F**

**F** 142:3 253:2
**F/K/A** 140:9 255:3
**fact** 148:12 150:25 151:3 152:22 153:18 155:23 156:8,16 157:23 158:4 161:20,24 162:11 170:14 191:16 192:7 193:23 225:12,17 226:13 228:9,14,17 230:18 231:14 240:2 242:6,13
**factors** 201:14
**facts** 153:24 155:2 158:6 191:20
**factual** 249:13
**failure** 249:9
**fair** 144:11 156:3 157:22 181:22 203:17 216:4 247:11
**fall** 243:10
**false** 210:16 225:15 228:11
**familiar** 166:12 173:9 175:18 182:12 191:24 192:19 214:2,8 216:7 220:19 238:24 250:4
**far** 154:25
**FCC** 192:13 211:9,12 211:16 213:16 214:19 215:11 219:16 232:14,15 232:20 243:17 248:21
**federal** 180:2,6,8 182:23 183:12 184:10,11 191:16 191:25 192:2,5,6,16 193:9,13 194:24 196:12 213:15 214:16 230:14 238:13 239:17 240:2 248:20
**fee** 220:25 221:17 222:8 254:19
**feel** 148:8 183:9 239:5
**feels** 237:16
**felt** 148:10
**Fernandez** 141:6 151:17,22 152:8,14 153:5 154:2,12,20 155:12 156:18 157:5 158:2 174:14 175:3 176:19,25 178:24 181:6,11 183:17 184:5 187:20 192:9 193:7 194:8 197:9 198:7 199:21 201:7 202:13 212:22 213:4,10 215:5 217:15 220:3 225:2 225:8 231:2 232:8 233:6,13,22 234:4 234:14,19 235:8 236:23 238:20 240:9 241:19 242:9 242:22 247:9 248:17 249:16 251:25 252:3,6
**fide** 240:13
**figure** 176:22
**figures** 242:20
**file** 164:14,17 180:5 198:25 200:20 206:18 226:15 229:17 233:18
**files** 179:23,25 182:19,23 183:6,7 187:19 190:22 191:12 192:13 202:22 208:18 229:4 233:24 234:11 243:11
**fill** 201:19
**filter** 160:2,3,12 200:25 249:21
**filters** 168:9 169:12
**final** 164:7 167:4 178:14
**find** 202:7 211:15 232:21 250:18

**fine** 185:20 186:22 210:16 215:19 223:8
**finish** 209:24
**first** 140:9 143:2 150:15,20 151:16 151:23 152:11 155:4 167:2 180:21 187:4,16 189:11 194:15,22 199:22 199:25 219:12 228:5 233:19 243:7 243:8 255:3
**five** 186:15 203:15 209:16 215:15 234:11
**five-minute** 186:18
**follow** 185:6 206:22
**following** 146:14 159:6 177:19
**follows** 142:6
**footnote** 189:3,5,24
**form** 152:3,14 153:5 154:2,12 155:12 156:18 157:5 158:2 174:14 176:20,25 178:24 181:6,11 183:18 184:5 187:9 187:20 192:9 193:7 194:8 197:9 198:7 199:21 201:7,15 202:13,15 208:12 213:2,5,9 215:5 225:2,8 231:2 232:8 233:6,13,22 234:4 234:14,19 235:8 236:23 238:20 240:9 241:19 242:9 242:22 247:9 248:17 249:16
**forms** 201:19
**forth** 161:13 232:15 253:11
**forward** 249:4,5
**forward-looking** 162:22
**foundational** 169:18
**four** 203:15
**fourth** 149:14 219:4 219:6
**frame** 182:21
**framed** 243:18
**FRANCISCO** 141:6
**free** 231:14
**front** 149:4
**FTA's** 228:19
**FTC** 164:14 188:17 188:18,19 189:9 190:19,23 191:13 208:21 210:3 214:12 215:6,8,10 215:12 219:16 229:2,7 232:12,13 233:8 237:5 238:4,6 238:25 239:25 241:10 248:24 250:8
**FTC's** 187:23 193:17
**FTC/DNC** 240:7
**FTP** 180:11
**full** 194:25
**fully** 161:7
**further** 142:6 216:21 217:8 249:19 251:24 252:7 253:14
**future** 224:19

**G**

**gathering** 145:8 248:14
**generally** 165:9 216:9 241:11
**generate** 164:17 171:4
**generated** 163:14
**Generating** 164:10
**gentleman** 164:2,3
**getting** 199:11
**Gila** 199:24
**give** 143:16 152:19 182:21 198:22 209:16 216:21 239:21 241:13 251:8 252:3
**given** 148:4 250:3 253:13
**gives** 251:2
**giving** 150:21
**Glenside** 141:5
**go** 143:2,5 148:16 154:21,22 169:8 176:21 182:20 186:21 195:3 199:5 207:2 208:11,16 209:9,19 227:10 230:7,7 243:10 249:6
**goes** 161:20,21 169:17 205:20 218:11
**going** 143:8,9 147:7,8 147:15 148:15,19 149:24 163:22 168:19 169:4 172:5 173:3,5,12 175:22 184:11 185:19 186:13,25 204:3,12 209:4,19 213:5,18 213:19,24 214:5 217:4,9,24,25 218:2 218:21 219:3 220:22 221:19 222:4,24 227:13 237:20 241:14 247:10 249:18,18
**good** 142:8,12 162:12 169:21 182:4 183:19 186:16 192:20 209:13
**goodness** 198:13
**gov** 209:2
**government** 183:2 191:19 208:24 222:2 227:2
**granted** 193:13
**great** 182:14 194:23
**GROUP** 141:9
**guess** 157:12 192:13 203:6
**guys** 217:7

**H**

**half** 235:23
**hand** 253:19
**handful** 205:16
**hang** 223:3
**happen** 217:9
**happened** 173:19 174:5 176:7 245:24
**happens** 217:7
**happy** 206:23 207:10 207:12 210:3 232:22 239:21 248:24 249:25
**hard** 142:20
**HDEVITO@MLL...** 141:16
**heading** 187:5
**hear** 153:11 164:4 176:4
**heard** 157:13,17 244:3
**help** 163:19 231:13 251:15
**helpful** 232:22 248:22 251:18,22
**hereinbefore** 253:11
**hereunto** 253:18
**Hi** 169:23
**Hiesiger** 140:18 253:7,23
**highly** 249:23
**hired** 237:16
**historical** 179:23 181:20,25 185:16 189:2 190:4,7,13,24 195:4 196:24 224:22 225:4,19 234:11 235:13

238:25 243:11 249:14
**hoc** 174:17
**Hope** 141:15 149:6 149:13 168:19 169:3 173:3 174:3 175:9 177:4 186:25 204:6,19 213:18 214:5 215:13 217:25 220:20 221:14 226:22
**hour** 235:23
**hours** 160:7 209:12
**human** 245:18
**hundred** 236:3,15
**hundreds** 157:19
**hyphen** 189:13
**hypothetical** 162:18 162:21

