# Exhibit BB

**iconectiv cease-and-desist letter,**

***Anthony v. Fed. Sav. Bank*,**

**No. 21 C 2509, ECF No. 244-3**

**(N.D. Ill. Aug. 12, 2026)**

**Dominic Maisano**
Head of Legal
t 732.699.7763
dmaisano@iconectiv.com | iconectiv.com

March 26, 2026

**<u>VIA UPS and EMAIL</u>**
TelSwitch, Inc.
1937 Oak Park Blvd., Ste D
Pleasant Hill, CA 94523
Attn: Aaron Woolfson, President
woolfson@telswitch.com

Re: Notice of **Termination of the Wireless Do Not Call Service Agreement dated August 28, 2025 by and between iconectiv, LLC and TelSwitch, Inc. ("Agreement").**

Mr. Woolfson,

With regard to the Agreement referenced above, it has come to our attention that TelSwitch, Inc. ("Customer") has materially breached the Agreement by utilizing the Intermodal Ports data ("WDNC Data") for post-call forensic analysis and/or litigation purposes, as evidenced by your own admission in an email response to Todd Daubert, Attorney for NAPM LLC, dated March 18, 2026, and your Declarations as Expert Witness in <u>Michael Anthony v The Federal Savings Bank</u>, Case No. 1:21-cv-02509, United States District Court, Northern District of Illinois, and <u>Michael Smith v Examworks, LLC</u>, Case No. 8:21-cv-02746-PX, United States District Court, District of Maryland.

In your sworn Expert Witness Declaration, you state that you obtain the WDNC Data from iconectiv and use it for purposes of post-call forensic analysis for litigation purposes; and in fact admit that you have "used the WDNC data in this way in hundreds of matters involving the TCPA on behalf of plaintiffs and defendants (as a disclosed expert and as a consulting expert)."[1]

After you requested historical WDNC Data files to be redistributed and used for TCPA litigation purposes,[2] iconectiv advised you that the WDNC Data could not be used for post-call analysis and/or litigation purposes. Unhappy with this response, you sought clarification from the NAPM LLC. In response to your request, the NAPM LLC stated that "[a]pplicable law explicitly prohibits TelSwitch and Mr. Paronich from accessing or using WDNC data for TCPA litigation purposes."[3] In response to the NAPM LLC's statement, you state that you do not recognize the NAPM LLC as the authority on the permitted use of WDNC Data, and emphatically state that "we continue (and will continue) to use WDNC data in association with assisting triers of fact. And in avoiding TCPA violative activities. Just as we have done so in the past - and shall continue to do in the future."[4]

---

[1] Woolfson Declaration in <u>Anthony v The Federal Savings Bank</u>, Case No. 1:21-cv-02509, United States District Court, Northern District of Illinois, paragraph 8.
[2] See Woolfson email to PortDataComply email mailbox, dated February 25, 2026.
[3] See Todd Daubert Letter to TelSwitch re: WDNC Data and Permitted Use, dated March 18, 2026.
[4] See Email from Aaron Woolfson, TelSwitch Inc. to Rodsa Warnuvongs, Todd Daubert, et al, dated March 19, 2026.

iconectiv®

Section 6.1 of the Agreement states in relevant part that Customer may use the WDNC Service and the Intermodal Ports for the "**sole purposes of avoiding** TCPA Prohibited Conduct by verifying whether TNs are assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call (emphasis added)." Section 6.2 of the Agreement sets forth the permitted use of Second Tier customers, "to permit such third party **itself** to avoid engaging in TCPA Prohibited Conduct (emphasis added)." Customer's admission that it has and will continue using the WDNC Data for post-call forensic analysis for the purposes of litigation is a material breach of Section 6, and leaves iconectiv no choice but to immediately terminate Customer's Agreement, Customer's access to the WDNC service, and Customer's designation as an authorized reseller of PortData Comply service. These limitations govern, as they are the terms under which the service providers, who are the owners of LNP data,[5] permit the disclosure to third parties that are not engaging in number porting, or the rating, routing or billing of calls.