**I**

**iConectiv** 192:14 237:8
**ID** 254:8
**identification** 149:2 168:25 173:7 204:11 213:23 218:5 220:2 221:3
**identified** 160:15 161:2 172:19 181:23 188:8 242:20
**identifies** 247:3
**identify** 158:13 163:4 180:19 186:4,11 190:6 197:11,14 204:9 205:10 212:3 219:24 220:6 225:15 226:12 229:8 230:13 243:5 243:21 247:5 254:15
**identifying** 145:8 222:7
**identity** 247:6
**illegal** 219:10
**Illinois** 140:2 192:18
**illustrative** 251:20
**implied** 190:14
**import** 163:24
**important** 228:15 251:17
**importing** 163:19
**imprisonment** 210:17
**improper** 213:6
**inbox** 211:21
**include** 219:11 229:22 230:2
**included** 170:14 206:19 210:25 217:23
**includes** 229:24
**including** 157:19
**incorporate** 187:13
**incorrectly** 184:18
**incremental** 236:8
**independent** 174:16 244:11
**independently** 181:17 247:6
**index** 164:14,20
**indicate** 156:2 215:2
**indicated** 167:6 179:2
**indicates** 242:16
**indicative** 242:12 245:22
**indicators** 154:6,17
**individuals** 211:9 220:10
**inform** 191:19 251:10
**information** 150:15 181:8,21,24 196:24 210:21 212:20 222:7 226:16 228:8 231:24 232:7 254:23
**informing** 191:16
**initial** 159:8 166:5,18 169:24 185:21 187:2,14
**inquiry** 229:25
**insight** 230:23
**instance** 161:24 162:2 165:15 183:4 183:6,9 216:13 228:11 230:10 235:23,25
**instructions** 169:10 204:7 206:4,9,20,21 215:14 217:23 218:12 233:10
**intended** 188:25 224:6,11
**intending** 165:13
**interested** 253:16
**internal** 168:22 187:18,22 204:8 205:10 254:14
**investigate** 244:4
**investigation** 244:12
**invoice** 144:5
**involved** 211:16 233:8
**issue** 156:15 203:5,6 236:25 247:23
**items** 156:22
**iteration** 208:13
**IVR** 208:14

**J**

**Jan** 230:9,14 231:17 238:8 239:7
**January** 166:25
**job** 182:4 251:15
**joined** 169:20
**judge** 217:7 249:18
**July** 140:13 144:19 160:17 161:4,7,12 167:17 172:19,20 200:5,9 201:5 223:17 253:19 255:3
**June** 142:15,16,23 143:13,21 144:7,17 144:17,21 145:6,11 145:18 147:2 149:22 150:7 160:7 161:8 167:4 199:25 200:9 201:6 213:22 214:2 254:17

**K**

**Karen** 211:14,17,20 211:24 212:19
**Keep** 222:4
**key** 208:15
**know** 146:15 153:7 155:21,25 156:4 157:8,12,13 160:3 164:14 165:24 167:22,22,23,23 168:17 171:17 172:4,10 173:19 175:13 176:7 184:6 184:10 186:6,15 189:18,20 192:8 193:17 194:7 198:21 207:13 212:2 217:6 222:17 223:9 227:7,11 229:17 231:8 237:5 239:3,11,19,22 243:15 249:23,25 250:14 251:4,12
**knowledge** 209:5 219:8
**knows** 249:17,23
**Kostyun** 230:9,14 238:8 239:7

**L**

**L** 142:3
**labeled** 157:7
**labeling** 157:3
**LABUDA** 141:9
**Lake** 141:11
**language** 150:12,20

190:2 251:3,19
**large** 236:6,15
**larger** 200:20
**law** 141:4,9 219:10 222:2,9
**laws** 162:13
**lawsuit** 153:10,14,15 156:13 157:16,24 227:18
**lawyer** 152:16 216:21 217:4 220:8 232:17 233:15 249:4
**lead** 151:6 152:24
**learn** 251:7
**leasing** 219:13
**leaving** 223:4
**ledger** 239:11
**left** 176:15
**legal** 152:19 160:20 216:20,23 217:3 241:12,15
**let's** 142:24 192:4 207:2 208:17 241:22
**letting** 212:2 217:6 222:17
**lexicon** 251:19
**limit** 146:6,10 147:10 147:12,16 158:23 159:5 161:25 166:3 168:10 213:5 237:17
**limited** 146:17 147:7 166:5 170:2 193:2 194:2 221:22
**limiting** 248:24
**LINE** 254:24
**LINE(s)** 255:5
**Lisa** 140:18 168:22 204:12 253:7,23
**list** 165:7 180:7 182:19 183:3 184:14,25 185:6,10 186:2 187:13,23 188:17,25 189:23 191:14 194:19,25 195:5 196:9 198:3 199:7,13 200:11 204:10 205:13 206:19,24 208:20 215:7 220:7,13 225:13,17 226:12 226:17 228:14,14 231:7 234:8 235:4 242:14 243:10,10 243:16 245:5 250:24 254:16
**listed** 170:14 189:4 217:22
**listen** 217:12 223:11
**listing** 216:11,12
**lists** 183:12 184:12 188:19 196:11,14 200:19 215:10 223:25 230:9,11,15 230:15,20,22 231:6 231:7,18 235:12 238:9,14,16,18,19 239:10,23 251:6
**litigation** 151:11 155:6,8 197:20,24 199:18 206:12,15 214:25 219:25 221:8,8 226:6,6 228:2,3 229:4 230:22 240:8
**little** 146:19 163:19 168:18 177:4 188:15 192:25 208:6,12 221:15
**live** 224:14
**LLC** 141:4
**locked** 182:11
**log** 180:10 207:9,17 208:3
**logged** 160:7
**logs** 205:18
**long** 189:12 227:10 251:7
**longer** 211:15 226:17
**look** 142:18 154:7,15 166:20 178:17 179:5 186:13 191:25 192:3,12,13 198:24 209:6 211:14 232:21 240:25 251:5
**looked** 154:4 155:22 182:8 240:19,21,23
**looking** 166:23 177:20,22 185:25 211:19 214:22
**looks** 205:14,15 207:14
**lot** 207:13 226:8 251:5
**lots** 250:4,4
**love** 157:7

**M**

**ma'am** 172:22
**machinery** 211:17
**maintain** 196:25 197:2 223:25 230:9
**maintained** 190:20 226:4
**maintains** 230:10 232:14
**making** 156:7 160:9 160:19 197:25 216:15 226:10
**managed** 228:10
**March** 163:24 167:2 195:14,14,18,18 202:11
**Marcus** 141:10
**mark** 148:19 168:23 173:5 204:13 213:19 218:2 220:22
**marked** 148:25 168:25 173:7 175:11 185:7 187:3 204:10 213:22 218:5 221:3
**marriage** 253:16
**mastered** 251:8
**match** 178:9
**matching** 182:9
**material** 187:8 188:3
**materials** 144:20,20 185:22 186:4,9,11 187:5 188:8 190:2
**math** 177:23,23 178:10,16,21 179:6
**mathematical** 177:15
**matter** 145:14 155:23 181:14 236:2 238:13,23 243:9,13 253:17
**matters** 226:2
**mean** 144:4 150:12 152:18 157:7 158:23 172:9 180:4 181:12 185:8,13 192:11 193:21 197:23 201:22 217:2 220:7 229:12 230:14 233:14 235:17 236:24 240:14,18 247:22 248:22 249:17 251:15
**meaning** 242:18
**meaningfully** 251:20
**means** 208:3
**mechanisms** 245:14
**member** 194:10
**members** 229:8
**memorialize** 212:20
**memorialized** 212:12
**mention** 166:2 207:19
**mentioned** 144:5 157:18 161:16 214:11 221:5
**mess** 222:24
**message** 208:4
**met** 181:18
**method** 159:17