Furthermore, in Section 10.1(c) of the Agreement, you "expressly represent[ed], certif[ied] and warrant[ed]" that you would receive the Intermodal Port data "for the sole purposes of: 1. avoiding engaging in TCPA Prohibited Conduct by verifying whether TNs are assigned to a [mobile service] or other service for which the called party is charged for the call," or 2. to disclose or sell to a Second Tier customer. Use for a purpose other than avoiding making a TCPA prohibited call violates that representation and warranty.

You have asserted that you are permitted as a WDNC user to utilize LNP data for post-call litigation analyses pursuant to Paragraph 142 of the Order in which the FCC approved iconectiv's selection as LNP.[6] However, your assertion is incorrect. In Paragraph 142, the FCC stated, "The RFP section 11.1 states that the LNPA must provide the service discussed above (Intermodal TN ID Service), as well as other requirements stemming from TCPA." Section 11.1 of the RFP stated:

> The LNPA shall determine, based upon a good-faith, reasonable interpretation of the information provided by such applicant whether the User Data requested constitutes solely Intermodal Ports AND whether the intended use of the requested User Data is for the sole purposes of permitting that applicant as a Qualified Limited User Data Recipient to avoid engaging in TCPA Prohibited Conduct by verifying whether TNs are assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service or any service for which the called party is charged for the call or allowing that applicant as a Qualified Limited User Data Recipient to disclose, sell, assign, lease or otherwise provide to another third party who qualify as a Second Tier Limited User Data Recipients.[7]

Thus, Paragraph 142 of the *2015 Selection Order* did not confer a right to use LNP data for a TCPA purpose other than "to avoid engaging in TCPA Prohibited Conduct."

Accordingly, your use of WDNC data for purposes other than avoiding placing a TCPA prohibited call is a material breach of the Agreement.[8] The fact that your representation and warranty as to your use of

---

[5] NAPM-iconectiv Master Services Agreement § 18.1.1.
[6] *Telcordia Technologies, Inc. Petition to Reform Amendment 57 and Order a Competitive Bidding Process for Number Portability Administration, et al.*, 30 FCC Rcd 3082 (2015).
[7] 2013 NAPM RFP § 11.1 (emphasis in original).
[8] Agreement § 13.1(c).

iconectiv®

WDNC data is “incorrect in any respect” is also a material Breach of the Agreement.[9] As such, Section 13.1 of the Agreement applies and states:

> ***13.1. Termination for Breach.*** *In the event that Customer commits a material breach of any obligation hereunder, iconectiv may, by giving written notice to Customer, immediately suspend or terminate this Agreement for…(c) failure by Customer to comply with its obligations under Article 6 (Permitted Uses).*

By way of this letter and in accordance with Section 13.1 of the Agreement, be advised that, although it has no duty to do so, iconectiv is providing formal, written notice of the immediate termination of: (i) the Customer’s WDNC service, (ii) Customer’s designation as an authorized reseller of PortData Comply, and (iii) the Agreement, for material breach of Section 10, Representations, Warranties and Disclaimers, and Section 6, Permitted Use of the WDNC Data, effective March 26, 2026. Pursuant to Section 13.6 of the Agreement, Customer must immediately cease and desist using WDNC Data for any purpose, including post-call analysis and/or litigation purposes and immediately cease providing WDNC Data to third parties and providing analysis of third-party data using WDNC Data.

iconectiv reserves all rights and remedies available to it under the Agreement and applicable law, including the right to seek damages arising from this breach.

Please acknowledge receipt of this notice and compliance with the above requirements.

Sincerely,

*Dominic Maisano*

Dominic Maisano
Head of Legal, iconectiv

cc: K. Timko
J. Zamlong
C. McMahon
J. Nakahata

[9] Agreement § 13.1(a).