**methodology** 182:4 211:11 237:4 241:16
**Michael** 192:16
**Microsoft's** 208:8
**million** 166:17 176:17,18 178:10 236:3,3,15
**MILMAN** 141:9
**mind** 204:21 208:2
**mine** 239:6 249:10
**minimized** 176:6
**minute** 143:6 252:4
**minutes** 186:15,16 209:16 215:16 235:24,25 250:23
**misinterpretation** 235:11
**mislead** 157:10
**missed** 203:3
**missing** 216:8 232:3
**misstated** 167:23
**mistake** 249:10
**mistaken** 220:8
**misunderstood** 244:6
**momentarily** 154:21
**morning** 142:8 169:21
**Mount** 141:5
**mouthful** 247:10
**move** 192:24
**moving** 223:10 231:20

**N**

**N** 141:2 142:3,3 254:2
**name** 168:22 186:10 199:16 211:22 228:11 255:4
**named** 164:2,3 170:7 170:10,18 171:5,21 172:14,18 173:2 206:18 228:12 241:17 242:7
**narrative** 178:8 179:6
**narrowly** 160:14
**national** 181:25 182:18 204:10 205:13,19 208:20 212:8 214:20 218:25 219:7,18 220:6,12,25 221:17 221:21 222:5 226:12 228:13 231:9 242:14 245:4 254:16,19
**nature** 212:9,11
**nearly** 180:5
**necessary** 148:9,11 249:21
**need** 181:19,20 196:5 209:14,18 223:4 227:10 228:6 243:11 247:21
**needle** 232:13
**needs** 237:10 239:21
**Neither** 231:5
**network** 182:25
**never** 157:13,17
**new** 140:19 141:11 150:14 160:10 206:14 253:4,6,8
**non-calling** 194:13 216:14 224:7 240:12
**non-complicated** 210:7
**non-dialing** 202:6 240:13,14,15
**non-eligible** 176:9
**non-narrowly** 250:12
**normally** 163:23
**North** 237:6
**Northern** 140:2 192:17
**Notary** 140:19 142:5 252:22 253:8
**note** 204:8 205:10 254:14
**noted** 252:9
**notes** 163:24
**noticed** 146:5
**nuance** 228:7
**number** 161:3 178:16 179:16,16,20 180:16 182:6 184:3 184:24 185:9,10,11 185:18 188:4 189:6 189:8,11,12,12,15 189:15,18,25 191:4 191:7,12 192:17 193:12 194:12 195:13,14 196:17 201:9 202:18 203:25 205:21 208:9,11,15 210:8 212:4 214:16,17 218:12 219:5 222:10 224:23 225:6,19,20 230:8 231:21 234:17 239:24 243:6,17,25 244:8,25 245:3,11 248:3,4,13 249:15
**numbering** 237:6
**numbers** 160:17,22 160:24,25 177:10 178:9,9 180:25 181:18 182:2,17 184:13 185:6 188:12 197:15,15 198:5 199:8,10,12 200:10 212:7,10,10 219:18 220:6,12 222:12 224:5,10 225:11,16 226:11 227:21,23 231:8 234:8 238:15 242:19,20,24 243:2 243:9,15 244:4,20 245:4,7 247:3
**numerical** 174:12

**O**

**O** 142:3,3,3,3
**O'Neil** 141:13 142:7 143:9 148:15,19 149:6,13 151:21 152:2 154:22 168:19 171:14 173:3 174:3 175:9 175:13 177:3 204:3 204:12 212:23 213:2,9,18 214:5 215:13,17,20 217:15,19,24 220:20 221:14 226:22 237:22 251:23 254:4
**oath** 143:14 150:16 174:11
**object** 151:18 152:3,3 176:19 183:17 213:2
**Objection** 220:4
**objections** 152:2,5
**obligation** 143:16
**obtain** 222:20,22 228:25 229:6 232:6 237:9 243:6 245:10
**obtained** 193:15 231:23 233:3
**Occasionally** 203:12
**occurred** 146:25
**occurs** 203:11
**October** 166:7
**offer** 241:15
**offered** 239:7,19
**okay** 142:24 143:8,9 162:17 165:22,24 169:13 173:17 176:5 184:22 185:20 194:9 195:23 207:11 208:12 209:23 215:19 217:6 222:19 227:9 249:3
**once** 180:11 194:18

223:3 233:14 237:5
**ones** 213:16
**oOo** 141:19
**opacity** 251:5
**open** 229:14,20
**operate** 223:21
**operated** 224:14
**operator** 222:7
**opinion** 150:21,22 231:20 241:12,14 246:9 250:2
**opinions** 148:9 161:6 161:11,13,15,22 162:4 163:8 186:5 186:12 187:10 241:15
**opportunities** 237:14
**opportunity** 148:8
**opposite** 232:17 238:12
**order** 152:4 180:23 185:9 222:20 223:4 225:15 230:3,16
**orders** 191:17,24
**organization** 182:15 183:19 216:12 218:23,24 223:24 231:5,12
**organizations** 193:4 194:4 230:8 236:11
**organized** 250:25
**original** 163:21,24 166:8,21,23 170:16 200:21,24
**originally** 200:21 228:5 233:3
**originated** 190:19
**outbound** 223:19
**outcome** 253:17
**output** 174:13 247:3
**outstanding** 144:5,9
**oversight** 144:10
**owner** 249:22

**P**

**P** 141:2,2
**p.m** 252:9
**page** 149:14,18,24 156:20,21 158:11 170:4,6 171:12,12 176:12,14,15 185:23 187:4 188:22 209:7 210:15 214:6,9 216:5,6,18,24 217:21 218:5,11,14 218:16,17 230:25 254:3,18,24 255:5
**paid** 144:7,9 222:14
**paperwork** 202:7
**paragraph** 149:24 150:2,5 155:3,18 156:11 158:10,17 162:25 175:23 176:12,14,14,21 177:13 178:18,19 178:23,25 179:13 248:3,3,4
**parameters** 250:3
**parentheses** 189:24
**parenthetical** 188:24
**part** 153:12 161:18 162:3,4 164:6 165:8 165:12,14 170:15 170:24 173:14 180:22 208:20 212:14,14,16 222:11 228:5 236:2 240:2 243:14
**partial** 206:6
**particular** 151:12 160:4 172:11 189:22 190:19 196:3 202:3,3 212:5 215:10 220:18 224:24 225:7 228:22 233:18 241:5
**particularized** 167:12 251:2
**particularly** 241:7 247:23
**parties** 253:15
**partition** 169:11
**parts** 206:6
**party** 153:9
**pass** 185:11,15
**passed** 234:2
**pattern** 226:13
**Pause** 252:5
**pay** 222:18 231:5 234:23
**paying** 235:4
**payment** 144:12
**PDF** 173:4,7 174:6 254:13
**penalty** 210:21 222:9 233:20
**pending** 186:20 209:15
**Pennsylvania** 141:5
**people** 198:3 239:10 240:12 251:4
**perform** 165:9 224:13 230:18
**performed** 159:18 163:25 227:12,14 227:16
**performing** 187:25
**period** 146:14 160:18 161:4 167:16 171:6 171:22 180:24 189:14 198:11 200:4 201:4,5,6,9 202:9,10,10,19,25 206:20 207:5,16 210:13 218:15 223:17 229:23 233:19 241:18 242:8 251:7
**perjury** 210:21 233:20
**permissible** 151:19
**permission** 221:6
**permitted** 191:10
214:23 215:3 229:3 230:24
**permitting** 229:7
**Perrong** 141:4,8 169:19,22,23
**person** 203:9 207:6 222:6,9
**personal** 209:5
**personally** 211:6 239:3
**persons** 221:25 242:21 243:2 247:5
**phone** 166:17 185:4 208:9 236:16
**pick** 195:4
**place** 147:25 148:2 223:18 224:6,11,19
**placed** 158:14,15 163:4 177:11 197:15 226:18 234:18 246:22,23
**plaintiff** 170:7,11,18 171:5,21 173:2 228:12,12 237:2 241:17 242:7
**plaintiff's** 197:14
**plaintiffs** 140:7 141:4 191:9 197:10 225:10,14 237:18
**plaintiffs'** 172:14,18
**plan** 237:7
**play** 168:5
**please** 154:21 165:5 169:9 204:6 213:3 215:21 217:12 219:5 250:9
**plenty** 184:7 237:14
**PLLC** 141:9
**plural** 188:19
**plus** 166:17 169:25 184:25
**point** 145:16,21 160:12 191:17 207:19 219:4,5,6,12 232:18 238:6

Case: 1:25-cv-06182 Document #: 67-11 Filed: 10/26/26 Page 131 of 139 PageID #:1424



**points** 219:2
**policy** 183:20 215:10
**population** 144:19 161:7,12 168:8 175:24 179:17 249:15
**populations** 174:13
**portion** 179:6 215:25 216:5
**portioning** 222:15
**portions** 215:24
**positives** 225:15 228:11
**possible** 232:24 250:12
**post** 149:7
**practically** 195:14
**practices** 183:21 219:9
**preceding** 210:21
**precise** 190:22 198:14 199:4
**precisely** 184:7 234:7
**preclude** 162:14
**predicate** 227:15 241:14
**preexisting** 206:12
**prefix** 189:21 209:2
**prejudice** 241:23
**preparation** 144:13
**prepare** 143:24 144:2 145:24 146:2 159:2
**preparing** 145:3 146:8
**prescribe** 231:8
**present** 239:20
**presently** 197:11
**press** 208:8,9,15,16
**presume** 230:17
**presumed** 212:10 245:5
**presumption** 245:6
**pretty** 160:13 182:4,5 183:11 191:17,22 220:18 240:18,19 250:15
**prevent** 219:17 222:12 234:17
**previous** 144:6 158:13 163:3 168:11 208:13
**previously** 142:4 157:19
**primitive** 174:7
**Prior** 222:5
**private** 197:20 214:25 220:9 221:7 229:4
**privilege** 152:4 251:10
**proactive** 198:5
**probably** 182:20
**problem** 249:11
**problematic** 247:24
**proceeding** 210:19
**process** 179:8,17 193:6 194:6,21 204:9 205:11 207:18,22 210:7 227:24 233:3,9 235:25 236:2 239:18 254:15
**processing** 236:17
**produce** 145:8 195:22,25 201:2,12 201:20 202:8 213:12 248:15 250:9
**produced** 144:20,21 151:12 152:12,23 153:3,8,8,13 155:6 155:7,8,23 157:15 157:23 160:10,11 173:14 174:25 175:14 181:13 195:8,11,12 205:4 206:16,18 207:3 212:20 214:25 229:19 231:25 232:3
**produces** 151:10
**producing** 198:18
**product** 160:10 198:9 198:20
**production** 145:6 173:15 175:2,15 248:13
**prohibited** 219:10
**promulgated** 232:16
**prophylactic** 237:13
**proposed** 219:25 229:8 234:13 242:2 242:5
**propriety** 211:24
**prose** 177:6
**protects** 212:9 243:17
**provide** 221:6 222:6 230:23 234:21 248:25 250:18,20
**provided** 150:25 164:13 219:19
**providers** 193:3 194:3 221:24
**providing** 198:18
**provision** 165:20
**provisions** 210:25 219:15 222:11
**public** 140:19 142:5 190:25 194:10 240:3 252:22 253:8
**publish** 182:16 183:3
**published** 182:23,24 183:6 188:18 203:5 226:25 227:4,6
**pull** 168:20 172:3 173:4 175:9 186:22 187:2 195:4 204:3,6 213:19 217:25 220:20
**pulling** 169:3
**punishable** 210:16
**punitive** 242:2
**purchasing** 219:14
**purpose** 197:7 219:14 220:2 224:21,25 225:3,4 228:15 233:5
**purposes** 179:5 197:21,23 206:11 214:24 216:16 219:20 221:7 226:7 227:16,25 228:2 230:21,22 240:16 240:17
**pursuant** 140:17
**put** 148:11 156:16 163:23 174:21,23 208:5 216:20 217:14
**putting** 236:7

**Q**

**qualifications** 247:20
**qualify** 145:19
**qualifying** 160:16,23 161:2 193:4 194:3
**quality** 179:8 197:24
**quantity** 177:10
**queried** 190:7,13,20 244:10
**queries** 174:17,17,19 236:5
**query** 227:12,14,16 227:16,19
**question** 152:15 153:6 154:3,13 162:23,24 163:7 165:22 167:11,13 167:24 171:19 176:20 183:18 184:17 192:10,11 193:8 209:10,15 213:6 221:11,13 222:21,23 223:2,7 223:11,12,13,14,16 224:8 229:20 231:3 232:9 235:9 236:18 243:14,20
**questioning** 217:8

**questions** 147:20 161:19 162:3,10,19 162:22 168:15,17 186:21 194:23 209:18,24 215:18 217:5,11 247:15 250:25 251:24 252:2,7
**quick** 142:25 209:10 235:24
**quickly** 247:17
**quite** 184:16 211:16
**quote** 156:14,22 251:9

R

**R** 141:2 142:3 253:2
**ran** 169:14 171:20 180:18,18 200:20 227:21 231:8,10,16
**rang** 245:18
**range** 146:6 159:7 170:3
**ranges** 166:25 168:9
**Rapid** 198:9,20
**reached** 146:7
**read** 211:6 217:25 218:4,20,21 219:4 221:20 223:15 228:5 230:25 254:18
**reading** 189:5 211:7 222:16 226:20 232:11
**real** 209:10
**realized** 239:9
**really** 142:24 156:8 157:14 162:12 165:19 168:9 173:24 183:19 184:10 193:22 200:22 210:5,6 212:6 215:12 228:8 242:17 243:9 251:8
**reason** 146:9 168:14 195:24 196:21 201:11 212:18 236:12 255:5
**reasons** 146:16 231:11
**reassigned** 244:21
**recall** 150:9,11,12 152:10 154:8,16 185:23 198:21 199:4,14
**receive** 159:24 185:4
**received** 153:17,19 179:25 180:3
**receiving** 249:24
**Recess** 186:24 217:18 237:21
**recognize** 149:20 204:18,24 218:10
**reconcile** 178:22
**record** 143:2,3,6,8,10 143:11 144:8 146:19 148:11,16 148:18 151:24,24 153:16 154:21,23 154:24 157:10 159:23 169:19 172:13 175:5,7 183:8 208:19 209:9 210:4 218:21 219:5 221:20 222:25 228:7 232:25 240:3 247:16,25 248:11 249:8 250:23 251:9 253:12
**records** 142:20 150:3 150:17,25 151:4,5,6 151:10,11 153:17 153:19 154:5,6,10 154:15,17 155:5,22 155:25 156:13 157:2,2,3,23 158:8 159:24 160:16,23 161:3 176:9,10,10 176:16,23,23,24 177:14,15,16,24,25 178:2,2,4,6,13,19 179:4,4 183:5 197:11 212:16 231:9,10 245:11
**records,'** 156:23
**reduce** 249:25
**reduced** 249:19
**reference** 174:22 182:22 188:24
**referred** 168:12
**referring** 188:21
**refers** 167:16
**refined** 249:19
**reflect** 150:18
**reflecting** 150:3 156:14
**reflects** 150:19
**refreshed** 189:7
**regard** 163:7 169:15 248:12
**regarding** 173:15
**regardless** 236:6
**register** 194:14,15
**registered** 194:18 195:13 224:24 225:7,21 243:6,15
**registrants** 243:21
**registration** 212:15 243:7,8,12
**registries** 189:9,17 214:24
**registry** 179:18,23 180:17 181:2,3,19 181:20,24 182:18 184:15 185:16,18 187:19 188:13 192:7 194:12 195:3 195:9 200:12 202:25 203:20 205:19,20 208:20 210:12 211:6 214:20 218:16,25 219:7,18,21 221:2,7 221:18,22 222:6,8 222:10,13,18 224:5 224:9,13,17 226:15 226:16,25 227:3,4 229:3 231:24 232:7 233:2 234:2 239:2 240:7 249:14 254:20
**registry's** 193:2
**regulation** 219:16
**regulations** 211:7
**regulatory** 211:17
**related** 151:13 153:10,13 157:16 158:7 197:24 214:18 215:6,9 222:14,18 232:15 253:14
**relates** 152:6 192:13
**relating** 195:8 215:6
**relation** 153:19
**relationship** 197:3
**relationships** 198:2 246:19
**relevance** 215:11
**relevant** 189:10,19
**reliance** 189:2
**relied** 155:24 185:23 186:9,12 187:6,9 188:9 200:4,19
**rely** 186:5 187:13 230:4
**remain** 143:14
**remained** 207:23
**remaining** 178:13,20 179:4
**remember** 146:16 198:14 238:21 239:6 241:6,7
**remind** 143:13
**REMOTE** 140:16
**remove** 159:20 177:25,25 178:2 225:11,15
**removed** 176:8,13 177:14
**removes** 176:22

**removing** 176:3
**renew** 201:18
**renewal** 189:14
**renewed** 195:20
**renting** 219:13
**repeat** 234:6
**replicate** 230:3
**report** 156:17,21 158:10 159:8,9 162:5 169:5,6 171:24 173:20,22 173:23,24 174:8 176:3,8 200:3,21,24 200:24 202:19 237:13
**Reporter** 140:19 143:4,7 253:7
**reports** 186:2
**represent** 169:14 173:12 200:15 213:24
**represented** 234:2
**representing** 178:3 202:17 216:17
**reproduced** 184:4,6
**request** 205:6 231:21 248:13,19 250:6
**requests** 151:13,13 214:9 254:23
**require** 234:23
**required** 193:5 194:5 210:20 222:7 233:4
**requires** 245:12
**reregistration** 243:13
**rerun** 228:6
**research** 241:9
**reserving** 252:7
**residential** 212:6,8 212:11 245:2,5,8 247:7
**resolve** 213:7
**resource** 224:22
**respect** 144:24 145:5 145:17 166:18
**response** 144:20 145:6 173:15 174:25 195:7 201:3 205:4 212:21
**responsive** 151:2,12 175:16 213:16 250:12,20
**restroom** 186:17 209:14 215:16 237:20
**resubscribe** 201:17
**resubscription** 201:14
**result** 178:3 184:4 188:5 229:25 246:4
**resulted** 166:22
**resulting** 165:11,12
**results** 182:10
**retain** 214:19 229:3 232:6
**retained** 150:2 190:3 231:24 233:25 234:10
**retention** 215:9
**retrospective** 219:24 225:24 234:12
**review** 143:20,23
**Reviewed** 185:22 186:9 187:5 188:9
**revised** 144:18 161:7 161:12
**right** 142:16,20,22 144:4,22 145:16 146:22 152:6 158:6 159:25 160:6,22 166:23 167:20,21 172:25 178:12,22 181:16 185:25 187:19 189:17 190:22,25 202:10 202:12,14 205:17 207:21 210:23 214:13,18 220:9 228:12 229:17,18 232:16 233:12 234:10 239:8 243:3 246:11,17 247:13
**right-hand** 209:7
**role** 168:4
**room** 217:17
**row** 245:16
**rows** 241:17 247:3
**rules** 234:23 239:23
**run** 169:15,25 171:4 171:8,25 174:16,19 179:8 180:21 196:23 235:14,18 237:13
**running** 164:7 183:22
**runs** 191:13

**S**

**S** 141:2 142:3
**S-C-H-R-O-D-E-R** 211:18
**sales** 223:19
**SAN** 189:25 195:13 195:13 201:8 202:18 203:24 230:19
**SANs** 195:9
**satisfied** 185:18 188:12 227:23
**satisfies** 180:16
**satisfy** 162:16 181:2 184:14 185:13
**satisfying** 179:18 247:4
**save** 180:13 207:13
**saved** 174:6,7 202:14
**saving** 202:16
**Savings** 191:25 192:2 192:5,16 230:15 238:13 239:17 240:2
**saying** 158:21 183:10 193:11 238:19 240:6 241:24 246:7 248:5
**says** 170:6,7 172:15 177:9 190:2 192:22 192:23 209:8 214:14,23 216:18 216:24 218:22
**SB** 140:9 255:3
**scene** 249:7
**Schroder** 211:17,20 211:24 212:19
**scope** 151:19 156:9
**scoped** 160:14
**screen** 149:9 172:2 173:13 204:16 205:25 206:6 208:17 210:24 218:8
**screenshots** 205:16 206:3,9 215:23,25
**scroll** 149:13 156:20 171:14 175:22 176:12,13 177:3 188:14 204:20 214:6 215:20 221:14
**Scrolling** 149:16 171:16 188:16 204:22 214:7
**search** 171:20 250:16
**second** 148:17 155:14 167:3 176:5 209:10 211:14 245:17 246:8
**section** 185:22,24 186:3,8,10,11 188:9 188:21 210:25 211:2 220:16 221:2 221:20 254:20
**secure** 180:10
**see** 142:19,24 149:8 150:4 158:17 166:20 170:5,6,8 171:12 172:10 177:6,11 178:5,5 187:5 192:12 196:17 197:11 199:11 204:15

210:5 211:2 226:19
**seeing** 218:7
**seek** 228:19
**segments** 189:12
**select** 210:20
**seller** 224:18
**sellers** 193:3 194:2 221:22
**Selling** 219:13
**semantics** 152:17 158:22
**send** 208:3 232:22 238:4 248:22
**sends** 180:8
**sense** 244:5
**sent** 144:6 232:19 245:13
**sentence** 178:17,18
**September** 166:7
**sequel** 169:13,15,25 170:5,5,23,24,25 171:4,10,22 172:2,7 172:15 173:4,6,10 173:13,20 179:3,12 249:20 254:13
**Servbank** 140:9 150:9,18,23 151:8 152:22 153:2,22 154:7,11 155:4,16 155:19 156:2,6,15 255:3
**Servbank.'** 150:4
**served** 205:5 213:22 213:25 254:17
**serves** 228:15
**service** 193:3 194:3 221:24 235:4 236:9
**services** 198:19
**serving** 251:19
**set** 151:12 161:13 165:18 168:12 200:20 208:15 209:24 232:15 235:23 236:5 250:2 251:2,19 253:11,18
**sets** 165:10 215:10,12
**setting** 235:20
**settled** 191:22,23
**share** 191:4 232:23 239:9
**shared** 192:7
**sharing** 239:23
**sheet** 172:11 175:15 175:20,20 178:9,15 255:2
**Shorthand** 140:18 253:7
**shortly** 147:3
**shot** 205:25 206:6
**show** 206:23,25 207:10,14 210:3 228:9 250:23 251:21
**showing** 171:18
**shuts** 183:3
**side** 182:15 197:12 197:14 209:7 249:24
**signature** 149:17
**signed** 179:9
**signing** 174:10
**similar** 183:8 218:19
**similarly** 140:6
**simple** 201:14 210:5
**simply** 168:7 171:25 194:11,19 200:25 201:15 206:15 208:15 242:12
**site** 180:11
**situated** 140:6
**situations** 162:18
**size** 166:5,8
**slowly** 171:15
**small** 160:13,14
**snapshot** 243:25 244:8
**solely** 222:10
**solicitation** 245:19
**solid** 182:5
**somebody** 151:9
157:13
**SOMOS** 237:7
**sorry** 143:5 145:25 151:18 153:11 164:20 165:17 166:24 176:6 178:15 183:5 184:20 188:10 189:21 193:20 199:22
**sort** 156:7 162:13 182:6 184:9 208:5 241:13 246:5
**sought** 231:21
**sounds** 247:11
**source** 163:20 181:7 181:12,24 188:4
**sources** 159:11 186:4 186:12 187:9 189:25
**speak** 144:2 212:16 212:24 251:13
**speaking** 152:2,5 251:14
**specific** 150:11 165:13,20,22
**specifically** 221:8
**specifications** 182:16
**spell** 211:22
**Spiegel** 198:16
**split** 229:16
**spoken** 144:12 208:14
**sporadically** 196:16
**spreadsheet** 164:13 177:20,22 178:6,21 179:11
**SQL** 164:22 168:16 229:13,19
**ss** 253:5
**staff** 203:13
**standard** 220:2
**standpoint** 179:13
**start** 143:2 145:17 175:23 192:4
199:19,22
**started** 196:18 199:2 201:25
**starting** 175:24
**starts** 168:7
**state** 140:19 157:14 253:4,8
**stated** 161:8 230:12
**statement** 155:18 156:5 181:22 210:20 238:11 247:11
**statements** 174:12 210:16
**states** 140:2 162:14 215:11
**static** 207:23
**status** 181:25 239:2
**stayed** 189:13
**step** 159:19 205:24 205:25 208:10 209:6 210:8,9,11 215:20,25 216:4,8 217:22 218:11
**steps** 165:13 169:25 170:15 205:21
**stick** 250:3
**stone** 250:2
**stopped** 198:17,18 199:15
**stored** 179:23
**straightforward** 210:5
**strange** 192:11 193:22
**strongly** 190:14
**stuff** 197:23 247:14
**stylistic** 157:12
**sub-bullet** 219:4,12
**subject** 153:15 167:4 199:17
**submit** 146:21 147:17
**submitted** 145:10,12 149:21

**subpoena** 144:21 145:7 173:15 174:25 195:8 201:3 205:4 212:21 213:19,21,25 214:3 231:21 237:5,6 238:4 245:12 248:12 250:7 254:17
**subpoenaed** 238:25
**subpoenas** 213:17
**Subscribed** 252:19
**subscriber** 191:4,11 193:12 239:11,24 243:24 244:7,14 245:11 247:6
**subscriber's** 244:5
**subscribers** 242:21
**subscription** 189:19 189:22 195:9,17,22 196:4,7,8 201:3,23 202:3,5,9 222:15 250:8,8
**subscriptions** 196:11
**subsequently** 158:11 163:2
**substantive** 248:7
**Success** 141:11
**sue** 220:10,11
**sufficient** 185:15 231:22
**suffix** 189:20,21 209:3
**suggest** 217:16
**Suite** 141:11
**sum** 183:5 247:15
**super** 236:14
**superseded** 226:16 227:5 229:3 234:3
**supervision** 164:2
**supplemental** 144:17 144:18,24 145:2,2 145:10,12,18,20,24 146:3,8,21 147:14 148:13,21,24 149:4 149:11,21 150:17 152:7 156:12 158:12 159:3,9 163:3,10,14 164:11 164:23 167:5,6 168:5,20,24 169:6 169:16 170:12,19 171:2,6,21 173:16 174:10 175:2,10,21 175:23 179:9 180:25 187:12,25 200:3,13,23 202:19 203:19 223:17 227:15 229:23 233:18 235:14 247:21 248:2 254:10,12
**support** 148:9 155:2 232:5
**supported** 226:14
**supposed** 152:18 158:14 209:11
**suppress** 198:5 199:8 224:5,10 234:16
**suppressing** 199:9
**suppression** 224:14
**sure** 142:19 144:8,10 146:18 149:15 153:16 160:5,9 162:15 163:23 166:21 167:15 171:11 186:8,14 192:21 197:25 200:10 209:18 210:2 211:10 218:18 220:17 225:16 226:9 232:2 232:25 240:5,18 244:23 247:16 248:9,10
**surrounded** 212:6
**surrounding** 202:7 212:15
**survived** 242:13
**survives** 180:21
**suspect** 184:9
**switched** 202:5
**sworn** 142:5 252:19 253:11
**system** 208:8 223:22

**T**

**T** 253:2,2
**table** 164:24 166:2,3 166:4,10,16 167:16 168:5
**tagged** 200:21
**tagging** 182:17 229:24 230:5,17
**take** 147:24 174:3 177:24 186:18 206:24 209:24 226:23
**taken** 140:17 186:24 205:25 217:18 237:21
**takes** 235:23
**talk** 144:17 175:4,6
**talked** 215:22
**talking** 164:15,22 184:24 227:19,20 229:17
**talks** 173:23
**task** 160:14
**TCP** 237:15
**TCPA** 161:21 183:15 193:19 197:14,16 199:3,19,23 220:11 221:8 226:2 232:14 235:6 236:19,21 237:2 240:8
**technical** 203:5,6 247:4
**telemarketer** 224:19
**telemarketers** 193:3 194:3 197:5 221:22
**telemarketing** 219:8 219:16 222:12 223:19,22 224:2 230:21
**telephone** 160:25 182:17 193:2 194:2 194:12 219:17 221:24 222:12 224:5,10,23 225:6 225:20 242:20,24 245:13,18 247:3
**tell** 142:17 147:13 152:5 160:2 169:5 171:9 177:17 191:21,23 198:24 205:8,14 208:2 211:23 214:14 244:18
**telling** 160:20 217:2
**TelSwitch** 145:13 179:23 190:3,6,10 190:21 195:7,12 196:6,13 200:14 201:8 202:18,24 203:9,18,20,20,23 204:9 205:3,5,18 223:18,21,25 224:4 224:6,9,10,13,17 225:3 228:19,25 229:6 231:23 232:6 233:17 254:14
**TelSwitch's** 189:2 190:13,24 224:21 233:2
**temporal** 166:3,9,11 167:16 168:13
**term** 164:23
**test** 176:10
**testified** 142:6 146:20 187:17 207:4 237:23,25
**testify** 235:5
**testimony** 150:10 154:9 227:17,25 234:13 253:13
**Texas** 199:24
**text** 208:4
**TFA** 208:8
**thank** 142:10,13

163:11 213:3 216:22 227:9 249:11
**thereof** 158:9
**thing** 160:11 192:22 237:14 251:21
**things** 245:14,24 249:25 251:5
**think** 142:18 155:22 158:14 159:10,22 161:16,21 163:22 167:3,7,13,19 168:12 169:18,19 174:5 182:3,9 184:7 184:12 190:14 191:17 192:23 193:22 196:15,18 203:13 204:4 207:4 220:16 228:18 229:5,10 230:6 231:4,8,15,18 232:11,11,12,17 236:12,22 238:5,8 238:21 240:2,11 241:25 242:3,4 244:3,22 247:17,22 247:24 248:9,16,18 248:21,25 250:13 250:17 251:15,17 251:18,22
**third** 153:9
**thorough** 240:19
**thought** 248:23
**thousand** 176:15 178:11 193:17
**thread** 232:13
**threadbare** 242:17
**three** 160:7 161:2 165:10,18 166:24 167:9,15 168:4,9 170:2 171:3,7,23,25 172:3,8,12,14,19,23 172:25 173:20,22 173:24,25 174:9,9 203:15 241:17,17 241:20 242:6 245:16 246:8 248:25 250:23
**three-minute** 251:9
**three-page** 204:19
**tightly** 168:11
**time** 142:20 160:13 166:13 180:24 186:16 189:20 191:8 198:11 200:4 201:4 202:10 207:13 209:13,21 223:3,17 235:20 236:7 241:2,8 251:7 252:8,9
**titled** 148:21,24 185:22 254:9
**today** 143:14 144:16 227:4,6
**today's** 143:24 144:3 144:13,13
**told** 146:7 147:12 154:25 220:14 239:21
**top** 156:21 218:20 236:24 248:4
**total** 176:15
**totality** 231:17
**touch** 216:20
**touched** 192:25
**Trade** 180:2,6,8 182:23 183:12 184:10,11 193:13 194:24 196:12 213:15 214:16 248:20
**transcript** 142:22,25 143:21
**transferred** 207:20
**transparent** 232:24
**trial** 161:20,22 252:8
**tried** 232:23
**trier** 148:12 156:8,16 161:19,24 162:11 170:13 191:16,20 192:7 193:23 228:9 228:17 231:14
**true** 210:22 253:12
**truly** 160:3
**trying** 157:10 167:25 183:14 226:24 248:23 250:2,11
**Turning** 187:4
**two** 155:2 165:6,10 165:17,17 167:8 170:16 179:21 185:4 189:11 207:18 209:12 215:17 248:25
**two-factor** 206:23 207:20,25
**type** 162:10 165:16 201:23
**typed** 179:3
**types** 162:14 216:12
**typically** 186:2 236:8
**typing** 178:8 208:11
**typographical** 177:21 178:12 179:13 247:23 248:5
**typographically** 178:7

**U**

**U.S** 183:2
**ultimate** 183:11 228:16
**ultimately** 228:18
**Um** 200:8
**un** 210:6
**unchanged** 143:17
**underlying** 174:13 188:4 190:18 231:25 249:15
**understand** 143:18 144:21 150:24 153:2,9,12 156:10 162:17,22 164:24 168:16 183:15 184:16 192:21 226:24 243:16,19 250:24
**understanding** 153:3 165:23,24 166:4,9 195:15 240:7 246:6
**understood** 248:19
**unfair** 219:9
**unfortunate** 243:18
**unique** 160:25 177:10 179:20
**UNITED** 140:2
**universe** 161:22
**update** 190:23
**updated** 194:25
**usage** 236:4
**use** 159:11 162:21 164:23 165:9 175:20 180:15 183:22 186:3,8,10 186:16 189:8 191:8 192:14 198:4 205:11 209:14 214:20 215:16 219:6 221:6 224:4,9 224:17 225:14 226:5 229:7 231:7,7 232:6 234:16,22,25 235:2,3,12,13,21 237:19 239:12 240:7 245:17 247:7
**useful** 225:25
**user** 210:19,24
**users** 240:12
**utilize** 196:8
**utilized** 206:20
**utilizing** 181:3

**V**

**v** 192:2,4,16 198:16 238:13 255:3
**validate** 238:14
**various** 211:16 230:11
**verbose** 162:5

**verified** 238:3
**verify** 238:14
**version** 206:19
**versus** 245:3
**violation** 197:13,16
**virtue** 241:20 242:6
**visit** 194:11

**W**

**W** 142:3
**want** 142:19 144:8 145:19,19 146:18 149:6 152:16 153:2 153:16 156:4 159:23 160:12 162:15,20 163:18 165:23 168:15,17 168:22 175:4 184:17 186:18,21 186:22 197:3 200:18 204:19 206:24 209:6,17 210:4 212:16 223:8 227:7 228:7 232:2 234:6 237:25 239:4 241:23,25 247:15 247:24 249:5,8,19 251:8
**wanted** 143:12 146:6 146:9,15 168:17 196:16 197:4 221:9 223:15 240:5 248:8 248:10 249:12
**wanting** 199:11
**wants** 251:12
**warns** 210:15
**wasn't** 196:17 202:16 203:4 250:13
**waterfall** 164:8 165:8 165:12,14,15,17 168:7 169:12 174:16,21 175:14 175:18 179:2,6 180:22 241:22,25 242:10,13 245:2,8
**waterfalls** 158:8
**way** 167:12 169:18 185:17 191:6 200:22 212:24 229:13 234:25 235:2 238:2 239:5 243:18,19 251:21 253:16
**we'll** 192:24
**we're** 142:14 144:16 170:11 173:5 175:22 183:13 184:23 204:4,12,14 209:19 211:10 213:19 215:15 220:22 222:24 224:7 231:12 232:2 247:17,19 250:22
**we've** 182:10 247:14 251:7
**web** 202:15
**website** 180:10 194:11 207:6 208:21,23,24 219:7 227:2
**week** 220:18
**weekend** 162:2
**weekends** 162:8
**weird** 176:5
**Welcome** 142:12
**went** 151:15 152:10 167:3 207:6,19 211:21 239:17 248:9
**weren't** 157:14 182:24 226:11 238:7
**WHEREOF** 253:18
**wholesale** 198:19
**wholesaler** 199:10
**wider** 146:13
**willfully** 210:15
**willing** 238:7
**withdraw** 199:6 227:13
**withhold** 248:23
**witness** 142:4 143:5 169:21 188:14 215:15,19 237:19 239:16 253:10,13 253:18 254:3
**wondering** 209:12
**Woolfson** 140:17 142:1,8,14 143:1,12 143:20 144:1,16 145:1,23 146:1 147:1 148:1,13,22 148:25 149:1,3,8,12 149:17,25 150:1 151:1 152:1,10,20 153:1 154:1,25 155:1 156:1,3,10 157:1 158:1 159:1 160:1,15 161:1 162:1,17 163:1,13 164:1 165:1 166:1 167:1 168:1,15,21 169:1,3 170:1 171:1 172:1 173:1,9 174:1 174:24 175:1,8 176:1 177:1,7 178:1 179:1,15 180:1 181:1 182:1 183:1 184:1 185:1 186:1 186:25 187:1 188:1 189:1 190:1 191:1 192:1,24 193:1,24 194:1 195:1 196:1 197:1 198:1 199:1 200:1 201:1,2 202:1 203:1 204:1,15 205:1 206:1 207:1 208:1 209:1 210:1 211:1 212:1 213:1 213:13,24 214:1,8 214:21 215:1,22 216:1,22 217:1,5,10 217:14,20 218:1,7 219:1,3 220:1 221:1 221:5,19 222:1 223:1 224:1 225:1 226:1 227:1 228:1 229:1,13 230:1 231:1 232:1 233:1 234:1 235:1 236:1 237:1,23 238:1 239:1 240:1 241:1 242:1 243:1 244:1 245:1 246:1 247:1 248:1 249:1 250:1 251:1 252:1,12 253:10 254:4,11 255:4
**word** 166:12 226:19
**words** 152:17 169:5 203:20 205:18
**work** 145:14 160:10 164:12 182:15 183:21 199:3,20,23 225:25 229:4 230:4 235:6 237:15,17 239:19 244:19 245:7,10 251:6
**worked** 157:18
**working** 147:18 173:20
**works** 206:24 207:10 207:15 210:3 239:22
**worth** 236:16
**wouldn't** 199:9 239:12
**write** 147:9,13,22 148:8 241:11
**writing** 160:4,8 171:24 178:25 232:4
**written** 190:16 212:13 228:19,25 229:6 241:9
**wrong** 172:6,7 173:21 205:15 235:18 246:7
**wrote** 149:25 156:12 178:7 179:3 190:15

**X**

**x** 140:4,12 254:2

**Y**

**yeah** 144:4 147:6 171:17,24 174:20 192:11 201:22 208:12 236:22 238:5 239:16 240:11 246:11 247:22
**year** 195:20 201:13 201:17,18 231:10 231:10
**year's** 189:22
**years** 195:21 196:4,6 200:2 201:21 203:14,15 234:11 240:24
**yellow** 156:21 177:6 177:9
**yesterday** 227:5
**York** 140:20 141:11 253:4,6,9

**Z**

**Zoom** 176:4

**0**

**08092022A** 206:19

**1**

**1** 149:24,24 150:2,5 155:3,18 156:11 158:11 160:17 161:4 164:10 166:25 167:17 168:20,21 169:4,6 169:14 170:5 187:3 200:5 201:5,6 208:15 219:5 223:18
**1.1** 231:10
**1.4** 231:8,9
**1:31** 252:9
**10** 186:15 189:4,5,24 235:25
**10:07** 140:14
**11** 209:19 227:8
**11942** 141:11
**12** 166:17 200:2
**121-CV-02509** 192:17
**12th** 142:16,23 143:14,21 147:2 150:7
**142** 254:4
**148** 254:9
**15** 235:24
**16** 201:22
**168** 254:12
**16CFR** 210:25
**16CFR310.8** 220:21 221:2 254:21
**16th** 144:7
**173** 254:13
**18** 172:19 195:18
**19038** 141:5
**198,196** 160:16,23 179:16,20 180:16 180:24 181:18 182:2 184:3 185:10 188:4 242:19 247:5 249:15
**1st** 144:19 200:9,10

**2**

**2** 164:10 169:16 209:7 236:16
**2014** 200:2
**2015** 201:22,24
**2016** 195:14 196:15
**2017** 195:14
**2019** 195:19
**2020** 196:18,20 197:7 197:17
**2021** 202:11
**2022** 144:19 160:17 160:18 161:4,12 166:6,25 167:2,17 167:20,21 172:19 172:20,20 200:5,5 201:5,5,6 202:11 223:18,18
**2023** 166:7 167:4,17
**2025** 182:22 183:7 189:6,8,25
**2026** 140:13 144:18 145:7,12,18 189:7 213:22 214:2 252:20 253:19 254:17
**204** 254:14
**21,332,418** 176:23 177:14,25
**213** 254:17
**215.225.5529** 141:7
**218** 254:18
**221** 254:19
**23** 176:15,17,18 178:10
**23,343,618** 178:19 179:2 180:19 248:6
**23,343,658** 176:22 177:15,24 248:5
**23rd** 142:15 144:17 144:18 145:11,18 149:22 160:7 161:8
**24CV6182** 140:7
**25** 172:20 189:13,15
**250** 254:25
**2657** 141:5
**27** 140:13 144:21 213:22 214:2 254:17 255:3
**27th** 145:7
**28th** 253:19

**3**

**3** 148:20,23 156:20 156:22 158:10 162:25 175:12 254:9
**30** 165:7 184:25 185:2,3,7 200:11 220:13 225:13,17 234:9 242:15
**30-second** 251:21
**30,836,658** 176:10
**300,000** 236:16
**3000** 141:10
**31** 160:17 161:4 167:2,17,19 172:20 200:5 201:5 223:18
**310.4** 210:25
**310.8** 221:17
**310.8E** 221:20
**315.8E** 211:2
**31st** 144:19
**322** 182:22 183:7
**343** 178:10
**343,658** 176:16
**365** 165:6 185:4
**3C** 188:21
**3E** 189:23
**3W8** 141:11

**4**

**4** 149:18 168:23,24 173:4,6,10,13 254:12,13
**40** 179:4
**47** 176:10
**47CFR** 211:2
**4803** 161:3

**5**

**5** 173:5,6 209:6 210:8 214:9,17 215:20 216:4,8 217:23 218:12 231:21 248:13 250:6 254:13,25
**5,804,215** 176:9
**516.328.8899** 141:12
**59,587** 176:9

**6**

**6** 170:4 175:23 204:5 204:8,13 208:16

214:9,16 248:13 250:7 254:14
**6/23/2026B** 174:21
**6/27** 175:17
**60,044,125** 175:25
**618** 178:11,13
**64.1200** 211:2
**641200** 220:17
**658** 178:11 179:3
**685,670** 178:14

**7**

**7** 185:23 187:4 213:20,21 254:17
**7/1/2022** 159:21 163:5 167:5
**7/1/22** 158:16

**8**

**8** 171:13 176:12,14 178:18 185:23 188:22 218:3,4 248:3 254:18
**8/31/2022** 159:21 163:5 167:5
**8/31/22** 158:16
**82,674,541,665** 183:5
**826** 183:4

**9**

**9** 176:21 177:13 178:19,23,25 179:13 220:23,24 248:4 254:19
**9:11** 209:22
**93,117** 176:23 178:2
**932,413** 176:23 178:2
**985,670** 160:15,22 172:24 177:10,17 178:5,15
**985,710** 177:16 178:4